# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SHELBOURNE NORTH WATER STREET, L.P., | ) Case No. 13-44315 (JSB) |
| | ) |
| | ) Honorable Janet S. Baer |
| Debtor. | ) |
| | ) **Hearing Date:** **February 18, 2014** |
| | ) **Hearing Time:** **10:00 a.m.** |
| | ) **Court Room:** **615** |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on **February 18, 2014, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Janet S. Baer of the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, or whomever may be sitting in her place and stead, and then and there present the **Debtor's Motion to Approve (I) Entry into Plan Investment Agreement, (II) Investor Protections, and (III) Related Relief**, a copy of which is attached hereto and hereby served upon you.

Dated: February 6, 2014

                                                Respectfully submitted,

                                                SHELBOURNE NORTH WATER STREET, L.P.

                                                By:    /s/ *Joseph D. Frank*
                                                        One of its attorneys

Joseph D. Frank (IL No. 6216085)
Jeremy C. Kleinman (IL No. 6270080)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Telephone:   (312) 276-1400
Facsimile:    (312) 276-0035
jfrank@fgllp.com
jkleinman@fgllp.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SHELBOURNE NORTH WATER STREET, L.P., | ) ) | Case No. 13-44315 (JSB) |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |

**DEBTOR'S MOTION TO APPROVE (I) ENTRY INTO
PLAN INVESTMENT AGREEMENT, (II) INVESTOR
PROTECTIONS, AND (III) RELATED RELIEF**

Shelbourne North Water Street, L.P. (the "Debtor"), by its attorneys, respectfully requests entry of an order authorizing the Debtor to enter into a plan investment agreement with Atlas Apartment Holdings LLC ("Atlas"), and to provide certain protections to Atlas in connection therewith. In support of this motion, the Debtor states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

2. The statutory bases for the relief requested herein are sections 105, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code").

**INTRODUCTION**

3. The Debtor owns 2.2 acres in downtown Chicago on which it plans to build the tallest building in the Western Hemisphere -- the 150-story residential skyscraper commonly known as the Chicago Spire. The global financial crisis at the end of the last decade halted development of the Chicago Spire and ultimately led to the Debtor's chapter 11 bankruptcy, but the Debtor has continued to work toward completion of the building and has actively pursued

recapitalization opportunities. Through these efforts, the Debtor has come to an agreement, subject to court approval, with Atlas Apartment Holdings LLC, pursuant to which Atlas will provide plan-related financing that will enable the Debtor to pay its creditors and complete its reorganization. The proposed terms of the parties' negotiated agreement are set forth in the Plan Investment Agreement (the "Plan Agreement"), attached hereto as **Exhibit A**. The Debtor seeks authorization to enter into the Plan Agreement and to provide certain protections, including a break-up fee and expense reimbursement, to Atlas in the event that the Debtor is unable to perform its obligations under the Plan Agreement.

## BACKGROUND

4.  On October 9, 2013 (the "Petition Date"), four creditors or purported creditors of the Debtor (the "Petitioners") filed an involuntary petition against the Debtor seeking relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") [Del. Docket No. 1].[1]

5.  On October 17, 2013, the Petitioners filed a motion to designate the Debtor's bankruptcy case as a single asset real estate case, as defined in section 101(51B) of the Bankruptcy Code [Del. Docket No. 17].

6.  On October 24, 2013, the Debtor filed a motion to transfer venue of the Debtor's involuntary bankruptcy case from the Delaware Bankruptcy Court to the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") [Del. Docket No. 20].

7.  On November 8, 2013, the Debtor and the Petitioners entered into a stipulation (the "Stipulation"), pursuant to which the Debtor consented to the entry of an order for relief and

---

[1] References to the docket maintained by the Delaware Bankruptcy Court in Case No. 13-12652 shall use the designation "Del. Docket No."

{SHELBOUR/002/00036905.DOC/4}                - 3 -

the designation of the Debtor's case as a single asset real estate case. In addition, the Petitioners consented to the transfer of venue to the Bankruptcy Court, agreed that notwithstanding the fact that the Debtor's case is a single asset real estate case, the Debtor will have until March 10, 2014 to comply with Bankruptcy Code section 362(d)(3)(A) or (B), and agreed not to seek to terminate or shorten the Debtor's exclusive period to file a plan of reorganization prior to March 10, 2014 and not to seek appointment of a chapter 11 trustee. In addition, the Debtor agreed that if it does not file a chapter 11 plan of reorganization prior to March 10, 2014, its exclusive period to file a plan under section 1121 of the Bankruptcy Code will automatically terminate.

