# EXHIBIT A

**Execution Version**

# PLAN INVESTMENT AGREEMENT

This Plan Investment Agreement (as may be amended, modified or otherwise supplemented from time to time in accordance with the terms hereof, this "**Agreement**"), dated as of February 6, 2014, is entered into by and between Shelbourne North Water Street, L.P., a Delaware limited partnership, as a debtor-in-possession (the "**Debtor**"), and Atlas Apartment Holdings LLC, an Illinois limited liability company ("**Atlas**"). The Debtor and Atlas are each referred to herein individually as a "**Party**" and together as the "**Parties**".

## RECITALS

WHEREAS, the Debtor's chapter 11 case, Case No. 13-44315 (the "**Chapter 11 Case**"), was commenced on October 9, 2013 by the filing of an involuntary Chapter 11 petition and is currently pending in the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**");

WHEREAS, the Parties have engaged in good faith, arm's length negotiations that have led to an agreement regarding the material terms of a restructuring of the Debtor (the "**Transaction**") that the Parties now desire to implement in accordance with the terms and conditions set forth in this Agreement, subject to all requisite approvals of the Bankruptcy Court;

WHEREAS, it is anticipated that, subject to the terms and conditions set forth in this Agreement, the Transaction will be implemented through a plan of reorganization under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), which plan of reorganization shall be consistent in all material respects with the terms of this Agreement (as modified from time to time in accordance with this Agreement, the "**Plan**"); and

WHEREAS, the Parties have entered into this Agreement in furtherance of the Transaction and in consideration for Atlas's undertakings in connection therewith.

NOW, THEREFORE, in consideration of the premises and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.   Plan Provisions

Subject to the terms and conditions of this Agreement, the Plan shall provide for the following:

a.   Payment in full of all prepetition and administrative claims (including cure costs for any assumed executory contracts) finally allowed by the Bankruptcy Court, excluding any and all claims of affiliates and insiders of the Debtor (the "**Allowed Claims**") in such a manner that the holders of such Allowed Claims are determined to be "unimpaired" within the meaning of section 1124 of the Bankruptcy Code; and

NY\6127750.9

    b. Retention by the reorganized Debtor of all estate property of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created (the "**Assets**") or, at Atlas's option, the transfer of some or all of the Assets to Atlas or one or more of its designees, in each case, free and clear of all liens, claims and encumbrances, other than liens securing any debt incurred in connection with the Transaction and Permitted Encumbrances (as defined below).

    2. Implementation and Support of the Transaction

    Subject to the terms and conditions of this Agreement, each Party agrees, (a) to negotiate in good faith any material instrument, pleading, order or other related document utilized for implementing or achieving, or that otherwise relates to, this Agreement, the Plan or the Transaction, which is described in or contemplated by this Agreement or the Plan (collectively, such material instruments, pleadings, orders and documents, the "**Restructuring Documents**"), including, but not limited to, the Plan and an accompanying disclosure statement (the "**Disclosure Statement**"), the orders of the Bankruptcy Court approving this Agreement and the Disclosure Statement, and the order of the Bankruptcy Court confirming the Plan (the "**Confirmation Order**"), in each case the terms of which shall be consistent in all material respects with this Agreement and otherwise acceptable to Atlas, (b) to promptly execute and deliver (as applicable, and to the extent such Party is a party thereto) the Restructuring Documents and otherwise use commercially reasonable efforts to cause to occur, and cooperate in the prompt consummation of, the Transaction on terms and conditions consistent in all material respects with this Agreement, (c) not object to, delay, impede, commence any proceeding, or take any other action to interfere, directly or indirectly, in any material respect with the prompt consummation of the Transaction, approval of the Disclosure Statement or confirmation of the Plan (or encourage or support any person or entity to do any of the foregoing), and (d) not to support or pursue a sale of the Assets under section 363 of the Bankruptcy Code or any restructuring, liquidation or reorganization of the Debtor (or any plan or proposal in respect of the same) other than the Transaction (any such sale, restructuring, liquidation or reorganization, an "**Alternative Transaction**").

