**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re:<br><br>SHELBOURNE NORTH WATER STREET, L.P.,<br><br>                Debtor. | Chapter 11<br><br>Case No. 13-44315 (JSB) |

**OBJECTION OF RMW ACQUISITION COMPANY, LLC TO THE DEBTOR'S
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS:  (A) AUTHORIZING
DEBTOR TO OBTAIN POSTPETITION FINANCING; (B) GRANTING LIENS AND
SUPER-PRIORITY CLAIMS; (C) SCHEDULING FINAL HEARING; AND (D)
<u>GRANTING RELATED RELIEF</u>**

RMW Acquisition Company, LLC ("<u>RMW</u>"), hereby submits its objection (the "<u>Objection</u>") to the *Debtor's Motion for Entry of Interim and Final Orders:  (A) Authorizing Debtor to Obtain Postpetition Financing; (B) Granting Liens and Super-Priority Claims; (C) Scheduling Final Hearing; and (D) Granting Related Relief* (the "<u>Atlas DIP Motion</u>") (D.I. 98) filed by Shelbourne North Water Street, L.P. (the "<u>Debtor</u>"), which seeks approval of a proposed $250,000 postpetition facility (the "<u>Atlas DIP</u>") to be provided by Atlas Apartment Holdings, LLC ("<u>Atlas</u>") in the above-captioned bankruptcy case (the "<u>Bankruptcy Case</u>").  In support of its Objection, RMW respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The proposed Atlas DIP is a terrible financing proposal for the Debtor.  The Debtor's decision to seek approval of the Atlas DIP – when a materially better alternative is readily available from RMW – is improper, does not comply with the requirements for DIP loan approval under Bankruptcy Code section 346(c), and should be summarily rejected by the Court.

2. The Atlas DIP makes no economic sense, and the Debtor is proposing it for one reason only: to lock up this bankruptcy case in favor of the non-competitive, non-transparent plan process contemplated by the Atlas Investment Agreement Motion.[1] The proposed Atlas DIP provides for exorbitant fees, a pawn-shop like 15% interest rate with an even higher 20% default interest rate, indemnification of Atlas by the Debtor, onerous termination rights in favor of Atlas tied directly to an Atlas-sponsored plan process. Moreover, the Atlas DIP provides for an inadequate $250,000 loan commitment which is projected to run out midway through this case, inviting unnecessary chaos when the estate can least afford it.

3. In contrast to the proposed Atlas DIP, RMW is ready and willing to provide a significantly cheaper and less onerous $1 million post-petition facility (the "RMW DIP") to pay all Property-related expenses requested by the Receiver (defined below) in accordance with the Receiver Budget (defined below) and up to $75,000 for Court-approved non-Property-related administrative fees and expenses, including the Debtor's allowed professional fees.[2] The RMW DIP bears an 8% interest rate (*i.e.*, approximately ***half*** of the 15% interest rate in the Atlas DIP) with no default interest and no fees and expenses, no indemnification and does not require liens on unencumbered property.

4. Further, and most critically, the RMW DIP is plan-neutral, meaning that it does not lock the debtor or the Court into a particular plan or plan sponsor. This is not the case with the Atlas DIP. Atlas could terminate the proposed Atlas DIP if the Court does not enter an

---

[1] Simultaneously with the filing of this Objection, RMW is filing its objection (the "Investment Agreement Objection") to the Debtor's motion (the "Investment Agreement Motion") to approve the Atlas plan investment agreement (the "Atlas Investment Agreement") (D.I. 94). All of the arguments contained in the Investment Agreement Objection are incorporated herein by reference. In addition, RMW reserves and preserves its rights to assert additional objections to the Atlas DIP if the Debtor seeks the Court's approval of the Atlas DIP on a final basis.

[2] RMW calculates that $75,000 would have been the most that would have been available for non-Property-related administrative fees and expenses under the Atlas DIP.

order approving the Atlas Investment Agreement Motion within 30 days of entry of the interim DIP financing order. The consequence of such a termination would put this case in severe jeopardy – for instance leaving the Receiver without funding to make its March property tax payment. By tying the proposed Atlas DIP to approval of the fatally flawed Atlas Investment Agreement, the Debtor is taking unnecessary risks, all of which will ultimately be borne by its estate.

