IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re:<br><br>SHELBOURNE NORTH WATER STREET,<br>L.P.,<br><br>Debtor. | Chapter 11<br><br>Case No. 13-44315 (JSB) |

**FINAL ORDER AUTHORIZING DEBTOR
TO OBTAIN POSTPETITION FINANCING WITH PRIORITY OVER
ADMINISTRATIVE EXPENSES AND SECURED BY LIENS ON PROPERTY OF
THE ESTATE PURSUANT TO BANKRUPTCY CODE SECTIONS 364(c) AND (d)**

Shelbourne North Water Street, L.P. (the "Debtor"), the debtor in the above-captioned bankruptcy case (the "Bankruptcy Case"), having filed Debtor's Motion for Entry of Interim and Final Orders: (a) Authorizing Debtor to Obtain Postpetition Financing; (b) Granting Liens and Super-Priority Claims; (c) Scheduling a Final Hearing; and (d) Granting Related Relief on February 11, 2014 [Docket No. 98] (the "DIP Financing Motion") seeking entry of an order authorizing the Debtor to, among other things, incur postpetition indebtedness; and RMW Acquisition Company, LLC having filed the Objection of RMW Acquisition Company, LLC ("RMW") to the Debtor's Motion for Entry of Interim and Final Orders: (a) Authorizing Debtor to Obtain Postpetition Financing; (b) Granting Liens and Super-Priority Claims; (c) Scheduling a Final Hearing; and (d) Granting Related Relief [Docket No. 101] offering to provide DIP financing on better economic terms and seeking corresponding administrative priority claims pursuant to 11 U.S.C. (the "Bankruptcy Code") §§ 361, 362, 364(c)(1), 364(c)(2), and 364(d), Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002 and 4001, and Local Bankruptcy Rule (the "Local Rules") 4001-2; and the Debtor having elected to accept the DIP financing offered by RMW with certain modifications, the following relief is granted to the Debtor by the Court:

(a) Authority to enter into a debtor in possession financing arrangement (the "DIP Loan Facility") with RMW, the Debtor's senior secured lender,[1] or its designee (the "DIP Lender") pursuant to which the DIP Lender will lend the Debtor on a final basis an aggregate principal amount of up to $1,000,000, of which $150,000 will be available for the payment of non-Receiver related administrative expenses (the "Non-Property DIP Amount"). The availability of the remainder of the DIP Loan Facility shall be limited pursuant to the approved budget for the expenses of the Receiver in connection with the preservation of the Debtor's 2.2-acre property located at the address commonly known as 400 East North Water Street, Chicago, Illinois (the "Mortgaged Property") (the "Receiver Budget") annexed hereto as "**Exhibit A**" and the variances from such Receiver Budget permitted herein and to enter into all documents necessary to implement the terms of the DIP Loan Facility;

(b) A ruling that amounts owed by the Debtor to the DIP Lender under the DIP Loan Facility shall constitute claims having super-priority administrative expense priority under Bankruptcy Code section 364(c)(1) (the "Super-Priority Claims"), and except as otherwise qualified by this order, secured by first priority liens on the Mortgaged Property pursuant to Bankruptcy Code sections 364 (d), including, without limitation, on cash collateral consisting of any advances made by the DIP Lender or its predecessors to the Receiver since

---

[1] The Debtor challenges the claim of RMW and nothing contained herein shall be deemed an admission by the Debtor or RMW with respect to the claim of RMW and all rights, remedies, claims and defenses available to the Debtor or RMW are hereby preserved in their entirety.