8. On November 8, 2013, the Delaware Bankruptcy Court entered an Order Approving Stipulation Regarding Order for Relief, Venue Transfer and SARE Designation (the "Stipulation Order") [Del. Docket No. 47]. On that same day, the Delaware Bankruptcy Court entered an Order for Relief under chapter 11 of the Bankruptcy Code [Del. Docket No. 48] (the "Order for Relief") in the Debtor's case.

9. No trustee or committee has been appointed in the Debtor's case, and the Debtor continues to manage its affairs pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10. After construction of the Chicago Spire halted in 2008, certain of the Debtor's secured creditors initiated and pursued a foreclosure action in the Circuit Court of Cook County, Illinois, Chancery Division (the "Foreclosure Litigation"), which is captioned *Lorig Construction Company v. Shelbourne North Water Street, LP*, *et al.*, Case No. 10 CH 27979.

11. During the Foreclosure Litigation, Steven Bell was appointed as receiver (the "Receiver") to protect and manage the real property owned by the Debtor. The Foreclosure Litigation remained pending as of the Petition Date.

12. On or about November 20, 2013, the Debtor, the Receiver and RMW Acquisition Company, LLC ("RMW"), the purported purchaser of the note previously held by the Debtor's alleged largest secured lender, entered into a joint stipulation: (A) Authorizing the Receiver to (i) Remain in Possession, Custody, and Control of the Debtor's Mortgaged Property, and (ii) Maintain, Care For and Preserve Such Mortgaged Property; (B) Excusing the Receiver from Complying with Bankruptcy Code Sections 543(a) and 543(b); and (C) Authorizing the Receiver to Use Funds on Deposit that Constitute Secured Lender's Cash Collateral to Pay Existing and Future Costs and Expenses of the Receiver Relating to the Mortgaged Property and Providing Adequate Protection to Secured Lender Therefor (the "Stipulation"). The Stipulation permitted the Receiver to remain in possession of the real property and to use certain funds that RMW asserts constitute its cash collateral in order to protect and maintain the property.

13. On November 20, 2013, the Debtor, the Receiver and RMW filed a joint motion to approve the Stipulation (the "Stipulation Motion") [Docket No. 23].

14. On November 27, 2013, the Bankruptcy Court granted the Stipulation Motion [Docket No. 42].

15. During the pendency of its bankruptcy case, the Debtor has pursued investment in the Chicago Spire project that will fund reorganization and allow payment to its creditors. After substantial negotiations, the Debtor and Atlas have agreed to the provisions of the Plan Agreement, including the following principal terms:[2]

- Atlas will provide plan funding up to the lesser of $135 million or the aggregate amount of allowed prepetition and administrative expense claims (including the cure costs relating to any assumed contracts),

---

[2] The following summaries are provided for illustrative purposes only and are qualified in their entirety by reference to the Plan Agreement. In the event of any inconsistency between this summary and the Plan Agreement, the Plan Agreement, including all terms and conditions to Atlas' obligations thereunder, shall control in all respects. Capitalized terms used but not defined in this Motion shall have the meanings ascribed to them in the Plan Agreement.

{SHELBOUR/002/00036905.DOC/4}                - 5 -

- excluding any and all claims of affiliates and insiders of the Debtor (the "Allowed Claims") and real estate tax escrows and closing costs related to the transaction contemplated by the Plan Agreement (the "Transaction");

- The Debtor will file and seek confirmation of a chapter 11 plan (the "Plan") that provides for: (i) payment in full of all Allowed Claims upon the later of the Effective Date or final allowance of the claim(s) at issue; and (ii) retention of the Debtor's property or, at Atlas' option, the transfer of some or all of such property to Atlas or one or more of its designees, free and clear of all liens, claims and encumbrances other than liens incurred in connection with the Transaction and certain permitted encumbrances;

- The Debtor will use its best efforts to confirm its Plan on or before August 31, 2014 and to effectuate the Plan on or before October 31, 2014;

- The Debtor will provide certain protections to Atlas (the "Investor Protections"), including the right to obtain a break-up fee and expense reimbursement, in the event that the Debtor defaults on certain obligations under the Plan Agreement.