    3. Atlas's Obligations

    a. Funding. Subject to the terms and conditions of this Agreement, Atlas shall provide, by itself or in conjunction with one or more lenders or investors, the lesser of (a) $135,000,000 and (b) the aggregate amount of all Allowed Claims, real estate tax escrows and closing costs related to the Transaction, upon the later of (i) the date upon which all conditions precedent to the effectiveness of the Plan are satisfied or waived, as the case may be or (ii) the date(s) on which Allowed Claims are required to be paid under the Plan. Such funding may be contributed as debt, equity, or any combination thereof and shall be provided in increments to the extent necessary to enable the Debtor to pay Allowed Claims when due under the Plan.

    b. Due Diligence Reporting. At all times prior to Atlas's waiver of its termination rights under Section 6(c)(3) or the expiration of such termination rights, Atlas shall use commercially reasonable efforts to keep the Debtor apprised of the status and results of Atlas's due diligence investigation relating to the Debtor, the Assets and the Transaction, including without limitation, the condition of the Assets (including environmental and title issues) and all related permits, land use entitlements, contracts and third-party consents (the "**Due Diligence**

2

**Investigation**"). Commencing on the Wednesday following entry of the PIA Approval Order (as defined below) and on or about every other Wednesday thereafter, Atlas shall provide a written summary of the status and results of its Due Diligence Investigation, which summary shall set forth any areas of concern with respect to each category set forth in Section 6(c)(3) for which Atlas retains a termination right thereunder, and the Debtor shall have the right to call a meeting with Atlas to discuss any such summary. For the avoidance of doubt, the failure to raise any concern or issue in a summary delivered pursuant to this Section shall not preclude Atlas's termination of this Agreement in accordandance with Section 6(c)(3).

    4.    The Debtor's Obligations

    a.    Affirmative Covenants. The Debtor agrees that, subject to the terms and conditions of this Agreement, the Debtor shall do the following:

    (1)    support and promptly consummate the Transaction as expeditiously as practicable under applicable law on terms and conditions consistent in all material respects with this Agreement;

    (2)    promptly notify such professionals as may be retained by Atlas (collectively, the "**Atlas Advisors**") in writing of any governmental or third party complaints, litigations, investigations or hearings (or communications indicating that the same may be contemplated or threatened) known to senior management of the Debtor or the restructuring advisors to the Debtor, in any such case which could reasonably be expected to (A) materially and adversely affect the Debtor or (B) prevent or materially delay the consummation of the Transaction;

    (3)    provide the Atlas Advisors (A) reasonable access to the Debtor's books, records, facilities, management and advisors for the purposes of evaluating the Transaction and the Assets and liabilities of the Debtor (to the fullest extent possible under applicable law), (B) timely and reasonably detailed responses to all reasonable diligence requests of Atlas, and (C) information with respect to all material permits, agreements, executory contracts and unexpired leases of the Debtor (including the estimated amount of cure costs and rejection damages associated with the assumption, assignment and/or rejection thereof in the Chapter 11 Case);

    (4)    provide draft copies of all Restructuring Documents (including, but not limited to, all material motions, applications, orders, agreements and other documents) the Debtor intends to execute and/or file with the Bankruptcy Court to Latham & Watkins LLP, as counsel to Atlas ("**L&W**"), at least three business days prior to the date the Debtor intends to execute and/or file any such motion, application, order, agreement or other document, and consult in advance in good faith with Atlas and L&W regarding the form and substance of any such proposed motion, application, order, agreement or other document;

    (5)    timely file a written objection or response to any motion filed with the Bankruptcy Court by any party seeking the entry of an order (A) directing the appointment of an examiner with expanded powers or a trustee, (B) converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, (C) dismissing the Chapter 11 Case, or

3

(D) modifying or terminating the Debtor's exclusive right to file and/or solicit acceptances of a plan of reorganization;

(6) timely file a written objection or response to any motion filed with the Bankruptcy Court by any party challenging this Agreement or the Plan; and