5. RMW actually first presented a proposed RMW DIP to the Debtor containing the terms set out above on December 26, 2013.[3] As contemplated by the Receiver Motion (defined below), RMW made its DIP financing offer early so that there would be more than adequate time to file papers with the court to go directly to a final DIP order prior to the Receiver needing money to pay the March 4 tax bill. The Debtor did not engage immediately and, thereafter, only sporadically, on RMW's proposal while the parties appeared close to agreement,[4] with the only remaining issue the scope of RMW's access to documents.[5] Ultimately, there was no agreement reached with the Debtor in December of 2013 or January 2014. Indeed, it was only on February 10, 2014, that the Debtor advised that it would not proceed with the RMW DIP but would rather try to go forward with the inferior Atlas DIP.

6. In short, the Debtor cannot satisfy Bankruptcy Code section 364's requirement that the terms and conditions of the Atlas DIP are fair, reasonable and the best available under the circumstances. Accordingly, the Atlas DIP Motion should be denied.

---

[3] A copy of the email sent by RMW's counsel to Debtor's counsel on December 26, 2014 with a draft motion and order embodying the RMW DIP is attached as "**Exhibit A**."

[4] A copy of a December 31, 2013 from the Debtor identifying issues that needed still needed to be addressed is attached as "**Exhibit B**."

[5] A copy of the email sent by RMW's counsel to Debtor's counsel on January 10, 2014 with clean and redlined versions of the draft motion and order embodying the RMW DIP reflecting the Debtor's comments to the initial versions  is attached as "**Exhibit C**"

**OBJECTION**

7.      The Atlas DIP Motion must be denied because the Atlas DIP is not the best DIP loan available and is not in the best interests of the Debtor or its estate. Specifically, because the terms of the Atlas DIP are cost-prohibitive, riskier and significantly less attractive than the RMW DIP, the Debtor cannot satisfy its evidentiary burden to demonstrate the sound exercise of its business judgment or even good common sense.

8.      To determine whether to approve a DIP loan, courts consider various standards, including "a business judgment test, a good faith test determining whether the [use or] sale is fair and equitable, and a test to assess whether the transaction is in the best interest of the estate." *In re Olde Prairie Block Owner, LLC*, 448 B.R. 482, 493 (Bankr. N.D. Ill. 2011). When the Debtor's insiders stand to benefit most from proposed DIP financing, the proposed DIP financing must be reviewed under the "entire fairness" standard, requiring a demonstration of fair dealing and fair price and terms. *See, e.g., In re Los Angeles Dodgers LLC*, No. 11-12010 (KG), 2011 WL 2937905, at *3 (Bankr. D. Del. July 22, 2011) (reviewing DIP financing in which the Debtor's/principal's judgment was compromised under the entire fairness standard).

9.      Furthermore, in order to satisfy Bankruptcy Code section 364(c), courts require that the debtor demonstrate that the terms and conditions of proposed DIP were fair, reasonable and the best available under the circumstances, and were negotiated in good faith and at arm's length. *See, e.g., In re Farmland Indus., Inc.*, 294 B.R. 855, 879-880 (Bankr. W.D. Mo. 2003) (citing *In re Worldcom, Inc.*, 2002 WL 1732646, at *3 (Bankr. S.D.N.Y. 2002)); *see also In re DB Capital Holdings, LLC*, 454 B.R. 804, 822 (Bankr. D. Colo. 2011) ("To prevail on a motion to obtain financing on a super-priority basis, the debtor has the burden of showing the following: 1) the proposed financing in an exercise of sound and reasonable business judgment;

2) no alternative financing is available on any other basis; 3) financing is in the best interests of the estate and its creditors; and 4) no better offers, bids, or timely proposals are before the court."). As set forth herein, the Debtor cannot make any of the required showings.