    2010 through *Receiver Certificates of Indebtedness and Grant of Lien* (collectively, the "Receiver Certificates");[2] and

(c) A finding, pursuant to Bankruptcy Rules 2002 and 4001(c)(1), and the Local Rules that notice of the Final DIP Financing Hearing (as defined below) was sufficient having been given to (i) the United States Trustee (the "U.S. Trustee"), (ii) counsel to the DIP Lender, (iii) counsel to the Receiver, (iv) all creditors of the Debtor, and (v) all parties having requested notice in the Bankruptcy Case; and such notice being sufficient and adequate, and no other or further notice being required;

and the Court having determined that (i) it has jurisdiction over the Bankruptcy Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. §157(B)(2)(A), (D), and (M), and (iii) venue for the Bankruptcy Case and consideration of the Property DIP Motion is proper under 28 U.S.C. §§ 1408 and 1409; and the Court having conducted a hearing on November 27, 2013 (the "November Hearing") and subsequently entered an Order authorizing entry into the *Stipulation (A) Authorizing the Receiver to (i) Remain in Possession, Custody, and Control of the Debtor's Mortgaged Property, and (ii) Maintain, Care for and Preserve Such Mortgaged Property; (B) Excusing the Receiver From Complying with Bankruptcy Code Sections 543(a) and 543(b); and (C) Authorizing the Receiver to Use Funds on Deposit that Constitute Secured Lender's Cash Collateral to Pay Existing and Future Costs and Expenses of the Receiver Relating to the Mortgaged Property and Providing Adequate Protection to Secured Lender Therefor* (the "Stipulation"), by which the Receiver is to preserve the Mortgaged Property for the benefit of the Debtor's estate using RMW's Cash

---

[2] The Receiver executed Receiver Certificates on March 25, 2011 for $1,500,000; April 2, 2012 for $1,115,000; and February 26, 2013 for $750,000.

Collateral on an interim basis (the "Cash Collateral Provisions"); and the Court having conducted a final hearing on December 23, 2013 to consider the Cash Collateral Provisions (the "December Hearing," and together with the November Hearing the "Receiver Hearings"), and on December 23, 2013, the Court entered a Final Order approving the Cash Collateral Provisions; and the Court having conducted a hearing on February 18, 2014 to consider the relief sought in the DIP Financing Motion on an interim basis (the "Interim DIP Financing Hearing"); and the Court having entered an order on February 20, 2014 approving the DIP Financing Motion on an interim basis (the "Interim DIP Order") [Docket No. 118]; and the Court having conducted a hearing on March 11, 2014 to consider the relief sought in the DIP Financing Motion on a final basis (the "Final DIP Financing Hearing"); and the Court having found that notice of the DIP Financing Motion and the Final DIP Financing Hearing was proper and in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; and based upon all of the pleadings filed with this Court, the evidence presented at the Receiver Hearings, the Interim DIP Financing Hearing and the Final DIP Financing Hearing and the entire record herein; and this Court having heard and resolved or overruled any objections to the relief requested at the Final DIP Financing Hearing; and it appearing that the relief requested at the Final DIP Financing Hearing is in the best interests of the Debtor, its estate, and its creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:**[3]

    A.    <u>Purpose and Necessity of Financing</u>. The Debtor requires the financing provided for under this order to fund the necessary and critical ordinary course expenses of the Receiver in maintaining and preserving the Mortgaged Property and the other Court-approved administrative

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052

expenses of the Estate, consistent with the terms set forth herein. If the Debtor does not obtain authorization to borrow under the DIP Loan Facility, the Debtor will suffer immediate and irreparable harm. The amounts available to be funded under the DIP Loan Facility, including in accordance with the Receiver Budget and this Final DIP Order (the "Final DIP Order"), are not available to the Debtor without granting the DIP Lender administrative claims as provided in this Final DIP Order. After considering all alternatives, the Debtor has concluded, in the exercise of its prudent business judgment, that the DIP Loan Facility represents the best financing package presently available to it and that approval of the DIP Loan Facility is in the best interests of the Debtor, its Estate and its creditors.