## RELIEF SOUGHT

16. The Debtor seeks entry of an order (substantially in the form attached hereto as **Exhibit B**, the "Order") authorizing the Debtor to enter into, and perform its obligations under, the Plan Agreement and approving the Investor Protections.

## BASIS FOR THE RELIEF SOUGHT

### I. Entry into the Plan Agreement Should Be Approved as Sound Exercise of the Debtor's Business Judgment.

17. The Debtor seeks authorization to enter into the Plan Agreement pursuant to section 363(b) of the Bankruptcy Code. The use of estate property should be authorized under section 363(b) so long as a sound business purpose exists for the transaction. See, e.g., *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (holding that section 363 is satisfied where the proposed use of the property outside of the ordinary course is based on "sound business reasons"); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994) (noting that the "general thrust" for court approval under § 363 of the debtor's use of estate property is that the

action be in "the best interest of the estate"); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (court may approve a transaction involving property of the estate that is outside of the ordinary course of business when the court finds a good business reason for such transaction).

18.     After thorough evaluation, the Debtor believes that entry into the Plan Agreement represents the best available opportunity for the Debtor to complete its reorganization while maximizing the value of the Debtor's assets for the benefit of its creditors.  Importantly, the Plan Agreement secures funding from which, upon plan confirmation, all Allowed Claims can be paid in full.  Atlas' undertakings in the Plan Agreement will provide the Debtor's creditors with assurances that they will obtain payment on their claims without having to await the completion of the Chicago Spire.  Furthermore, the Plan Agreement provides a smooth path to plan confirmation, eliminating questions regarding the feasibility of the plan and any challenge to the reasonableness of the Debtor's projections with respect to the valuation of the Debtor's property once completed.  Accordingly, entry into the Plan Agreement is a sound exercise of the Debtor's business judgment and should be approved.

**II.     The Investor Protections Have a Sound Business Purpose and Should Be Approved.**

19.     In order to secure Atlas' agreement to fund the Debtor's reorganization, Atlas has requested a break-up fee of $4,050,000 and reimbursement of reasonable fees and expenses up to $750,000 incurred with respect to the Plan Agreement.  As more fully set forth in the Plan Agreement, this break-up fee would be triggered by (i) the Debtor's failure to meet certain milestones related to the Plan, including confirmation on or prior to August 31, 2014 and effectivenss on or prior to October 31, 2014; (ii) a material breach by the Debtor of its obligations under the Plan Agreement; (iii) a material breach by the Debtor of the warranties or representations set forth in the Plan Agreement; (iv) dismissal or conversion of the Debtor's case

or the appointment of a chapter 11 trustee or examiner with expanded powers; (v) the Debtor and/or its affiliates entering into an Alternative Transaction for plan-related funding that is approved by the Bankruptcy Court; (vi) entry of an order modifying or terminating the Debtor's exclusive right to file and/or solicit acceptances of a plan of reorganization; (vii) termination or modification of the automatic stay; and (viii) the amendment, modification or waiver of any term or condition of any Restructuring Document that is inconsistent with the Plan Agreement without the prior written consent of Atlas.

20. Plan sponsors regularly require break-up fees and expense reimbursement and, in many cases, other protection as an inducement to make a binding offer. *See Official Comm. of Unsecured Creditors v. Interforum Holding LLC*, 2011 WL 2671254, No. 11-219, *1 (E.D. Wis. July 7, 2011). (internal citations omitted). *See also In re Edison Mission Energy, et al.,* Case No. 12-49219 (Bankr. N.D. Ill.) [Docket No. 1424] (Court approved plan sponsor agreement and $65 million break-up fee as protection for plan sponsor). The use of break-up fees has become an established practice in chapter 11 cases. See *Interforum Holding LLC*, 2011 WL 2671254 at *1. Break-up fees encourage prospective plan partners to submit binding proposals and compensate them for the time and expense incurred in conducting their due diligence efforts in the event that the transaction fails. A break-up fee may also compensate a committed party for its lost opportunity costs. *See In re Integrated Res., Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) *aff'd,* 147 B.R. 650 (S.D.N.Y. 1992) (citations omitted). Furthermore, in the nonbankruptcy context, courts have generally recognized that break-up fees are common in corporate transactions. *See e.g., Cottle v. Storer Communications, Inc.,* 849 F.2d 570 (11th Cir.1988); *CRTF Corp. v. Federated Department Stores,* 683 F.Supp. 422 (S.D.N.Y.1988); and *Samjens Partners I v. Burlington Indus.,* 663 F.Supp. 614 (S.D.N.Y.1987).