(7) take all reasonable actions contemplated by this Agreement that are necessary to (A) facilitate the implementation or consummation of the Transaction and (B) obtain approval by the Bankruptcy Court of the Restructuring Documents.

b. <u>Negative Covenants</u>. The Debtor agrees that, subject to the terms and conditions of this Agreement, without the prior written consent of Atlas, the Debtor shall not, directly or indirectly, do or permit to occur any of the following:

(1) seek, solicit, propose, support, assist, engage in negotiations in connection with, or participate in the formulation of, any Alternative Transaction;

(2) modify the Plan, in whole or in part, in a manner that is inconsistent in any material respect with this Agreement;

(3) withdraw or revoke the Plan or publicly announce its intention not to pursue the Plan or to pursue an Alternative Transaction;

(4) file a motion (i) to voluntarily dismiss the Chapter 11 Case, (ii) for conversion of the Chapter 11 Case to Chapter 7 of the Bankruptcy Code, or (iii) for appointment of an examiner with expanded powers pursuant to section 1104 of the Bankruptcy Code or a trustee in the Chapter 11 Case; and

(5) file any motion or pleading with the Bankruptcy Court (including any modifications or amendments thereof) that, in whole or in part, is inconsistent in any material respect with this Agreement or the Plan and is not otherwise reasonably satisfactory in all material respects to Atlas.

5. <u>Break-up Fee and Expense Reimbursement; Atlas Deposit</u>.

a. The Debtor shall pay Atlas a cash break-up fee in the amount of $4,050,000 (the "**Break-up Fee**") if Atlas terminates this Agreement in accordance with Section 6(c)(4), (5), (6), (7), (9), (10), (11), (12), (13), or (14) hereof. If the Break-up Fee becomes payable, the Debtor shall also reimburse Atlas for all reasonable fees and expenses incurred by Atlas in connection with this Agreement, the Plan, the other Restructuring Documents, and the Transaction, provided that such expenses shall be capped at $750,000 (the "**Expense Reimbursement**"). The Break-up Fee and Expense Reimbursement shall (a) constitute administrative claims under section 503(b) of the Bankruptcy Code, (b) be secured by valid, enforceable, perfected first-priority liens on and security interests in all of the Assets that are not subject to Existing Liens (as defined below), and (c) be secured by valid, enforceable, perfected junior liens on and security interests in all of the Assets that are subject only to valid, enforceable, properly perfected, non-avoidable security interests or liens (the "**Existing Liens**"). Atlas shall be

4

entitled to credit bid the amount of the Break-up Fee and Expense Reimbursement pursuant to section 363(k) of the Bankruptcy Code if the Debtor seeks to sell any or all of the Assets pursuant to section 363 of the Bankruptcy Code.

    b. Within five business days of Atlas's waiver of its termination rights under Section 6(c)(3) hereof or the expiration of all such termination rights, Atlas shall deposit into an escrow account $500,000 in cash (the "**Atlas Deposit**") with a national title company (the "**Escrow Agent**") and pursuant to an escrow agreement acceptable to the Parties. If the Transaction closes, the Atlas Deposit shall be applied to Atlas's obligations pursuant to Section 3. If Atlas terminates this Agreement pursuant to Section 6(c)(4), (5), (6), (7), (9), (10), (11), (12), (13), or (14) or if the Debtor terminates this Agreement pursuant to Section 6(b)(4) or (6), the Escrow Agent shall promptly return to Atlas the Atlas Deposit, and the Debtor shall execute all documentation reasonably required by Atlas in connection therewith. If the Debtor terminates this Agreement pursuant to Section 6(b)(5) or (7), the Escrow Agent shall transfer the Atlas Deposit to the Debtor, and the Debtor shall be permitted to retain the Atlas Deposit as liquidated damages.