I.  **The RMW DIP is Materially Better than the Atlas DIP**

10. In the Atlas DIP Motion, the Debtor represents to this Court, without any supporting evidence (and none exists), that it "has been unable to procure alternate financing in the absence of the granting of superpriority claims and liens, let alone on terms and conditions more favorable" than the Atlas DIP. Atlas DIP Motion at ¶31. This allegation and representation are not true. As set forth above in Paragraph 5, RMW had offered to provide the Debtor a DIP on substantially similar economic terms to those which RMW has already been funding all Property-related expenses to date in this bankruptcy case.[6]

11. Moreover, to eliminate the scintilla of an argument from the Debtor that the Atlas DIP is the only financing source available (because Atlas has agreed to pay a portion of Debtor's counsel fees), RMW will similarly agree to make available up to $75,000 of the $1 million RMW DIP to pay Court-approved non-Property related administrative fees and expenses, including the Debtor's allowed professional fees.

12. The following chart highlights a number of the salient economic-based and non-economic differences between the Atlas DIP and the RMW DIP and demonstrates that entry into the proposed Atlas DIP does not represent a sound exercise of the Debtor's business judgment:

---

[6] Recognizing that it was crucial to maintain and preserve the Debtor's sole asset – a 2.2. acre piece of property located at the address commonly known as 400 East North Water Street, Chicago Illinois (the "Property"), the Debtor and RMW jointly filed a motion (the "Receiver Motion") seeking the Court's approval to enter into a stipulation (the "Receiver Stipulation") to, among other things, allow Stephen G. Bell, the court-appointed receiver (the "Receiver") to stay in possession, custody and control of the Property. In connection with the Receiver Motion, the Debtor filed the receiver's 2014 budget to maintain and preserve the Property (the "Receiver Budget"). A copy of the Receiver Budget is annexed hereto as "**Exhibit D**."

|  | **Atlas** | **RMW** |
|---|---|---|
| **Facility Amount:** | $250,000 | Up to $1 million. |
| **Interest Rate :** | Interest Rate: 15%. <br> Default Interest Rate: 20%. | Interest Rate: 8%. <br> No default interest rate charge. |
| **Commitment Fee:** | Yes.  $20,000 | None. |
| **DIP Lender Fees and Expenses:** | Yes.  Must be paid from DIP Facility and not subject to Court review. | None. |
| **Use of Proceeds:** | DIP proceeds can be used to pay: (a) Real Estate Taxes; (b) fees and expenses in connection with Debtor's Chapter 11 case, including funding the Debtor's professionals, Receiver and the DIP Facility; and (c) other expenses regarding the general corporate purposes of the Debtor. | DIP proceeds can be used to pay Property-related expenses requested by the Receiver in accordance with the Receiver Budget.  RMW is also willing to provide up to $75,000 to pay administrative expenses, such as fees of Debtor's counsel. |
| **Security/Priority:** | Priority over all administrative claims; junior lien on all validly encumbered collateral *and* first-priority liens on all unencumbered property. | Priority over all administrative claims and first-priority on RMW's own collateral and cash collateral. <br> No lien on unencumbered property. |
| **Non-Standard Egregious Events of Default:** | <ul><li>The Debtor is not permitted to seek to procure additional DIP funding -- which it will certainly need -- even on an unsecured basis, unless the Atlas DIP is paid in full.</li><li>The Bankruptcy Court's failure to enter an order approving the Atlas Investment Agreement Motion within 30 days of the entry of the interim financing order.</li><li>Other Events of Default are tied to the failure to file/procure confirmation of a Plan of Reorganization acceptable to Atlas.  (Such Events of Default</li></ul> | None. |

| | | |
|---|---|---|
| | are not qualified by Atlas' failure to obtain necessary $100 million in third-party financing set forth as a termination event in the Atlas Investment Agreement.  *See* Investment Agreement ¶ ¶ 6(b)(2) and (c)(2).) | |
| **Automatic Termination of the Automatic Stay:** | Yes, subject to five days written notice during which opposing parties (other than the US Trustee) -- *including RMW* -- can only contest occurrence of event of default through Bankruptcy Court. | Yes, subject to five days written notice during which the *Debtor* can only contest occurrence of event of default through Bankruptcy Court. |
| **Indemnification:** | Yes, related to the DIP other than for gross negligence, willful misconduct and fraud. | None. |

13. As demonstrated by the chart, the RMW DIP is materially better than the proposed Atlas DIP and the Debtor's statement in the Atlas DIP Motion that it "has been unable to procure alternate financing on better terms and in the absence of the granting of superpriority claims and liens," especially on unencumbered property, is summarily undercut by the truth of the matter.