B.   Good Faith. The DIP Loan Facility has been negotiated in good faith and at arm's length by and among the Debtor and the DIP Lender. The DIP Loan Facility and/or other financial accommodations made to the Debtor by the DIP Lender pursuant to this Final DIP Order shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in Bankruptcy Code section 364(e), and the DIP Lender shall be entitled to all protections afforded thereunder, including, without limitation, the full protection of Bankruptcy Code section 364(e) in the event that this Final DIP Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise. The terms of the DIP Loan Facility are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

C.   Consideration. The Debtor will receive and has received fair and reasonable consideration in exchange for access to the DIP Loan Facility and all other financial accommodations provided under this Final DIP Order.

D.   **Notice.** Sufficient and adequate notice of the Final DIP Financing Hearing and the entry of this Final DIP Order have been given in accordance with Bankruptcy Rule 4001, and no other or further notice need be given for entry of this Final DIP Order.

E.   **Immediate Entry of the Final DIP Order.** The Debtor has requested immediate entry of this Final DIP Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). This Final DIP Order complies with Local Rule 4001-2. This Court concludes that entry of this Final DIP Order authorizing the Debtor to enter into the DIP Loan Facility and obtain funds thereunder is necessary to avoid immediate and irreparable harm to, and is in the best interests of the Debtor, its Estate and its creditors as its implementation will provide for payment of the necessary and critical ordinary course expenses of maintaining and preserving the Mortgaged Property and further enhance the Debtor's prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Final DIP Financing Hearing, the Interim DIP Financing Hearing and the Receiver Hearings, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.   **Disposition.** The DIP Loan Facility is approved, subject to the terms set forth herein. Any objections to the DIP Loan Facility that have not previously been withdrawn or resolved are hereby overruled on their merits. This Final DIP Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014.

2.   **Authorization.** The Debtor is hereby authorized immediately to borrow under the DIP Loan Facility, pursuant to the terms of this Final DIP Order and the Receiver Budget

(and the variances permitted thereto) in the aggregate principal amount of up to $1,000,000,000, as set forth herein.

3. <u>Authority to Execute and Deliver Necessary Documents.</u> (a) The Debtor is authorized to negotiate, prepare, enter into, and deliver agreements necessary to implement the DIP Loan Facility, in each case including any non-material amendments thereto and the Debtor and the Receiver are hereby further authorized to perform all of their respective obligations and acts required under the this Final DIP Order.

(b)   All obligations under the DIP Loan Facility shall constitute valid and binding obligations of the Debtor, enforceable against it and its successors and assigns (including, without limitation, any successor trustee or other estate representative in the Bankruptcy Case or subsequent or superseding chapter 7 or chapter 11 cases (each, a "<u>Successor Case</u>")), in accordance with this Final DIP Order, and no obligation, payment, transfer or grant of security hereunder shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Bankruptcy Code section 502(d) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.    <u>DIP Lender's Liens and Super-Priority Administrative Claims.</u> Pursuant to Bankruptcy Code section (i) 364(c)(1), all advances by the DIP Lender pursuant to the DIP Loan Facility shall constitute allowed Super-Priority Claims with priority over all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) or 507(b), subject only to the fees of the U.S. Trustee incurred in the Bankruptcy Case, which DIP Lender Super-Priority Claims shall be repaid in cash, and (ii) 364(c)(2), the DIP Lender shall have a first priority lien

on the Mortgaged Property. No other liens shall be granted on the Mortgaged Property and no administrative expense priority shall be granted a priority, senior to, or *pari passu* with the Super-Priority Claims prior to the indefeasible payment of the DIP Loan Facility in full, in cash, or as otherwise agreed by the DIP Lender; *provided however*, the Debtor reserves its rights to seek approval from the Bankruptcy Court, in accordance with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, to obtain other DIP financing to fund its restructuring efforts, which request for approval may include a request to grant a new DIP lender administrative priority and liens on the Mortgaged Property that are junior to the Super-Priority Claims granted under the DIP Loan Facility; *provided further*, RMW or any other party-in-interest may contest any such request of the Debtor. Notwithstanding anything contained herein to the contrary, the DIP Lender shall have a first priority lien on the Mortgaged Property subject to AECOM USA's lien rights, if any, as determined by any final, non-appealable order or as otherwise agreed to by the Debtor, the DIP Lender and AECOM USA, INC.