21. Although the Plan Agreement does not contemplate an auction of the Debtor's property, Atlas' obligations under the Plan Agreement necessarily required substantial time and expense for due diligence and negotiation and has provided the Debtor with a substantial benefit. Furthermore, pursuant to the Plan Agreement, Atlas has agreed to fund up to $135 million months prior to actual funding. This agreement will allow the Debtor to go forward with its reorganization without the uncertainty that would otherwise accompany a sale or plan process. Moreover, while this agreement is not set forth as a stalking horse bid, it is at a level that will allow payment in full of Allowed Claims, rendering an auction unnecessary. Given that Atlas has conditioned its plan funding on approval of the Break-Up Fee and the reimbursement of certain fees and expenses capped at $750,000, the Debtor believes that providing the Investor Protections, including the Break-up Fee and expense reimbursement, is supported by the Debtor's business judgment and provides a substantial benefit to creditors.

22. The Break-Up Fee (which represents three percent of the amount of funding Atlas agreed to provide) is a necessary inducement to obtain Atlas' agreement to provide funding under the Plan Agreement. The Break-Up Fee and the other Investor Protections are the result of extensive, arms-length negotiations and are reasonable given the size and type of this transaction, the benefit to the Debtor's estate, the due diligence efforts undertaken by Atlas and Atlas' agreement to provide funding. Furthermore, under the terms of the Plan Agreement, non-approval of the Investor Protections would give rise to a termination right for Atlas and, in all likelihood, the Debtor's loss of Atlas' valuable plan funding proposal.

23. Finally, pursuant to the Plan Agreement, the Break-Up Fee and expense reimbursement would constitute an administrative claim secured by perfected first-priority liens

on the Debtor's assets that are not subject to Existing Liens[3] and perfected junior liens on the Debtor's assets that are subject to Existing Liens, as more fully set forth in the Plan Agreement. Given the fact that almost all of the Debtor's largest creditors assert liens against the Debtor's assets, these creditors would have priority over, and not be impacted by, the liens arising from the Investor Protections if they are triggered.

### III. The Plan Agreement Complies With Section 1125 of the Bankruptcy Code.

24. Section 1125(b) of the Bankruptcy Code provides that "[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title . . . unless, at the time of or before such solicitation, there is transmitted . . . a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b).

25. Courts considering postpetition plan support agreements have held that such agreements are not unauthorized "solicitations" if they, among other things, simply require the parties to use their best efforts to pursue confirmation of a plan and not to support any other plans. *See, e.g., In re Texaco, Inc.,* 81 B.R. 813, 816 (Bankr. S.D.N.Y. 1988) (holding that, in connection with a settlement embodied in the proposed plan, the parties' agreement not to support any other plans in the future did not violate 11 U.S.C. § 1125(b)). Courts also have approved postpetition plan support agreements that were entered into in the context of plan negotiations or settlement agreements and recognized that they comply with the requirements of section 1125(b). *See, e.g., In re Indianapolis Downs, LLC,* 486 B.R. 286, 295 (Bankr. D. Del. 2013) (recognizing that parties could memorialize agreements reached in support of plans because "Congress intended that creditors have the opportunity to negotiate with debtors and amongst each other . . . in a way that allows a Chapter 11 case to move forward."); *In re Heritage Org., L.L.C.,* 376 B.R. 783, 789–95 (Bankr. N.D. Tex. 2007) (finding that an agreement to vote for a plan set forth in a term sheet did not constitute a

---

[3] " Existing Liens" is defined in the Plan Agreement as "valid, enforceable, properly-perfected, non-avoidable security interests or liens."