    6. Termination

    a. This Agreement may be terminated by written agreement of the Parties.

    b. The Debtor may terminate this Agreement by written notice to Atlas, delivered in accordance with Section 17 hereof, upon the occurrence of any of the following events:

    (1) (i) a motion seeking approval of this Agreement in form and substance acceptable to the Parties (the "**PIA Approval Motion**") shall not have been filed by the Debtor within three days of the date on which the Parties agree to the final form of this Agreement, or (ii) an order approving this Agreement in form and substance acceptable to the Parties (the "**PIA Approval Order**") shall not have been entered by the Bankruptcy Court within 30 days of the date the PIA Approval Motion is filed;

    (2) a third party commitment to provide financing in an amount not less than $100,000,000 in form and substance mutually acceptable to the Parties shall not have been obtained within 90 days of the entry of the PIA Approval Order;

    (3) the failure of Atlas to acknowledge in writing (i) the completion and satisfaction in all respects of its Due Diligence Investigation and (ii) the waiver of its termination rights under Section 6(c)(3) hereof, within 150 days of entry of the PIA Approval Order;

    (4) payment to Atlas in full in cash of the Break-up Fee and Expense Reimbursement;

5

NY\6127750.9

(5) the material breach of this Agreement by Atlas of its obligations hereunder, which breach is not cured within five business days after the giving of written notice of such breach by the Debtor to Atlas;

(6) the Bankruptcy Court or other governmental authority with jurisdiction shall have issued any order, injunction or other decree or taken any other action, in each case, which has become final and non-appealable and which restrains, enjoins or otherwise prohibits the implementation of the Transaction;

(7) any representation or warranty made by Atlas in this Agreement is materially incorrect or inaccurate as of the date hereof (or such other applicable date with respect to representations and warranties expressly made as of a specific date other than the date hereof); or

(8) the failure of Atlas to provide the Atlas Deposit pursuant to Section 5(b).

The termination rights set forth in this Section 6(b) may be waived by the Debtor, in its sole and absolute discretion, by written notice to Atlas, delivered in accordance with Section 17 hereof.

c. Atlas may terminate this Agreement by written notice to the Debtor, delivered in accordance with Section 17 hereof, upon the occurrence of any of the following events:

(1) (i) the PIA Approval Motion shall not have been filed by the Debtor within three days of the date on which the Parties agree to the final form of this Agreement, or (ii) the PIA Approval Order shall not have been entered by the Bankruptcy Court within 30 days of the date the PIA Approval Motion is filed;

(2) a third party commitment to provide financing in an amount not less than $100,000,000 in form and substance mutually acceptable to the Parties shall not have been obtained within 90 days of the entry of the PIA Approval Order;

(3) the results of Atlas's Due Diligence Investigation shall not be acceptable to Atlas in its sole and absolute discretion; provided, that Atlas shall not be entitled to exercise this right of termination unless it provides notice of its election to do so on the following timetable:

(a) within 45 days after entry of the PIA Approval Order for all title issues (any easements, covenants and similar restrictions on title approved by Atlas in writing shall be "**Permitted Encumbrances**");

(b) within 75 days after entry of the PIA Approval Order for all environmental issues;

(c) within 90 days after entry of the PIA Approval Order for all engineering issues;

6

(d) within 150 days after entry of the PIA Approval Order for all permit, zoning and land use entitlement issues; and

(e) within 150 days after entry of the PIA Approval Order for all issues related to permits issued by the Federal Aviation Administration;

(4) the Plan and a motion seeking entry of an order approving the Disclosure Statement shall not have been filed with the Bankruptcy Court on or prior to March 10, 2014;

(5) the Confirmation Order shall not have been entered by the Bankruptcy Court on or prior to August 31, 2014;

(6) the effective date of the Plan shall not have occurred on or prior to October 31, 2014;

(7) a material breach by the Debtor of its obligations hereunder;

(8) the Bankruptcy Court or other governmental authority with jurisdiction shall have issued any order, injunction or other decree or taken any other action, in each case, which has become final and non-appealable and which restrains, enjoins or otherwise prohibits the implementation of the Transaction;

(9) any representation or warranty made by the Debtor in this Agreement is materially incorrect or inaccurate as of the date hereof (or such other applicable date with respect to representations and warranties expressly made as of a specific date other than the date hereof);

(10) entry of an order of the Bankruptcy Court approving an Alternative Transaction;