14. Additionally, as set forth in the chart above, the proposed Atlas DIP also provides for automatic termination of the automatic stay upon an Event of Default under the Atlas DIP, subject to five days written notice during which any party in opposition (other than the U.S. Trustee) can only contest occurrence of the Event of Default through Bankruptcy Court. This provision is particularly egregious, since it attempts to limit the scope of RMW's objections to a lifting of the stay with respect to property secured by its *senior liens* on the mortgage property. To put it mildly, this provision is patently flawed and could never be approved. It usurps

RWM's rights as both pre-petition secured mortgage lender and as the senior post-petition lender with regard to all Property-related expenses to date.[7]

15. As discussed above, another problem with the proposed Atlas DIP, compared with the RMW DIP, is that it does not provide the Debtor with sufficient funding to pay Property-related expenses if this case goes beyond July. After deducting the $20,000 Atlas commitment fee -- as well as Atlas's fees and expenses in connection with the Atlas DIP -- and the $75,000 to pay the taxes due in March, the Atlas DIP would provide the Debtor with less than $155,000 to pay the fees and expenses embodied in the Receiver Budget as well as the administrative expenses for the duration of the Bankruptcy Case. As set forth in the Receiver Budget, the Property-related expenses total approximately $100,000 until the end of June. That leaves the Debtor with less than $55,000 to pay professional fees and other administrative expenses and assumes the Bankruptcy Case will have concluded before the July tax bill of $155,000 is due.[8]

## **CONCLUSION**

Under the facts and controlling law regarding Bankruptcy Code section 364(c) DIP loans, the Atlas DIP should be rejected and the Atlas Dip Motion should be denied. Specifically, the Debtor has not satisfied the legal requirements to obtain a DIP loan under

---

[7] Moreover, as set forth explicitly in Local Rule 4001-2(B), "[i]n absence of extraordinary circumstances, the court shall not approve interim financing orders that include provisions previously identified in section (A)(2)(a) through (A)(2)(j) of this Rule." The Debtor has failed to demonstrate any "extraordinary circumstances" to justify a requirement on an interim basis that the automatic stay provisions of Bankruptcy Code section 362 be waived upon five-days' written notice of an Event of Default under the Atlas DIP. Therefore, the Court should decline to enter the interim order proposed by the Debtor in connection with the Atlas DIP Motion, unless and until all provisions that are violative of Local Rule 4001-2(B) are removed.

[8] RMW supports this case being concluded with a confirmed and consummated plan by July 2014, before the July tax bill is due and is certain that such a result is attainable. However, the Investment Agreement Motion contemplates that the case will extend well beyond July and thus under the Debtor's own proposed plan the Atlas DIP is insufficient to provide the funding needed to pay administrative expenses.

{10620-001 RESP A0367480.DOCX}    8

section 364 of the Bankruptcy Code, and there is not one scintilla of evidence that the Debtor can put forward to legitimize its request for the Atlas DIP.  The DIP lender protections in the Atlas DIP are facially offensive on a stand-alone basis and unnecessary in light of the availability of the RMW DIP.  Further, with the willingness of RMW to include DIP funding to pay allowed estate administrative claims, there can be no colorable argument to support the Atlas DIP.  For all of the reasons set forth in this Objection, the Court should reject the Atlas DIP and deny the Atlas DIP Motion.

      **WHEREFORE**, the Atlas DIP Motion should be denied.

Dated: February 17, 2014
   Chicago, Illinois

s/ Brian L. Shaw\_\_\_\_
Brian L. Shaw
Peter J. Roberts
SHAW FISHMAN GLANTZ & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, Illinois 60654
Telephone:  (312)-541-0151
Facsimile: (312) 980-3888
Email: bshaw@shawfishman.com
    proberts@shawfishman.com

- and -

Lenard M. Parkins (*pro hac vice*)
Trevor R. Hoffmann (*pro hac vice*)
Jonathan Hook (*pro hac vice*)
John D. Beck (*pro hac vice*)
HAYNES AND BOONE LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone:  (212) 659-7300
Facsimile:  (212) 918-8989
Email: lenard.parkins@haynesboone.com
    trevor.hoffmann@haynesboone.com
    jonathan.hook@haynesboone.com
    john.beck@haynesboone.com

*Attorneys for RMW Acquisition Company, LLC*