5.   Amendments, Consents, Waivers and Modifications. The Debtor, Receiver, and the DIP Lender may enter into any non-material amendments, consents, waivers or modifications to the DIP Loan Facility without the need for further notice and hearing or any order of this Court; including amendments to the Receiver Budget, *provided, however*, that the Debtor shall provide the U.S. Trustee with notice of any material modification.

6.   Term. All amounts due under the DIP Loan Facility shall be due and payable, and repaid in full, in cash, on the date (the "Maturity Date") that is the first to occur of (i) December 31, 2014, or such later date as the DIP Lender may agree to in its sole and absolute discretion; (ii) the substantial consummation of a plan of reorganization providing for the full payment of advances made under the DIP Loan Facility and the Receiver Certificates; and (iii)

the occurrence of a Termination Event. Following the occurrence of the Maturity Date, the DIP Lender shall be entitled to immediately terminate any further advances provided for under the Receiver Budget.

7. <u>Interest on the Loan Advances Under the DIP Loan Facility</u>. Interest on loan advances under the DIP Loan Facility shall accrue interest at 8% per annum.

8. <u>Loan Advances, Budget and Reporting</u>.

(a)  (i) Other than the Non-Property DIP Amount, the proceeds from DIP Loan Facility advances funded by the DIP Lender to the Receiver shall be used exclusively by the Receiver for funding the expenses that are set forth in amount on the Receiver Budget annexed hereto as "**Exhibit A**" (collectively, the "<u>Approved Property Expenses</u>"). The Receiver will be permitted variances of up to 10% for each line item, except for taxes and insurance, on the Receiver Budget forming a part of the Approved Property Expenses; provided however that the Receiver may be permitted a variance higher than 10% as to any line item in the Receiver Budget upon the agreement of the Debtor, the Receiver and the DIP Lender. Notwithstanding any other provision hereof to the contrary, the Receiver shall not be required to expend any of its own funds to (A) pay any expense related to the Mortgaged Property, (B) perform any of its obligations hereunder or (C) otherwise manage or service the Mortgaged Property. The Receiver shall be permitted to carry forward from a prior month any unused portion of the advances attributable to a particular line item, with respect to the Approved Property Expenses (including amounts previously carried forward), to pay the same line item during the next succeeding month; and (ii) Proceeds from DIP Loan Facility advances in respect of the Non-Property DIP Amount shall only be funded by the DIP Lender upon the Court's entry of a non-appealable,

non-stayed, order authorizing the Debtor to pay and directing the DIP Lender to fund such allowed administrative expense of the Debtor; and

(b)    The Debtor and the Receiver shall additionally provide to the DIP Lender monthly financial statements, operating reports, and budget and operating plans (the "Monthly Reports") and any other such reports and information as the DIP Lender may from time to time reasonably request regarding the Mortgaged Property and the Debtor's business operations.

9.    Access. The DIP Lender and its agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Receiver's records regarding the Mortgaged Property to enable the DIP Lender or its agents and advisors to inspect and review the financial records concerning the operation of the Mortgaged Property. The Receiver shall fully cooperate with the DIP Lender regarding such reviews, evaluations, and inspections, and shall make his employees and professionals available to the DIP Lender and its professionals and consultants to conduct such reviews, evaluations, and inspections.