{SHELBOUR/002/00036905.DOC/4}    - 10 -

solicitation for an official vote); *In re Kellogg Square P'ship*, 160 B.R. 336, 340 (Bankr. D. Minn. 1993) (holding that a postpetition lock-up agreement executed by the debtor and a creditor before approval of a disclosure statement did not constitute solicitation, explaining that limiting the solicitation bar to the formal polling process "avoids a chill on debtors' post-petition negotiations with their creditors, one which otherwise might prove devastating to the reorganization process.").

26. Here, the Debtor has not and will not solicit the votes of holders of claims and interests unless and until a Court-approved disclosure statement is transmitted (as required by section 1125 of the Bankruptcy Code) and if such solicitation is necessary. In addition, the Plan Agreement does not prevent the Debtor from exercising its fiduciary duties and the Plan Agreement is subject to termination if any of the parties to the Plan Agreement commits a material breach of the Plan Agreement. Accordingly, the Debtor submits that entry into the Plan Agreement does not violate section 1125(b) of the Bankruptcy Code.

### IV. Waiver of Bankruptcy Rule 6004(a) and 6004(h)

27. To speed implementation of the Plan Agreement, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has shown cause to exclude such relief from the 14-day stay provided for by Bankruptcy Rule 6004(h).

### NOTICE

28. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) all creditors that have timely filed proofs of claim; (iii) counsel to Atlas; (iv) the Internal Revenue Service; (v) the Illinois Department of Revenue; and (vi) those parties who have requested service of papers in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the nature of the relief requested herein, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE, Shelbourne North Water Street, L.P., respectfully requests that the Court enter an Order:

a. Authorizing the Debtor to enter into and perform under the Plan Agreement;

b. Approving the Investor Protections; and

c. Granting such other and further relief as this Court deems just.

Dated: February 6, 2014   Respectfully submitted,

**SHELBOURNE NORTH WATER STREET, L.P.**

By: */s/ Joseph D. Frank*
  One of its attorneys

Frances Gecker (IL No. 6198450)
Joseph D. Frank (IL No. 6216085)
Jeremy C. Kleinman (IL No. 6270080)
Zane L. Zielinski (IL No. 6278776)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Phone: (312) 276-1400
Fax:   (312) 276-0035
fgecker@fgllp.com
jfrank@fgllp.com
jkleinman@fgllp.com
zzielinski@fgllp.com

**CERTIFICATE OF SERVICE**

I, Joseph D. Frank, an attorney, hereby certify that on **February 6, 2013**, a true and correct copy of the **Debtor's Motion to Approve (I) Entry in the Plan Investment Agreement, (II) Investor Protections, and (III) Related Relief** was filed electronically. Notice of the filing will be sent to all parties who are currently on the Court's Electronic Mail Notice List by operation of the Court's Electronic Filing System.



*/s/ Joseph D. Frank*

# Mailing Information for Case 13-44315

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- John D. Beck    , ishmael.kamara@haynesboone.com
- Lauren N. Beslow    Lauren.Beslow@quarles.com, Faye.Feinstein@quarles.com
- Joseph D Frank    jfrank@fgllp.com, ccarpenter@fgllp.com;jkleinman@fgllp.com
- Jeffrey L. Gansberg    jgansberg@muchshelist.com, nsulak@muchshelist.com
- Frances Gecker    fgecker@fgllp.com
- John W Guzzardo    jguzzardo@shawfishman.com, jhampton@shawfishman.com
- Jeremy C Kleinman    jkleinman@fgllp.com, ccarpenter@fgllp.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Paul C Mallon    paul.mallon@kusperlaw.com
- N. Neville Reid    nreid@fslc.com, bkdocket@fslc.com;kgoin@fslc.com
- Peter J Roberts    proberts@shawfishman.com
- Ryan T Schultz    rschultz@fslc.com, bkdocket@fslc.com
- Brian L Shaw    bshaw100@shawfishman.com, bharrington@shawfishman.com
- Zane L Zielinski    zzielinski@fgllp.com, csmith@fgllp.com;dortiz@fgllp.com;ccarpenter@fgllp.com