(11) entry of an order of the Bankruptcy Court modifying or terminating the Debtor's exclusive right to file and/or solicit acceptances of a plan of reorganization;

(12) (i) the appointment of a trustee or an examiner with expanded powers in the Chapter 11 Case, (ii) the dismissal of the Chapter 11 Case, or (iii) the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code;

(13) the Bankruptcy Court grants relief terminating, annulling, or modifying the automatic stay (as set forth in section 362 of the Bankruptcy Code) with regard to any assets of the Debtor having an aggregate fair market value in excess of $100,000; or

(14) the amendment or modification, or waiver of, any term or condition of any Restructuring Document so as to be, in whole or in part, inconsistent in any material respect with this Agreement or otherwise not reasonably acceptable to Atlas, without the prior written consent of Atlas.

The termination rights set forth in this Section 6(c) may be waived by Atlas, in its sole and absolute discretion, by written notice to the Debtor, delivered in accordance with Section 17 hereof.

7. Effect of Termination

a. If this Agreement is terminated pursuant to Section 6 hereof, any and all further obligations of the Parties hereunder shall be terminated without further liability except as provided in subsection (b) of this Section 7.

b. Notwithstanding the termination of this Agreement pursuant to Section 6 hereof, the agreements and obligations of the Parties in Sections 5, 7, 12, 13, 14, 15, 17, 18, 19, and 25 hereof shall survive such termination and shall continue in full force and effect for the benefit of the Parties in accordance with the terms hereof.

c. Notwithstanding anything to the contrary in this Agreement, (i) termination of this Agreement shall not relieve any Party from liability for its breach or non-performance of its obligations hereunder prior to the date of such termination, and (ii) the right to terminate this Agreement under Section 6 shall not be available to any Party whose failure to fulfill any of its material obligations under this Agreement has been the cause of, or resulted in, the occurrence of the proposed termination event.

d. The Parties agree and acknowledge that each Party's actual damages in the event of a breach of this Agreement by the other Party would be extremely difficult or impracticable to ascertain and that the Break-up Fee and Expense Reimbursement and the Atlas Deposit, respectively, represent the Parties' reasonable estimate of such damages. Notwithstanding any other provision of this Agreement, the Debtor shall have no remedy or claim for any breach of this Agreement by Atlas other than the Atlas Deposit, and the Atlas Deposit shall be the full liquidated damages for any and all failures to act, defaults or breaches hereunder by Atlas. Notwithstanding any other provision of this Agreement, Atlas shall have no remedy or claim for any breach of this Agreement by the Debtor other than the Break-up Fee and Expense Reimbursement, and the Break-up Fee and Expense Reimbursement shall be the full liquidated damages for any and all failures to act, defaults or breaches hereunder by the Debtor.

8. Representations of the Debtor

The Debtor hereby represents and warrants to Atlas that the following statements are true and correct as of the date hereof:

a. Due Organization and Good Standing. It is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization.

b. Power and Authority. It has all requisite partnership power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement.

8

c. <u>Authorization</u>. The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary partnership action on its part.

d. <u>Binding Obligation</u>. This Agreement has been duly executed and delivered by the Debtor and is the legally valid and binding obligation of it, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

e. <u>No Conflicts</u>. The execution and delivery of this Agreement and the performance of its obligations hereunder do not and will not (i) violate any order, edict, injunction, decree, law, statute, rule or regulation applicable to it, (ii) conflict with, result in a breach or violation of, or constitute (with due notice or lapse of time or both and exclusive of defaults relating to solvency and bankruptcy) a default under, or the creation of a right of acceleration of any obligations under or termination of, or require any action by (including any authorization, consent or approval) or notice to any person or entity with respect to, any material contractual obligation to which it is a party or under its by-laws (or other organizational documents), other than approval of the board of directors of the Debtor (which approval has been obtained prior to the execution of this Agreement) or (iii) result in the creation of any lien or other encumbrance upon any properties or assets of the Debtor.

f. <u>Governmental Consents</u>. The execution and delivery of this Agreement and the performance of its obligations hereunder do not and will not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body, other than such filings as may be necessary or required in connection with the Chapter 11 Case, the Plan or the Disclosure Statement.

g. <u>No Litigation</u>. No litigation or proceeding before any court, arbitrator, or administrative or governmental body is pending against it that would adversely affect its ability to enter into this Agreement or perform its obligations hereunder.

h. <u>Representation</u>. It has been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement, and has had the contents hereof fully explained by such counsel and is fully aware of such contents and legal effect.