10.    Termination Events. The occurrence of any of the following shall constitute a Termination Event under this Final DIP Order upon notice to the Debtor by the DIP Lender:

(a)    Appointment of a chapter 11 trustee for the Debtor;

(b)    Dismissal of the Bankruptcy Case or conversion of the Bankruptcy Case to chapter 7;

(c)    Entry of an order reversing, staying, vacating, or otherwise modifying in any material respect the terms of this Final DIP Order;

(d)    Except to the extent that it provides for payment in full of the super-priority claims of the DIP Lender granted under this Final DIP Order, any request for authorization to obtain post-petition loans or other financial accommodations (a) pursuant to Bankruptcy Code section 364(d), or (b) that seeks to grant a super-priority claim senior to, or *pari passu* with, the super priority claims of the DIP Lender pursuant to Bankruptcy Code section 364(c) or otherwise, but such post-petition loans or other financial accommodations that grant a super-priority

claim junior to the super-priority claims of the DIP Lender shall not constitute a Termination Event; and

(e) Granting of relief from the automatic stay to permit any creditor to take action with respect to the Debtor's property or improvements thereon.

The Debtor reserves its rights to seek approval from the Bankruptcy Court, in accordance with the Bankruptcy Code, Bankruptcy Rules and the Local Rules, to obtain other DIP financing or financial accommodations to fund its restructuring efforts, and may seek to request that such financing be secured with claims and liens that are junior to claims and liens under the DIP Loan Facility, and RMW or any other party-in-interest may contest any such request of the Debtor.

11. At any time, the Debtor, in its sole discretion, may pay in full the DIP Loan Facility, including interest, and the DIP Loan Facility shall terminate immediately and all rights, liens and claims of the DIP Lender under the DIP Loan Facility shall terminate. Upon two business day's written notice to counsel to the DIP Lender, the DIP Lender shall provide the Debtor with a statement setting forth the total amount due under the DIP Loan Facility, including *per diem* interest.

12. <u>Automatic Stay Vacated and Modified</u>. Notwithstanding Bankruptcy Code section 362, the automatic stay is hereby vacated and modified to the extent necessary to permit the DIP Lender, to: (i) immediately (A) deliver a notice of the occurrence of an Termination Event; and (B) terminate or suspend any outstanding DIP Loan Facility advances; and (ii) upon five (5) business days' written notice (within which period the Debtor may only dispute the DIP Lender's declaration of the occurrence of a Termination Event on the basis of the events described in Paragraph 10 above, in the Bankruptcy Court on an expedited basis), the automatic stay of Bankruptcy Code section 362 shall be terminated without further order of the Court, without the need for filing any motion for relief from the automatic stay or any other pleading,

for the limited purpose of permitting the DIP Lender to do any one or more of the following: (A) declare the DIP Loan Facility to be terminated and amounts advanced thereunder to be immediately due and payable and (B) exercise its remedies with respect to the Mortgaged Property. The Debtor is deemed to waive any right under Bankruptcy Code section 105 or otherwise, to enjoin the exercise of the foregoing rights and remedies by the DIP Lender following the occurrence of a Termination Event.

(b)     The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have and the DIP Lender may exercise any such rights or remedies independently of one another or jointly. The Debtor shall cooperate fully with the DIP Lender in its exercise of rights and remedies in accordance herewith.

(c)     This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Final DIP Order and relating to the application, re-imposition or continuance of the automatic stay of Bankruptcy Code section 362(a) or other injunctive relief requested.

13.     <u>Successors and Assigns</u>.  The provisions of this Final DIP Order shall be binding upon the Debtor, the Receiver, the DIP Lender, and each of their respective successors and assigns, and shall inure to the benefit of the Debtor, the Receiver, the DIP Lender, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code, *provided, however*, that nothing contained in this Paragraph 13 shall be deemed to modify or waive any Termination Event. The provisions of

this Final DIP Order shall also be binding on all of the Debtor's creditors, equity holders, and all other parties-in-interest.

14. <u>Binding Nature of Agreement</u>. Each agreement to which the Debtor is or will become a party in connection with the DIP Loan Facility shall constitute legal, valid, and binding obligations of the Debtor enforceable in accordance with their terms. Unless and until the advances under the DIP Loan Facility have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated, the rights, remedies, powers, privileges, liens, and priorities of the DIP Lender provided for in this Final DIP Order shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Bankruptcy Case, by the dismissal or conversion of the Bankruptcy Case or in any Successor Case under the Bankruptcy Code.