9. <u>Representations of Atlas</u>

Atlas represents and warrants to the Debtor that the following statements are true and correct as of the date hereof:

a. <u>Power and Authority</u>. It has all requisite limited liability company power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its obligations under, this Agreement.

9

    b. <u>Authorization</u>. The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary limited liability company action on its part.

    c. <u>No Conflicts</u>. The execution and delivery of this Agreement and the performance of its obligations hereunder do not and will not (i) violate any order, edict, injunction, decree, law, statute, rule or regulation applicable to it, (ii) conflict with, result in a breach or violation of, or constitute (with due notice or lapse of time or both) a default under, or the creation of a right of acceleration of any obligations under or termination of, or require any action by (including any authorization, consent or approval) or notice to any person or entity with respect to, any material contractual obligation (other than this Agreement) to which it is a party or under its by-laws (or other organizational documents), or (iii) result in the creation of any lien or other encumbrance upon any properties or assets of Atlas.

    d. <u>Binding Obligation</u>. This Agreement has been duly executed and delivered and is the legally valid and binding obligation of it, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

    e. <u>Governmental Consents</u>. The execution and delivery of this Agreement and the performance of its obligations hereunder do not and will not require it to make or obtain any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state or other governmental authority or regulatory body.

    f. <u>No Litigation</u>. No litigation or proceeding before any court, arbitrator, or administrative or governmental body is pending against it that would adversely affect its ability to enter into this Agreement or perform its obligations hereunder.

    g. <u>Representation</u>. It has been represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement, and has had the contents hereof fully explained by such counsel and is fully aware of such contents and legal effect.

10. <u>Effectiveness</u>

The Parties obligations under this Agreement are conditioned upon entry of the PIA Approval Order by the Bankruptcy Court. Upon entry of the PIA Approval Order, this Agreement shall immediately become effective and binding on the Parties.

11. <u>Automatic Stay</u>

The Debtor waives, to the greatest extent possible, the applicability of the automatic stay of section 362 of the Bankruptcy Code to (i) Atlas giving notice of termination pursuant to this Agreement and (ii) Atlas seeking enforcement of any rights or remedies under this Agreement, including the right to the prompt return of the Atlas Deposit in accordance with <u>Section 5(b)</u>, in the Bankruptcy Court.

10

12. Prior Negotiations

This Agreement sets forth in full the terms of agreement between the Parties and is intended as the full, complete and exclusive contract governing the relationship between the Parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements and understandings, whether written or oral, between or among the Parties with respect thereto; provided, however, that any confidentiality agreement between the Parties shall remain in full force and effect in accordance with its terms.

13. Amendment or Waiver

No waiver, modification or amendment of the terms of this Agreement shall be valid unless such waiver, modification or amendment is in writing and has been signed by the Parties hereto. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver. Without limiting the foregoing, the Parties hereto may extend any time period by written agreement and with the approval of the Bankruptcy Court.

14. **WAIVER OF JURY TRIAL**

**EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.**

15. Governing Law and Consent to Jurisdiction

This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without regard to such state's choice of law provisions which would require the application of the law of any other jurisdiction. By its execution and delivery of this Agreement, each of the Parties agrees that the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of or in connection with this Agreement.

16. Headings; Recitals

The section headings of this Agreement are for convenience of reference only and shall not affect the interpretation hereof or, for any purpose, be deemed a part of this Agreement.