15. <u>Subsequent Reversal or Modification</u>. This Final DIP Order is entered pursuant to Bankruptcy Code section 364, Bankruptcy Rules 4001(b) and (c) and the Local Rules, granting the DIP Lender all protections afforded by Bankruptcy Code section 364(e). If any or all of the provisions of this Final DIP Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the DIP Lender, prior to the date of receipt by the DIP Lender of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Final DIP Order or pursuant to any agreement authorized hereunder. Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by the Debtor to the DIP Lender prior to written notice to the DIP Lender of the effective date of such action, shall be governed in all respects by the original provisions of this Final DIP Order, and the DIP Lender shall be entitled

to all the rights, remedies, privileges, and benefits granted or authorized herein with respect to all such indebtedness, obligations or liability.

16.     Restriction on Use of DIP Lender's Funds. Other than the Non-Property DIP Amount, advances made under the DIP Loan Facility shall be funded directly to the Receiver and shall be held in a deposit account newly opened or designated by the Receiver as the "Property Expense Account," shall be expended by the Receiver solely in accordance with the Receiver Budget (subject to variances), and may not be used for any other purpose, including, without limitation, to pay any claims for services rendered by any of the professionals retained by the Debtor (or any successor trustee or other estate representative in the Bankruptcy Case or any Successor Case), any creditor or party-in-interest, any committee or any other party.

17.     Limitation on Charging Expenses Against Collateral. The DIP Lender Super-Priority Claims, and the liens granted to the DIP Lender on the Mortgaged Property to secure the DIP Loan Facility shall not be subject to Bankruptcy Code sections 506(c), 510, 549, or 550. No costs or expenses of administration which have been or may be incurred at any time in the Bankruptcy Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any of the DIP Lender, or any of its respective pre-petition or post-petition claims or collateral pursuant to Bankruptcy Code sections 105 or 506(c) or otherwise unless and until payment in full of all obligations owing to the DIP Lender under the Interim DIP Order and the Final DIP Order have been made; *provided further however,* the Debtor on behalf of its estate reserves its right to seek to surcharge the Mortgaged Property for actual and necessary expenses requested by the Receiver to preserve the Mortgaged Property.

18.   No Waiver by Failure to Seek Relief; Reservation of Rights. The failure of the DIP Lender to seek relief or otherwise exercise their rights and remedies under this Final DIP Order or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the DIP Lender, including, without limitation, the right of the DIP Lender to seek adequate protection with respect to any of its collateral. All claims, rights and defenses of the DIP Lender are reserved in all respects.

19.   Limits on DIP Lender's Liability. Nothing in this Final DIP Order or in any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from any and all activities by the Debtor in the operation of its business or in connection with its restructuring efforts.

20.   Priority of Terms. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Financing Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final DIP Order, on the other hand, the terms and provisions of this Final DIP Order shall govern.

21.   No Third Party Beneficiary. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

22.   Survival. Except as otherwise provided herein, the protections afforded to the DIP Lender and the Receiver under this Final DIP Order, and any actions taken pursuant thereto, shall survive the entry of an order (1) dismissing the Bankruptcy Case, or (2) converting the Bankruptcy Case into a case pursuant to chapter 7 of the Bankruptcy Code and shall not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence

of indebtedness (except with respect to any additional financing to be provided by the DIP Lender in accordance with this Final DIP Order or additional DIP financing obtained by the Debtor as set forth in paragraph 10 herein), or any conversion of the Bankruptcy Case into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of the Bankruptcy Case, or by any other act or omission until all obligations under the DIP Loan Facility are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Facility are terminated in accordance therewith.

23.  **Proofs of Claim**. The DIP Lender is hereby relieved of the requirement to file a proof of claim in the Bankruptcy Case with respect to the DIP Loan Facility and any other claims or liens granted hereunder or created hereby.

24.  **Entry of Property DIP Order; Effect**. This Final DIP Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Final DIP Order on this Court's docket in the Bankruptcy Case.

25.  **Retention of Jurisdiction**. This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Final DIP Order.

Dated: Chicago, Illinois
       March 11, 2014

_____
HONORABLE JANET S. BAER
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

### (APPROVED BUDGET)

**Spire North Water Street**
**Recurring Site Cost Budget    Calendar Year 2014**

| Vendor/Cost Description | Account # | Jan-14 | Feb-14 | Mar-14 | Apr-14 | May-14 | Jun-14 | Jul-14 | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Comments | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cook County R.E. Taxes | 57100-Real Estate Taxes | | | 165,000 | | | | | 165,000 | | | | 70,000 | | 2013 Property Taxes Paid in 2014 |
| Insurance - Builder's Risk/Property | 57400-Insurance | | | | | | | | | | | | 50,000 | | 2014 Property Insurance |
| Insurance - Liability/Excess | 57400-Insurance | | | | | | | | | | | | | | 2014 Liability Insurance |
| Receiver's Fee | 55300-Management Fees | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | 1,800 | | |
| CBRE Property/Accounting Fee | 55300-Management Fees | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | | |
| Receiver's Attorney Fees | 55400-Legal Fees | 2,500 | 2,500 | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | |
| SES Equipment Services | 51350-Electrical Tools & Equipment | | | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | | Bridgehouse Emergency Generator Rental (summer months only) |
| AmeriGas - Chicago | 52200-Gas | 5,000 | 5,000 | 5,000 | 2,500 | | | | | | | 2,500 | 5,000 | | Bridgehouse Heating Fuel |
| CCEMA | 55750-Association Dues | 5,500 | | | | | | 5,500 | | | | 5,500 | | | Neighborhood Association Assessments |
| Homer Street Rental | 55999-General & Admin Misc | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | | File Storage License |
| Cofferdam Testing/Inspection | 51420-Structural & Roof Consulting | | | | | | 1,200 | | 1,200 | | | 1,200 | | | AECOM monitoring of cofferdam movement |
| Hinckley Springs | 51790-General Supplies and Materials | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | | Bridgehouse drinking water |
| Prime Scaffold | 51490-Structural & Roof Supplies | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | | Monthly hoarding rental |
| Service Sanitation, Inc | 53492-Misc Ground Expense | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | | Bridge house bathrooms |
| Midwest Fence | 53492-Misc Ground Expense | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | | Misc Fence Repairs |
| Illinois EPA | 51920-Environmental | | | | | | 11,000 | | | | | | | | Illinois EPA Fee |
| Site Landscaping Maintenance | 53100-Landscaping Contract | | | | | 2,000 | | 2,000 | | | 2,000 | | | | Site Cleanup and weed control |
| Miscellaneous and Contingency - 10% | 51990-R&M-other | 2,160 | 1,490 | 3,060 | 2,940 | 2,060 | 3,040 | 2,810 | 1,940 | 2,060 | 2,890 | 2,310 | 1,740 | | |
| | | | | | | | | | | | | | | | |
| Total Site Costs | | 23,760 | 181,390 | 33,660 | 32,340 | 22,660 | 33,440 | 195,910 | 21,340 | 22,660 | 31,790 | 25,410 | 139,140 | 763,500 | |

Cash Balance 3/1/14    120,000
Additional Lender Funding    75,000
Monthly Balance    195,000 162,660 140,000 106,560 110,650 200,000 89,310 66,650 34,860 209,450 70,310

Additional Lender Funding
March, 2014 = $75,000
July, 2014 = $200,000
November, 2014 = $200,000

REQUEST FOR ADDITIONAL FUNDING
2/27/14