17. Notice

Any notices or other communications required under, or otherwise in connection with, this Agreement shall be in writing and shall be deemed to have been duly given if personally delivered by courier service, messenger or if duly deposited in the mails, by certified or registered mail, postage prepaid-return receipt requested, or if sent by e-mail, to the following addresses or e-mail addresses, or such other addresses or e-mail addresses as may be furnished hereafter by notice in writing, to the following Parties:

<u>If to the Debtor</u>:

Shelbourne North Water Street, L.P.
4526 North Kenneth
Chicago, IL 60630
Attn: Garrett Kelleher
Email: garrett.kelleher@kelleherholdings.com

*with a copy to*:

FrankGecker LLP
325 North LaSalle Street
Suite 625
Chicago, IL 60654
Attn: Joseph D. Frank and Frances Gecker
Email: jfrank@fgllp.com and fgecker@fgllp.com

<u>If to Atlas</u>:

Atlas Apartment Holdings LLC
221 North LaSalle Street
25th Floor
Chicago, IL 60601
Attn: Steven Ivankovich
Email: steven.ivankovich@atlasresidentialusa.com

*with a copy to*:

Latham & Watkins LLP
233 South Wacker Drive
Suite 5800
Chicago, IL 60606
Attn: Douglas Bacon and Alicia C. Davis
Email: douglas.bacon@lw.com and alicia.davis@lw.com

18. <u>Successors and Assigns</u>

This Agreement is intended to and shall bind and inure to the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators and representatives.

12

19. <u>No Third-Party Beneficiaries</u>

Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties and their respective successors, permitted assigns, heirs, executors, administrators and representatives, and no other person or entity shall be a third party beneficiary hereof or shall otherwise be entitled to enforce any provision hereof.

20. <u>Counterparts</u>

This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Any Party may execute and deliver a counterpart of this Agreement by email of a signature page of this Agreement signed by such Party, and any such email signature shall be treated in all respects as having the same effect as an original signature.

21. <u>Acknowledgement; Not a Solicitation</u>

This Agreement does not constitute, and shall not be deemed to constitute (i) an offer for the purchase, sale, exchange, hypothecation or other transfer of securities for purposes of the Securities Act of 1933 and the Securities Exchange Act of 1934 (or any other federal or state law or regulation) or (ii) a solicitation of votes on the Plan (or for or against any other plan of reorganization) for purposes of the Bankruptcy Code.

22. <u>No Strict Construction</u>

Each Party acknowledges that it has received adequate information to enter into this Agreement, and that this Agreement has been prepared through the joint efforts of the Parties. Neither the provisions of this Agreement nor any alleged ambiguity herein shall be interpreted or resolved against any Party on the ground that such Party's counsel drafted this Agreement, or based on any other rule of strict construction.

23. <u>Remedies Cumulative; No Waiver</u>

Subject to <u>Section 7(d)</u>, all rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party. Subject to <u>Section 7(d)</u>, the failure of any Party to exercise any right, power, or remedy provided under this Agreement or otherwise available in respect hereof at law or in equity, or to insist upon strict compliance by any other Party with its obligations hereunder, and any custom or practice of the Parties at variance with the terms hereof, shall not constitute a waiver by such Party of its right to exercise any such or other right, power, or remedy or to demand such strict compliance.

24. <u>Severability</u>

If any portion of this Agreement shall be held to be invalid, unenforceable, void or voidable, or violative of applicable law, the remaining portions of this Agreement so far as they may practicably be performed shall remain in full force and effect and binding on the Parties.

13

Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

25.  Time of Essence

Time is of the essence in the performance of each of the obligations of the Parties and with respect to all covenants and conditions to be satisfied by the Parties in this Agreement and all documents, acknowledgments and instruments delivered in connection herewith.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties hereto have caused this Plan Investment Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.


SHELBOURNE NORTH WATER STREET, L.P.

By:_____
Name:
Title:


ATLAS APARTMENT HOLDINGS LLC

By: _____
Name:  Steven Ivankovich
Title:   President

IN WITNESS WHEREOF, the Parties hereto have caused this Plan Investment Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

SHELBOURNE NORTH WATER STREET, L.P.

By: *[signature]*
Name: GARRETT KELEHER
Title: MANAGER

ATLAS APARTMENT HOLDINGS LLC

By:_____
Name:
Title: