## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SHELBOURNE NORTH WATER STREET, L.P., | ) | Case No. 13- 44315 (JSB) |
| | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF SHELBOURNE NORTH WATER STREET, L.P., RMW ACQUISITION COMPANY LLC, RMW CLP ACQUISITIONS LLC, AND RMW CLP ACQUISITIONS II LLC

Frances Gecker (ARDC #6198450)
Joseph D. Frank (ARDC #6216085)
FRANKGECKER LLP
325 N. LaSalle Street, Suite 625
Chicago, Illinois 60654
(312) 276-1400
(312) 276-0035 (fax)
Email: fgecker@fgllp.com
        jfrank@fgllp.com

Brian L. Shaw
Peter J. Roberts
SHAW FISHMAN GLANTZ & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, Illinois 60654
Telephone:  (312)-541-0151
Facsimile: (312) 980-3888
Email: bshaw@shawfishman.com
        proberts@shawfishman.com

- and -

Lenard M. Parkins (*pro hac vice*)
Trevor R. Hoffmann (*pro hac vice*)
Jonathan Hook (*pro hac vice*)
John D. Beck (*pro hac vice*)
HAYNES AND BOONE LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone:  (212) 659-7300
Facsimile:  (212) 918-8989
Email:  lenard.parkins@haynesboone.com
        trevor.hoffmann@haynesboone.com
        jonathan.hook@haynesboone.com
        john.beck@haynesboone.com

# TABLE OF CONTENTS

**Page**

SUMMARY OF PLAN ...............................................................................1

    Debtor's Plan Transaction ................................................................1
    A.     Payment of Claims.................................................1
    B.     Funding ............................................................1
    C.     Property of the Estate.............................................2
    D.     Treatment of Affiliate Claims ....................................2
    E.     Capital Structure .................................................2
    F.     Effective Date ....................................................3

    RMW Alternative Plan Transaction......................................3
    G.     Failure to Make Payments to RMW Acquisition....................3
    H.     RMW Payment.....................................................3
    I.     Treatment of Insider Claims. .....................................4
    J.     Effect of Transfer of Property to RMW Acquisition ...............4
    K     Capital Structure of the Reorganized Debtor Under RMW
           Alternative Plan Transaction......................................4

ARTICLE 1    DEFINITIONS AND RULES OF CONSTRUCTION .........................4

ARTICLE 2    GENERAL PROVISIONS ................................................13
    2.1    Headings .........................................................13
    2.2    Severability ......................................................13
    2.3    Supersession......................................................13
    2.4    Entire Agreement .................................................13
    2.5    Amendment and Modification .....................................13
    2.6    Successors and Assigns............................................14
    2.7    Unaffected Rights and Obligations.................................14
    2.8    Other Materials ...................................................14
    2.9    Penalties .........................................................14
    2.10    Late Claims ......................................................14

ARTICLE 3    DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ....14
    3.1    Classification in General............................................14
    3.2    Resolution of Classification Disputes................................14
    3.3    Designation of Classes ............................................15

ARTICLE 4    TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX
              CLAIMS, OTHER PRIORITY CLAIMS AND UNIMPAIRED
              CLASSES .........................................................16
    4.1    Unclassified – Administrative Claims ...............................16
         (a)    General..................................................16
         (b)    Payment of Statutory Fees ................................17

# TABLE OF CONTENTS
## (Continued)

Page

|  |  |  |  |
|---|---|---|---|
|  | (c) | Administrative Claims Bar Date | 17 |
| 4.2 | Unclassified – Priority Tax Claims | | 17 |
| 4.3 | Unclassified – Other Priority Claims | | 17 |
| 4.4 | Class 2 – Allowed Mechanic's Lien Claims | | 17 |
|  |  |  |  |
| ARTICLE 5 | SPECIFICATION AND TREATMENT OF IMPAIRED CLASSES | | 18 |
| 5.1 | Class 1 – RMW Claims | | 18 |
|  | (a) | Impairment and Voting | 18 |
|  | (b) | Treatment | 18 |
| 5.2 | Class 3 – Allowed Unsecured Claims | | 18 |
|  | (a) | Impairment and Voting | 18 |
|  | (b) | Treatment | 18 |
| 5.3 | Class 4 – Claims of Shelbourne Affiliates | | 18 |
|  | (a) | Impairment and Voting | 18 |
|  | (b) | Treatment | 18 |
| 5.4 | Class 5 – Equity Interests | | 19 |
|  | (a) | Impairment and Voting | 19 |
|  | (b) | Treatment | 19 |
|  |  |  |  |
| ARTICLE 6 | MEANS FOR IMPLEMENTATION OF THIS PLAN | | 19 |
| 6.1 | General Settlement of Claims | | 19 |
| 6.2 | Debtor Plan Transaction | | 19 |
| 6.3 | RMW Alternative Plan Transaction | | 20 |
| 6.4 | Reorganized Debtor | | 21 |
| 6.5 | Vesting of Assets in the Reorganized Debtor | | 21 |
| 6.6 | Implementing Documents | | 21 |
| 6.7 | Effect of Appeals | | 21 |
| 6.8 | Release and Extinguishment of Liens | | 21 |
| 6.9 | Amended Organizational Documents | | 22 |
| 6.10 | Partners | | 22 |
| 6.11 | Corporate Action | | 23 |
| 6.12 | Cancellation of Instruments, Securities and Other Documentation | | 23 |
| 6.13 | Receiver Action | | 23 |
| 6.14 | Exemption from Certain Taxes | | 23 |
|  |  |  |  |
| ARTICLE 7 | INJUNCTION, RELEASES AND DISCHARGE | | 24 |
| 7.1 | Term of Certain Injunctions and Automatic Stay | | 24 |
| 7.2 | Setoffs and Recoupment | | 24 |
| 7.3 | Section 346 Injunction | | 24 |
| 7.4 | Discharge and Release | | 24 |
| 7.5 | Discharge Injunction | | 25 |

# TABLE OF CONTENTS
## (Continued)

**Page**

| | | |
|---|---|---|
| 7.6 | Disallowed Claims and Disallowed Interests | 25 |
| 7.7 | Exoneration and Reliance | 26 |
| 7.8 | No Liability for Solicitation or Participation | 26 |

**ARTICLE 8    CONDITIONS TO CONFIRMATION AND EFFECTIVENESS**....27

| | | |
|---|---|---|
| 8.1 | Conditions to Confirmation | 27 |
| 8.2 | Conditions to Effectiveness | 27 |
| 8.3 | Waiver of Conditions | 28 |
| 8.4 | Effect of Failure of Conditions | 28 |

**ARTICLE 9    METHOD OF DISTRIBUTIONS UNDER THIS PLAN**...28

| | | | |
|---|---|---|---|
| 9.1 | Distributions Pursuant to the Debtor Plan Transaction | | 28 |
| | (a) | General | 28 |
| | (b) | Distributions of Cash | 29 |
| | (c) | Timing and Calculation of Amounts to be Distributed | 29 |
| | (d) | No Postpetition Interest on Claims | 29 |
| | (e) | Minimum Distributions | 29 |
| | (f) | Undeliverable Distributions | 29 |
| | (g) | Failure to Present Checks | 30 |
| | (h) | Compliance with Tax Requirements/Allocations | 30 |
| 9.2 | Distributions Pursuant to RMW Alternative Plan Transaction | | 30 |
| | (a) | General | 30 |
| | (b) | Distributions of Cash | 30 |
| | (c) | Timing of Distributions | 30 |

**ARTICLE 10    PROCEDURES FOR THE TREATMENT OF DISPUTED CLAIMS**...30

| | | |
|---|---|---|
| 10.1 | Disallowance of Improperly Filed Claims | 30 |
| 10.2 | Prosecution of Objections to Claims | 31 |
| 10.3 | Settlement of Claims | 31 |
| 10.4 | No Distributions Pending Allowance | 31 |
| 10.5 | Distributions After Allowance | 31 |
| 10.6 | Estimation | 32 |
| 10.7 | Disputed Claim Escrow Account | 32 |
| 10.8 | Amounts to Be Reserved | 32 |
| 10.9 | Closing of Disputed Claim Escrow Account | 32 |

**ARTICLE 11    EXECUTORY CONTRACTS**...33

| | | |
|---|---|---|
| 11.1 | Rejection of Executory Contracts | 33 |
| 11.2 | Assumption of Certain Executory Contracts | 33 |
| 11.3 | Assignment to SPE | 33 |

# TABLE OF CONTENTS
## (Continued)

**Page**

ARTICLE 12  MATTERS INCIDENT TO PLAN CONFIRMATION......................34
    12.1  No Liability for Tax Claims.................................................................34
    12.2  No Successor Liability..........................................................................34

ARTICLE 13  RETENTION OF JURISDICTION.........................................34
    13.1  Jurisdiction..............................................................................................34
    13.2  General Retention ...................................................................................34
    13.3  Specific Purposes ...................................................................................35

ARTICLE 14  ENTRY OF CLOSING ORDER BY THE
    BANKRUPTCY COURT ....................................................................37

ARTICLE 15  MISCELLANEOUS PROVISIONS.........................................37
    15.1  Effectuating Documents and Further Transactions.............................37
    15.2  Modifications of this Plan......................................................................37
    15.3  Revocation and Withdrawal of this Plan .............................................37
    15.4  Withdrawal of Plan Proponent..............................................................37
    15.5  Binding Effect.........................................................................................38
    15.6  No Admission ..........................................................................................38
    15.7  Notices .....................................................................................................38
    15.8  Governing Law ........................................................................................39
    15.9  Plan Supplement .....................................................................................39
    15.10  Exhibits and Schedules ........................................................................39
    15.11  Modification of Payment Terms ..........................................................39
    15.12  Reservation of Rights...........................................................................39
    15.13  Further Assurances................................................................................40

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SHELBOURNE NORTH WATER STREET, | ) | Case No. 13 B 44315 (JSB) |
| L.P., | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |

**SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**SHELBOURNE NORTH WATER STREET, L.P., RMW ACQUISITION**
**COMPANY LLC, RMW CLP ACQUISITIONS LLC, AND**
**RMW CLP ACQUISITIONS II LLC**

Shelbourne North Water Street, L.P. (the "Debtor"), RMW Acquisition Company LLC, RMW CLP Acquisitions LLC, and RMW CLP Acquisitions II LLC (collectively, "RMW", and together with the Debtor, the "Plan Proponents") hereby propose the following Second Amended Joint Chapter 11 Plan Of Reorganization Of Shelbourne North Water Street, L.P. dated June 12, 2014.  This Plan provides for the resolution of all outstanding Claims against and Interests in the Debtor.

**SUMMARY OF PLAN AND ALTERNATIVE PLAN TRANSACTION**

Pursuant to the Settlement Agreement and Plan Investment Agreement, as approved by the Bankruptcy Court in the Settlement Order and Plan Investment Approval Order, respectively, this Plan contemplates the disposition of the Debtor's Assets and the treatment of the Debtor's creditors by one of two alternative transactions described below. This is just a summary; for a more in depth discussion of the Debtor Plan Transaction and RMW Alternative Plan Transaction see the Amended Disclosure Statement and the entirety of this Plan.

**Debtor's Plan Transaction**

    A.    <u>Payment of Claims</u>.  The Debtor expects to pay in full all Allowed Claims, except Claims held by the Shelbourne Affiliates, without interest. Excluding Claims held by the Shelbourne Affiliates, Claims totaling approximately $120 million have been timely filed against the bankruptcy estate.  The Debtor cannot assure creditors of payment in full for the reasons set forth in the Disclosure Statement (which include the possibility of the allowance of Disputed Claims and late Claims).

    B.    <u>Funding</u>.  Subject to the terms and conditions of the Plan Investment Agreement, Atlas (or one of its Affiliates) and the Tier One Capital Provider shall provide funding, which shall not in any event exceed $135,000,000, which shall be used to pay: (i) all amounts necessary to confirm this Plan, including all amounts required to pay Allowed Claims as

set forth in this Plan (subject to the limitations on Available Cash) and amounts to be held in escrow for Disputed Claims, (ii) any Origination Fee, (iii) all third-party closing costs, expenses and fees (including due diligence costs and expenses, and the legal fees and expenses of the Debtor, Atlas, the Tier One Capital Provider and certain third parties), reasonably approved by Atlas and the Tier One Capital Provider, and (iv) an aggregate $5 million cash payment to Chicago Spire LLC, Shelbourne Lakeshore, Ltd. and Garrett Kelleher in exchange for (x) all applicable development rights, licenses, intellectual property, causes of action, and executory contracts associated with the Property, (y) the release of all of their Liens and Claims, and (z) Mr. Kelleher's agreement to advise SPE (the "Shelbourne Affiliates Payment").  Any amounts remaining after payment of (i) through (iv) in accordance with the terms of this Plan shall be promptly repaid to Atlas and the Tier One Capital Provider.

C.    <u>Property of the Estate</u>.  On the Effective Date, the Assets of the Estate will either (i) vest in the Reorganized Debtor, or (ii) at Atlas's option, be transferred to SPE or one or more of its designees pursuant to the Atlas Property Transfer Option.  In each case, the Assets shall be free and clear of all Liens, Claims and encumbrances, other than Liens securing the Tier One Capital Provider Loan.

D.    <u>Treatment of Affiliate Claims</u>.  All Claims of the Shelbourne Affiliates shall be released and fully discharged on account of the Shelbourne Affiliates Payment.  Such Claims total approximately $215 million.

E.    <u>Capital Structure</u>.  If Atlas does not exercise the Atlas Property Transfer Option, SPE will acquire the limited partnership interests of the Reorganized Debtor on the Effective Date, and GP will acquire the general partnership interests of the Reorganized Debtor on the Effective Date. NWSC will own a subordinated profits interest in SPE and GP.  NWSC may invest new capital into SPE.  The Tier One Capital Provider shall have a first priority mortgage Lien and security interest in all the property of Reorganized Debtor and a Lien and collateral assignment of all related development rights.

If Atlas exercises the Atlas Property Transfer Option, SPE will acquire the Assets of the Debtor on the Effective Date.  NWSC will own a subordinated profits interest in SPE, and may invest new capital into SPE.  The Tier One Capital Provider shall have a first priority mortgage Lien and security interest in all the property of SPE and a Lien and collateral assignment of all development rights acquired by SPE.

Management and control of the SPE and/or the Reorganized Debtor (as the case may be) will be vested in the Atlas Principal or an entity that he controls.  NWSC will have limited approval over certain fundamental decisions, including, by way of example, transactions between Affiliates of

Atlas, on the one hand, and SPE or its Affiliates, on the other hand, changing the purpose of SPE and/or the Reorganized Debtor (as the case may be), or modifying NWSC's economic rights in a manner that disproportionately and adversely impacts NWSC relative to Atlas's economic rights. NWSC or its Affiliates will have the right to provide future development services to SPE and/or the Reorganized Debtor.

F. <u>Effective Date</u>. The Effective Date shall be on or before October 31, 2014. On or before the Effective Date, the Debtor shall pay $109 million plus the amount of the DIP Facility Claim to RMW in full satisfaction of the RMW Claims and the DIP Facility Claim, respectively. Alternatively, the Debtor may extend the Effective Date to March 31, 2015, by making the Extension Payment to RMW Acquisition on or before October 31, 2014. If the Debtor extends the Effective Date to March 31, 2015 by paying the Extension Payment to RMW Acquisition, the Debtor shall pay an additional $92,000,000 plus the amount of the DIP Facility Claim to RMW Acquisition on or before March 31, 2015 in full satisfaction of the RMW Claims and the DIP Facility Claim, respectively. If such payments are not made, then the RMW Alternative Plan Transaction below will be triggered and become effective.

## RMW Alternative Plan Transaction

G. <u>Failure to Make Payments to RMW Acquisition</u>. If the Debtor fails to timely make the payments to RMW Acquisition in accordance with the Settlement Agreement, Settlement Order, and section 6.2 of this Plan, the Debtor shall transfer the Property by warranty deed to RMW Acquisition or its assignee or designee on the applicable Effective Date. Such transfer of the Property shall be free and clear of all Liens, Claims and encumbrances.

H. <u>RMW Payment</u>. As a precondition to the transfer of the Property to RMW Acquisition, RMW Acquisition shall pay: (i) all Allowed, timely filed Administrative Claims and priority Claims asserted against the Estate; provided, however, that RMW Acquisition shall dedicate no more than $50,000 on account of Allowed Priority Tax Claims and, to the extent such Priority Tax Claims exceed $50,000, such additional amounts shall be paid directly from the amount to be paid under the following subsection (ii); (ii) an amount calculated to be the full amount of all Allowed Claims (exclusive of the Claims of any Insider creditors, including the Shelbourne Affiliates), that were scheduled as of the entry of the Settlement Order as not contingent, unliquidated or disputed and/or those that were set forth in a proof of claim that was actually and timely filed by the Bar Date, which such Claims are listed on Schedule 1 to the Amended Disclosure Statement; and (iii) the Debtor Affiliate Payment to be distributed directly to Atlas and Shelbourne Development Affiliates, LLC in accordance with Section 14 of the Settlement Agreement.

I.      <u>Treatment of Insider Claims</u>.  For the avoidance of doubt and pursuant to section 6.8 of the Plan, upon occurrence of the Effective Date and the payment of the Debtor Affiliate Payment, any Claims, Liens, encumbrances and interests in or against the Debtor or the Property or the Assets held by any Shelbourne Affiliate (including but not limited to Shelbourne Lakeshore, Ltd. and Chicago Spire, LLC) and the Persons listed on Schedule 6.8 of this Plan will be specifically deemed to be discharged, canceled and of no further force and effect, without any further action on the part of the Debtor (or Reorganized Debtor) or RMW, as applicable.

J.      <u>Effect of Transfer of Property to RMW Acquisition</u>.   Under the RMW Alternative Plan Transaction, the RMW Claims and the DIP Facility Claim shall not be actually paid by RMW; instead, the transfer of the Property to RMW Acquisition or its assignee or designee shall satisfy the RMW Claims and the DIP Facility Claim without cash payment.

K.      <u>Capital Structure of the New Property Owner under RMW Alternative Plan Transaction</u>. The owner of the Property under the RMW Alternative Plan Transaction will be a special purpose limited liability company organized under the laws of Delaware and will be owned and managed by RMW Acquisition, or an Affiliate controlled by RMW Acquisition, subject to final documents to be included in the Plan Documents.

RMW shall have the right to encumber the Property with a first priority mortgage Lien on the Property in an amount up to $135,000,000 "as of" the Effective Date.

## ARTICLE 1

## DEFINITIONS AND RULES OF CONSTRUCTION

1.1     "Administrative Claim" shall mean any cost or expense of the Chapter 11 Case as set forth in section 503(b), 507(b) or 1114(e) of the Bankruptcy Code, including, without limitation:  (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) the DIP Facility Claim, (c) Fee Claims allowed by the Bankruptcy Court under section 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (d) all fees and charges assessed against the Estate under section 1930, chapter 123, of title 28, United States Code.

1.2     "Administrative Claims Bar Date" shall mean the first Business Day that is at least forty-five (45) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

1.3     "Administrative Claims Objection Deadline" shall mean the date by which objections to Administrative Claims shall be filed with the Court and served upon the

respective Holder(s) thereof, which date shall be no more than seventy-five (75) days after the Effective Date unless extended by order of the Bankruptcy Court.

1.4     "Affiliate" shall mean an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.5     "Allowed" shall mean, with respect to any Claim or Interest, any of the following:  (a) a Claim or Interest that has been scheduled by the Debtor in the Schedules as other than disputed, contingent or unliquidated and as to which (i) neither the Debtor nor any other party in interest has filed an objection before any deadline fixed by the Bankruptcy Code, the Bankruptcy Rules or Order of the Bankruptcy Court, and (ii) no contrary proof of claim has been filed; (b) a Claim or Interest that either is not a Disputed Claim or Interest or has been allowed by a Final Order; (c) a Claim that is allowed in any contract, instrument, indenture or other agreement entered into or assumed in connection with this Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (f) a Claim or Interest that is allowed pursuant to the terms of this Plan.

1.6     "Amended Organizational Documents" shall mean any certificate of formation, amended and restated partnership agreement or other applicable organizational documents of the Reorganized Debtor filed with the Plan Supplement.

1.7     "Amended Disclosure Statement" shall mean the amended disclosure statement filed by the Plan Proponents relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.8     "Assets" shall mean all Estate property of any kind or nature, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, including all property interests of the Debtor as defined by section 541 of the Bankruptcy Code.

1.9     "Atlas" shall mean Atlas Apartment Holdings LLC.

1.10    "Atlas Deposit" shall have the meaning ascribed to such term in the Plan Investment Agreement.

1.11    "Atlas Principal" shall mean Steven Ivankovich and/or any Affiliate of Steven Ivankovich.

1.12    "Atlas Property Transfer Option" shall have the meaning set forth in Section 6.2 of this Plan.

1.13    "Atlas Transfer Documents" shall mean all agreements, documents and instruments reasonably necessary to effectuate the Atlas Property Transfer Option, which documents shall be in form and substance acceptable to Atlas.

1.14    "Available Cash" shall mean the proceeds of the Tier One Capital Provider Loan available to pay Allowed Claims after (i) payment of all amounts required to pay Allowed Administrative Claims (including budgeted amounts for future Administrative Claims), Allowed Priority Tax Claims, the Allowed RMW Claims and Allowed Mechanic's Lien Claims in full, (ii) reserving all amounts to be held in escrow for Disputed Claims, (iii) payment of any Origination Fee, (iv) payment of all third-party closing costs, expenses and fees, including due diligence costs and expenses, reasonably approved by the Tier One Capital Provider, and (v) the Shelbourne Affiliates Payment.

1.15    "Avoidance Actions" shall mean any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code.

1.16    "Bankruptcy Code" shall mean the United States Bankruptcy Code, which is set forth in Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as in effect on the Petition Date, together with all amendments thereto that are applicable to the Chapter 11 Case.

1.17    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, and any Court having jurisdiction to hear appeals from orders therefrom.

1.18    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure prescribed by the United States Supreme Court, as amended from time to time.

1.19    "Bar Date" shall mean January 27, 2014.

1.20    "Business Day" shall mean any day that is not a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to remain closed.

1.21    "Causes of Action" shall mean any Claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counter-claims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

1.22    "Chapter 11 Case" shall mean the chapter 11 bankruptcy case of Shelbourne North Water Street, L.P., Case No. 13-44315 (JSB), presently pending before the Bankruptcy Court.

1.23    "Claim" shall mean any "claim" against the Debtor as defined in Section 101(5) of the Bankruptcy Code.

1.24    "Confirmation" shall mean the entry of an order by the Bankruptcy Court confirming this Plan in accordance with the relevant provisions of chapter 11 of the Bankruptcy Code.

1.25    "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Case.

1.26    "Confirmation Order" shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the relevant provisions of chapter 11 of the Bankruptcy Code.

1.27    "Consummation" shall mean the time at which the Estate has been fully administered and the date of the completion and final resolution of all provisions of this Plan that require the post-confirmation supervision or approval of the Bankruptcy Court and the date upon which the Reorganized Debtor may seek the entry of a Final Decree pursuant to Bankruptcy Rules 2015(a)(7) and 3022.

1.28    "Debtor" shall have the meaning set forth in the introduction to this Plan.

1.29    "Debtor Affiliate Payment" shall mean $2,500,000 to be distributed directly to Shelbourne Development Affiliates, LLC and Atlas upon certain conditions pursuant to the Settlement Agreement.

1.30    "Debtor Plan Transaction" shall mean the transaction described in Section 6.2 of this Plan.

1.31    "Debtor's Property" shall mean the Assets, including the Property, and all related assets of the Debtor, including permits, licenses, development rights, executory contracts, and Causes of Action.

1.32    "DIP Facility" shall mean the post-petition financing in an amount up to $1,000,000 provided by RMW to the Debtor and approved by the Bankruptcy Court by Final Order on March 11, 2014 (D.I. 171).

1.33    "DIP Facility Claim" shall mean any Claim of RMW arising from, under or in connection with the DIP Facility.

1.34    "Disclosure Statement Approval Order" shall mean the order entered by the Bankruptcy Court approving the Amended Disclosure Statement in accordance with chapter 11 of the Bankruptcy Code.

1.35    "Disputed Claim or Interest" shall mean a Claim or Interest (a) listed on the Schedules, as unliquidated, disputed or contingent; (b) that is the subject of a timely filed objection or request for estimation or is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law and which objection has not been

withdrawn, resolved, or overruled by a Final Order of the Bankruptcy Court; or (c) that is otherwise disputed by the Debtor or any other party in interest in accordance with applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

1.36    "Disputed Claim Escrow Account" shall mean that certain escrow account which shall be funded with all amounts required to pay all Disputed Claims if and when the Disputed Claims become Allowed Claims.

1.37    "Distribution" shall mean a cash distribution to a Holder of an Allowed Claim pursuant to the terms of this Plan.

1.38    "Distribution Record Date" shall mean the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

1.39    "Effective Date" shall mean the date upon which all conditions in Section 8.2 have been satisfied or waived in accordance with Section 8.3, which date shall be on or before October 31, 2014, unless otherwise extended to a date on or before March 31, 2015 pursuant to the terms of the Settlement Agreement.

1.40    "Entity" shall mean an "entity" as defined in section 101(15) of the Bankruptcy Code.

1.41    "Estate" shall mean the bankruptcy estate created at the time of the entry of the order for relief.

1.42    "Extension Payment" shall mean the $22,000,000 payable to RMW Acquisition on or before October 31, 2014, if the Debtor elects to extend the Effective Date pursuant to the Settlement Agreement.

1.43    "Fee Claim" shall mean a claim by a Professional pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or otherwise relating to services performed and expenses incurred after the Petition Date and prior to and including the Effective Date.

1.44    "Final Order" shall mean either:  (a) an order as to which the time to appeal, petition for writ of certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired, and as to which no appeal, petition for writ of certiorari or other proceedings in which a party is seeking reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, an order that has been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and for which the time to take any further appeal, petition for writ of certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment

shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

1.45     "Governmental Unit" shall mean a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

1.46     "GP" shall mean a limited liability company organized under the laws of the State of Delaware and controlled by the Atlas Principal.

1.47     "Holder" shall mean a Person that is the beneficial owner of a Claim or Interest.  For purposes of a Distribution, a Person must be a Holder as of the Distribution Record Date.

1.48     "Impaired" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.49     "Initial Distribution Date" shall mean the date that is as soon as practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims pursuant to the terms of this Plan.

1.50     "Injunctions" shall mean the injunctions set forth in Article 7 of this Plan.

1.51     "Interest" shall mean any partnership interest in the Debtor.

1.52     "Lien" shall mean a "lien" as defined in section 101(37) of the Bankruptcy Code.

1.53     "Local Rules" shall mean the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois, as amended from time to time.

1.54     "Mechanic's Lien Claim" shall mean any Claim of an Entity determined by the Bankruptcy Court to hold a validly perfected mechanic's lien on the Property as of the Petition Date.

1.55     "NWSC" shall mean North Water Street Capital LLC, a Delaware limited liability company.

1.56     "Origination Fee" shall mean any origination fee or similar fee payable to the Tier One Capital Provider at closing from the proceeds of the Tier One Capital Loan.

1.57     "Other Priority Claim" shall mean any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

1.58     "Person" shall mean a "person" as defined in section 101(41) of the Bankruptcy Code and also include any natural person, corporation, limited partnership,

limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

1.59    "Petition Date" shall mean the date of the filing of the involuntary bankruptcy petition, which is October 9, 2013.

1.60    "Plan" shall mean this Second Amended Joint Chapter 11 Plan of Reorganization, including any exhibits, the Plan Supplement and Plan Documents and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

1.61    "Plan Documents" shall mean the Settlement Agreement, the Settlement Order, the Plan Investment Agreement, the Plan Investment Agreement Order, the Atlas Transfer Documents, the Amended Organizational Documents and the implementing documents, including the documents necessary to implement and effectuate the RMW Alternative Plan Transaction.

1.62    "Plan Investment Agreement" shall mean that certain Plan Investment Agreement, dated March 26, 2014, between the Debtor and Atlas, as approved by the Plan Investment Agreement Approval Order.

1.63    "Plan Investment Agreement Approval Order" shall mean the order entered by the Bankruptcy Court on March 26, 2014 approving the Plan Investment Agreement (D.I. 194).

1.64    "Plan Proponents" shall have the meaning set forth in the introduction to this Plan.

1.65    "Plan Supplement" shall mean the supplement to this Plan filed with the Bankruptcy Court and containing the Plan Documents.

1.66    "Priority Tax Claim" shall mean any Claim of a Governmental Unit against the Debtor that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.67    "Professionals" shall mean those Persons defined as professional persons in sections 327 or 1103 of the Bankruptcy Code and who have been employed pursuant to an order of the Court in the Chapter 11 Case.

1.68    "Property" shall mean the 2.2-acre parcel of real property commonly known as The Chicago Spire and located at 400 North Lake Shore Drive, Chicago, Illinois.

1.69    "Receiver" shall mean Stephen Bell, the duly appointed and acting receiver of the Property appointed by the Circuit Court of Cook County in Case No. 10 CH 27970.

1.70    "Related Persons" shall mean, with respect to any Person, such Person's predecessors, successors, assigns or designees, managers, direct and indirect owners, and

present and former Affiliates (whether by operation of law or otherwise) and subsidiaries, and each of their respective current and former officers, directors, principals, employees, stockholders, members, partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives, and other professionals, in each case acting in such capacity on or any time after the Petition Date, and any Person claiming by or through any of them.

1.71    "Released Claims" shall mean any and all Claims, whether at law or equity, against the Released Parties, including, without limitation, Avoidance Actions, the Claims, and all Causes of Action, whether known or unknown, either directly, indirectly or derivatively through the Debtor or Reorganized Debtor on the same subject matter as any of the Claims, Interests, or Liens on the Debtor's Property, but not including claims for gross negligence or willful misconduct in connection with the Chapter 11 Case.

1.72    "Released Parties" (or each, a "Released Party") shall mean the Debtor, the Reorganized Debtor, the Shelbourne Affiliates, SPE, GP, Atlas, the Atlas Principal, the Tier One Capital Provider and RMW, and the respective Related Persons of each of the foregoing.

1.73    "Reorganized Debtor" shall only be applicable to the Debtor Plan Transaction and shall mean the Debtor, as reorganized on the Effective Date pursuant to the Amended Organizational Documents.

1.74    "RMW" shall have the meaning set forth in the introduction to this Plan.

1.75    "RMW Acquisition" shall mean RMW Acquisition Company.

1.76    "RMW Alternative Plan Transaction" shall mean the transaction described in Section 6.3 of this Plan.

1.77    "RMW Claims" shall mean Claim No. 16 filed by CLP in the amount of $14,686,825 and Allowed by order of the Bankruptcy Court on April 1, 2014 (D.I. 200); Claim No. 17 filed by CLP II in the amount of $512,386.16 and Allowed by order of the Bankruptcy Court on April 1, 2014 (D.I. 201); Claim No. 18 filed by RMW Acquisition in the amount of $96,542,975 and Allowed by order of the Bankruptcy Court on April 1, 2014 (D.I. 202).

1.78    "Schedules" shall mean the schedules filed by the Debtor pursuant to Bankruptcy Rule 3003(b)(1) and Section 521(a)(1) of the Bankruptcy Code, as such schedules may be amended, modified, or supplemented from time to time.

1.79    "Secured Claim" shall mean a Claim that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

1.80    "Settlement Agreement" shall mean the settlement agreement among the Debtor, Atlas and RMW and certain other parties as approved by the Bankruptcy Court on March 26, 2014.

1.81    "Settlement Order" shall mean the order entered by the Bankruptcy Court on March 26, 2014 approving the Settlement Agreement (D.I. 193).

1.82    "Shelbourne Affiliates" shall mean Chicago Spire LLC, Shelbourne Lakeshore, Ltd., Shelbourne Finance Limited, and Garrett Kelleher and any of their respective Affiliates other than the Debtor.

1.83    "Shelbourne Affiliates Payment" shall have the meaning set forth in the recitals of this Plan.

1.84    "SPE" shall mean a limited liability company organized under the laws of the State of Delaware and controlled by the Atlas Principal.

1.85    "Subsequent Distribution Dates" shall mean the first Business Day ninety (90) days after the Initial Distribution Date and the first Business Day that is each ninety (90) days thereafter.

1.86    "Tier One Capital Provider" shall mean one or more third party lenders or investors.[1]

1.87    "Tier One Capital Provider Loan" shall mean that certain loan provided to SPE by the Tier One Capital Provider in an amount not to exceed $135 million.

1.88     "Unimpaired" shall mean, with respect to a Class of Claims or Interests, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.89    "Unsecured Claim" shall mean a prepetition Claim that is not a Secured Claim or otherwise entitled to priority pursuant to section 507 of the Bankruptcy Code, including but not limited to (1) deficiency Claims of Holders of Secured Claims; and/or (2) Claims arising out of the successful prosecution of one or more of the Debtor's avoiding powers under the Bankruptcy Code; and/or (3) Claims arising out of the entry of an order by the Bankruptcy Court authorizing the Debtor's rejection of executory contracts and/or unexpired leases pursuant to Section 365 of the Bankruptcy Code.

1.90    "Voting Deadline" shall mean the deadline by which all ballots must be received by the Debtor in accordance with the Disclosure Statement Approval Order, or such other date and time as may be established by the Bankruptcy Court.

---

[1]    At any time prior to the Effective Date, Atlas may elect, in its sole discretion, to satisfy some or all of its funding obligations under this Plan with proceeds obtained from one or more third-party equity sources.

# ARTICLE 2

## GENERAL PROVISIONS

2.1     Headings.  Headings of the articles, paragraphs and sections of this Plan are inserted for convenience only and shall not affect the meaning of any Plan provision.

2.2     Severability.  Prior to the entry of the Confirmation Order, if any term or provision of this Plan is determined by the Bankruptcy Court to be invalid under applicable law, the Bankruptcy Court will have the power to alter such term or provision to make it valid to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, and such term or provision will then be applicable as altered. Notwithstanding any such alteration, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such alteration.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered in accordance with the foregoing, is valid and enforceable pursuant to its terms. Notwithstanding the foregoing, if any such alteration substantially impairs the rights and benefits of Atlas or the Plan Proponents, such impaired Entity shall be entitled to withdraw its support for this Plan and its undertakings with respect thereto.

2.3     Supersession.   From and after the Effective Date, to the extent any ambiguity or inconsistency exists between the provisions of this Plan, on the one hand, and the terms of any of the Settlement Agreement, the Settlement Order, the Plan Investment Agreement or the Plan Investment Approval Order, on the other hand, the terms of this Plan shall control.  Except to the extent specifically provided in the Confirmation Order, in the event of any inconsistency between the Confirmation Order and the terms of this Plan or any other agreement, document or instrument, the terms of the Confirmation Order shall control.

2.4     Entire Agreement.  The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.  No Entity shall be bound by any terms, conditions, definitions, warranties, understandings or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

2.5     Amendment and Modification.  Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Plan Proponents or the Reorganized Debtor, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A Holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and

adversely change the treatment of such Claim or Interest of such Holder. Notwithstanding the foregoing, unless the Plan Investment Agreement has been terminated in accordance with its terms, any amendment or modification of this Plan that adversely affects Atlas's rights under the Plan Investment Agreement or Atlas's treatment under the Debtor Plan Transaction, shall require the prior written consent of Atlas.

2.6    Successors and Assigns. This Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

2.7    Unaffected Rights and Obligations. Except as specifically provided in this Plan, this Plan is not intended, nor should it be construed, to impair, modify, limit, restrict or otherwise affect any interest, right, claim or obligation that any Holder of a Claim or Interest has, or alleges to have, against any insider of the Debtor.

2.8    Other Materials. The attention of Holders of Claims and Interests is directed to the Amended Disclosure Statement and the Plan Supplement.

2.9    Penalties. Unless allowed by the Bankruptcy Court, no Distribution shall be made on account of any Claim for or in satisfaction of any punitive or exemplary damages or on account of any fine, penalty or forfeiture.

2.10    Late Claims. No Distribution shall be made on account of any Claims filed after the applicable Bar Date, unless specifically allowed by order of the Court after notice and opportunity for hearing. With respect to the RMW Alternative Plan Transaction, payment of Allowed Claims filed after any applicable bar date, including Allowed Unsecured Claims filed after the Bar Date, shall be made in accordance with Section 6.3 of this Plan.

## ARTICLE 3

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

3.1    Classification in General. A Claim or Interest shall be included in a particular Class, and shall receive the treatment afforded Claims or Interests of such Class, only to the extent any such Claim or Interest qualifies within the description of that Class. The remainder of any such Claim or Interest shall be included in a different Class or Classes to the extent the remaining Claim or Interest qualifies for inclusion in such other Class or Classes.

3.2    Resolution of Classification Disputes. The Bankruptcy Court shall have exclusive jurisdiction to resolve any dispute concerning the classification of Claims or Interests. Resolution of any such dispute, however, shall not be a condition precedent to Confirmation.

3.3     Designation of Classes.  All Claims against and Interests in the Debtor, other than Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims are classified for all purposes, including voting, Confirmation and Distribution pursuant to this Plan, as follows:

| CLASS | TREATMENT | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| Unclassified:<br><br>Allowed Administrative Claims | Administrative Claims will be paid in full with funds available to the Estate on the Initial Distribution Date, or as soon thereafter as such Claims are Allowed, or such other date as is mutually agreed upon by the Debtor and the Holder of such Claim. | Unimpaired | No |
| Unclassified:<br><br>Allowed Priority Tax Claims | Priority Tax Claims will be paid in full with funds available to the Estate on the Initial Distribution Date, or as soon thereafter as such Claims are Allowed. | Unimpaired | No |
| Unclassified:<br><br>Allowed Other Priority Claims | Other Priority Claims will be paid in full with funds available to the Estate on the Initial Distribution Date, or as soon thereafter as such Claims are Allowed. | Unimpaired | No |
| Class 1:<br><br>Allowed RMW Claims (Claims 16, 17, 18) | The Allowed RMW Claims will be treated and paid in accordance with Section 6.2 and 6.3 of this Plan. | Impaired | Yes |
| Class 2:<br><br>Allowed Mechanic's Lien Claims | Mechanic's Lien Claims (other than RMW Claims and Mechanic's Lien Claims held by Shelbourne Affiliates) will be paid in full with funds available to the Estate on the first Business Day that is sixty (60) days after the Initial Distribution Date, or as soon thereafter as such Claims are Allowed, or such other date as is mutually agreed upon by the Debtor and the Holder of such Claim. | Unimpaired | No |
| Class 3:<br><br>Allowed Unsecured Claims | With respect to the Debtor Plan Transaction, Allowed Unsecured Claims (other than Unsecured Claims held by Shelbourne Affiliates) will share *pro rata* in the Available Cash and will be paid on the first Subsequent Distribution Date following the earlier of the date upon which (i) all Disputed Claims are resolved or (ii) the amount of all Disputed Claims and all Allowed Unsecured Claims is | Impaired | Yes |

| CLASS | TREATMENT | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| | less than the Available Cash.<br><br>With respect to the RMW Alternative Plan Transaction, Allowed Unsecured Claims will share *pro rata* in an amount equal to the full amount of all Allowed Claims of non-Insider creditors of the Debtor that were actually scheduled as of the entry of the Settlement Order as not contingent, unliquidated, or disputed and/or those actually and timely filed a proof of claim by the Bar Date, which such Claims are listed on Schedule 1 to the Amended Disclosure Statement; provided, that if the amount of Allowed Priority Tax Claims exceeds $50,000, the funds available to pay Allowed Unsecured Claims shall be reduced by the amount Allowed Priority Tax Claims exceed $50,000. | | |
| Class 4:<br><br>Claims of Shelbourne Affiliates | With respect to the Debtor Plan Transaction, certain of the Shelbourne Affiliates shall receive the Shelbourne Affiliates Payment, and the Claims of Shelbourne Affiliates shall be fully discharged.<br><br>With respect to the RMW Alternative Plan Transaction, the Claims of the Shelbourne Affiliates shall receive no Distribution unless the Property is transferred to RMW in which event RMW shall make the Debtor Affiliate Payment. | Impaired | Yes |
| Class 5:<br><br>Equity Interests | Holders of Interests shall neither receive nor retain any Distributions of any kind. | Impaired | No |

## ARTICLE 4

## TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS, OTHER PRIORITY CLAIMS AND UNIMPAIRED CLASSES

4.1     Unclassified – Administrative Claims.

(a)     General.  Subject to the Bar Date provisions set forth herein, unless otherwise agreed to by the Debtor and the Holder of such Claim, each Holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (a) the Initial Distribution Date or (b) such other date as is mutually agreed upon by the Debtor and the Holder of such Claim;

provided, however, that Administrative Claims that represent liabilities either incurred by the Debtor in the ordinary course of its business during the Chapter 11 Case or arising under Bankruptcy Court approved loans or advances to the Debtor during the Chapter 11 Case, to the extent not paid on or before the Effective Date, will be paid by the Reorganized Debtor in the ordinary course of its business and in accordance with any terms and conditions of any agreements relating thereto.

(b)     <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930, if and to the extent due, shall be paid in Cash in the full amount of such Administrative Claim when due, or as soon thereafter as may be practicable, and shall be paid on a timely basis thereafter until the Chapter 11 Case is closed.

(c)     <u>Administrative Claims Bar Date</u>.   All Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered during the Chapter 11 Case (including, without limitation, any compensation requested by any Professional or any other Entity for making a substantial contribution to the Chapter 11 Case), shall file and serve on the Debtor (or Reorganized Debtor) an application for final allowance of compensation and reimbursement of expenses on or before the Administrative Claims Bar Date.  Objections to timely-filed Administrative Claims must be filed and served on the Reorganized Debtor on or before the Administrative Claims Objection Deadline. Professional Fee Claims shall be paid in full by the Debtor (or Reorganized Debtor) on the later of (i) the Initial Distribution Date, (ii) the date when allowed by the Bankruptcy Court, or (iii) as agreed.

If RMW Acquisition takes title to the Property by warranty deed pursuant to the RMW Alternative Plan Transaction, Allowed Administrative Claims shall be paid in full by RMW.

4.2     <u>Unclassified – Priority Tax Claims</u>.  Each Holder of an Allowed Priority Tax Claim, if any, shall be paid in cash in full on the Initial Distribution Date or as soon thereafter as such Claim is Allowed.

4.3     <u>Unclassified – Other Priority Claims</u>.  Each Holder of an Allowed Other Priority Claim, if any, shall be paid in cash in full on the Initial Distribution Date or as soon thereafter as such Claim is Allowed.

4.4     <u>Class 2 – Allowed Mechanic's Lien Claims</u>.  Mechanic's Lien Claims (other than RMW Claims and Mechanic's Lien Claims held by Shelbourne Affiliates) will be paid in full with funds available to the Estate on the first Business Day that is sixty (60) days after the Initial Distribution Date, or as soon thereafter as such Claims are Allowed, or such other date as is mutually agreed upon by the Debtor and the Holder of such Claim.

# ARTICLE 5

## SPECIFICATION AND TREATMENT OF IMPAIRED CLASSES

The following classes are Impaired by this Plan in accordance with section 1124 of the Bankruptcy Code:

5.1     Class 1 – RMW Claims:

(a)     Impairment and Voting.  Class 1 is Impaired by this Plan.  Each Holder of a Claim in Class 1 is entitled to vote to accept or reject this Plan.

(b)     Treatment.  Holders of the Class 1 Claims will be treated and paid in accordance with Sections 6.2 and 6.3 of this Plan.

5.2     Class 3 – Allowed Unsecured Claims:

(a)     Impairment and Voting.  Class 3 is Impaired by this Plan if funds are insufficient to pay Class 3 Claims in full, including post-petition interest, in the event that unforeseen or late Claims are Allowed or the Effective Date is delayed.  Each Holder of a Claim in Class 3 is entitled to vote to accept or reject this Plan.

(b)     Treatment.  Under the Debtor's Plan Transaction, Holders of Allowed Class 3 Claims (other than Claims held by Shelbourne Affiliates) will share *pro rata* in the Available Cash and will be paid on the first Subsequent Distribution Date following the earlier of the date upon which (i) all Disputed Claims are resolved or (ii) the amount of all Disputed Claims and all Allowed Unsecured Claims is less than the Available Cash.  Under the RMW Alternative Plan Transaction, Holders of Allowed Class 3 Claims (other than Claims held by Shelbourne Affiliates) shall receive their *pro rata* share of funds provided by RMW Acquisition in an amount equal to the full amount of all Allowed Claims (exclusive of the Claims of any non-Insider creditors, including the Shelbourne Affiliates) of the Debtor that were scheduled as of the entry of the Settlement Order as not contingent, unliquidated, or disputed and/or those that were set forth in a proof of claim that was actually and timely filed by the Bar Date, which such Claims are listed on Schedule 1 to the Amended Disclosure Statement; provided, that if the amount of Allowed Priority Tax Claims exceeds $50,000, the funds available to pay Allowed Unsecured Claims shall be reduced by the amount Allowed Priority Tax Claims exceed $50,000.

5.3     Class 4 – Claims of Shelbourne Affiliates:

(a)     Impairment and Voting.  Class 4 is Impaired by this Plan.  Each Holder of a Claim in Class 4 is entitled to vote to accept or reject this Plan.

(b)     Treatment.  With respect to the Debtor Plan Transaction, Holders of the Class 4 Claims shall receive the Shelbourne Affiliates Payment, and such Class 4 Claims shall be fully discharged.  With respect to the RMW Alternative Plan Transaction, Holders of the Class 4 Claims shall receive no Distribution unless the Property is transferred to RMW in which event RMW shall make the Debtor Affiliate Payment.

5.4    Class 5 - Equity Interests.

(a)    Impairment and Voting.  Class 5 is Impaired by this Plan.  Each Holder of an Interest is deemed to have rejected this Plan and is not entitled to vote to accept or reject this Plan.

(b)    Treatment.  Holders of Interests shall neither receive nor retain any Distributions.  Interests shall be deemed to be terminated and canceled upon the Effective Date.

# ARTICLE 6

## MEANS FOR IMPLEMENTATION OF THIS PLAN

6.1    General Settlement of Claims.  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to this Plan unless otherwise resolved by court order prior to confirmation of this Plan.

6.2    Debtor Plan Transaction.  The Reorganized Debtor shall either (a) retain all Assets or (b) at Atlas's option (such option, the "Atlas Property Transfer Option"), transfer some or all of the Assets (as determined by Atlas in its sole and absolute discretion), including the Property, to SPE pursuant to section 1123(a)(5)(b) of the Bankruptcy Code and the Atlas Transfer Documents, in each case, free and clear of all Liens, Claims and encumbrances, other than Liens securing the Tier One Capital Provider Loan.  The Atlas Property Transfer Option must be exercised by Atlas no later than ten (10) days prior to entry of the Confirmation Order.  If Atlas does not exercise the Atlas Property Transfer Option, SPE shall acquire the limited partnership interests of the Debtor, and GP shall acquire the general partnership interests of the Debtor.

Atlas and the Tier One Capital Provider shall loan up to $135 million to SPE in accordance with the Plan Investment Agreement.  The proceeds of the Tier One Capital Loan shall be used to pay (a) Allowed Claims in accordance with this Plan and fund the Disputed Claim Escrow Account; (b) any Origination Fee, (c) all third-party closing costs, expenses and fees (including due diligence costs and expenses, and the legal fees and expenses of the Debtor, Atlas and the Tier One Capital Provider and certain third parties), reasonably approved by Atlas and the Tier One Capital Provider, and (d) the Shelbourne Affiliates Payment.  Any amounts remaining after payment of (a) through (d) in accordance with the terms of this Plan shall be promptly repaid to Atlas and the Tier One Capital Provider.

On or before the Effective Date, the Debtor shall pay $109 million plus the amount of the DIP Facility Claim to RMW Acquisition in full satisfaction of the RMW Claims and the DIP Facility Claim, respectively.  Alternatively, the Debtor may extend the Effective Date to March 31, 2015, by making the Extension Payment to RMW Acquisition on or

before October 31, 2014.  If the Debtor extends the Effective Date to March 31, 2015 by paying the Extension Payment, the Debtor shall pay an additional $92,000,000 plus the amount of the DIP Facility Claim to RMW on or before March 31, 2015 in full satisfaction of the RMW Claims and the DIP Facility Claim, respectively.

6.3    RMW Alternative Plan Transaction. If such payments described in Section 6.2 are not timely made to RMW, then the RMW Alternative Plan Transaction shall be triggered and become effective automatically and without further order of the Bankruptcy Court. Under the RMW Alternative Plan Transaction, the Debtor shall transfer the Property by warranty deed to RMW Acquisition or its assignee or designee on the applicable Effective Date.  Such transfer of the Property shall be free and clear of all Liens, Claims and encumbrances.

As a precondition to the transfer of the Property to RMW Acquisition or its assignee or designee, RMW shall pay:  (i) all Allowed, timely filed Administrative Claims and priority Claims asserted against the Estate; provided however, that RMW Acquisition shall dedicate no more than $50,00 on account of Allowed Priority Tax Claims and, to the extent such Priority Tax Claims exceed $50,000, such additional amounts shall be paid directly from the amount to be paid under the following subsection (ii); (ii) an amount calculated to be the full amount of all Allowed Claims (exclusive of the Claims of any Insider creditors, including the Shelbourne Affiliates) that were scheduled as of the entry of the Settlement Order as not contingent, unliquidated or disputed and/or those that were set forth in a proof claim that was actually and timely filed by the Bar Date, which such Claims are listed on Schedule 1 to the Amended Disclosure Statement; (ii) Priority Tax Claims not to exceed $50,000; (iii) all Allowed Claims (exclusive of the Claims of any Insider creditors, including the Shelbourne Affiliates) that were scheduled as not contingent, unliquidated, or disputed as of the entry of the Settlement Order, or that actually and timely filed a proof of Claim by the Bar Date; and (iv) the Debtor Affiliate Payment, all in accordance with the Settlement Agreement.

Under the RMW Alternative Plan Transaction, the RMW Claims and the DIP Facility Claim shall not actually be paid by RMW; instead, the transfer of the Property to RMW Acquisition or its assignee or designee shall satisfy the RMW Claims and the DIP Facility Claim without cash payment.

RMW shall have the right to encumber the Property with a first priority mortgage Lien on the Property in an amount up to $135,000,000 "as of" the Effective Date.

RMW shall not under any circumstances be required to pay any Claim asserted by Atlas or its professionals under sections 503(b)(3)(D) or 503(b)(4) of the Bankruptcy Code and Atlas agrees it will not seek recovery directly or indirectly against RMW or its Related Persons.  Furthermore, under the RMW Alternative Plan Transaction, all Claims of Atlas under the Plan Investment Agreement shall be subordinated to all Claims against the Debtor other than the Claims of the Shelbourne Affiliates, as set forth in Section 13 of the Settlement Agreement.

6.4    <u>Reorganized Debtor</u>.  Post-Confirmation, if Atlas does not exercise the Atlas Property Transfer Option, SPE will acquire the limited partnership interests of the Debtor, which will become the Reorganized Debtor on the Effective Date, and GP will acquire the general partnership interests of the Reorganized Debtor on the Effective Date. NWSC will own a subordinated profits interest in SPE and GP in an amount to be determined.  NWSC may invest new capital into SPE in an amount to be determined.  The Tier One Capital Provider shall have a first priority mortgage Lien and security interest in all the property of the Reorganized Debtor and a Lien and collateral assignment of all related development rights.

If Atlas exercises the Atlas Property Transfer Option, the Reorganized Debtor shall exist as a limited partnership pursuant to the applicable law in the state of its organization and the Amended Organization Documents, which such documents shall be included in the Plan Supplement and set forth the ownership and control of the Reorganized Debtor, for purposes of reconciling Claims, making Distributions, and winding up its affairs.

6.5    <u>Vesting of Assets in the Reorganized Debtor</u>.  In accordance with section 1141(b) of the Bankruptcy Code, except as otherwise provided in this Plan or the Confirmation Order (including through Atlas's exercise of the Atlas Property Transfer Option or the transfer of the Property under the RMW Alternative Plan Transaction), on or after the Effective Date, all property and assets of the Estate (including, without limitation, Causes of Action and, unless otherwise waived or released pursuant to an order of the Bankruptcy Court or this Plan, Avoidance Actions) and any property and assets acquired by the Debtor pursuant hereto shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.  In no event shall the Atlas Deposit or any claims of the Debtor or any other party arising in connection with the Plan Investment Agreement be transferred to RMW or any Affiliate of RMW.

6.6    <u>Implementing Documents</u>.  The documents necessary to implement and effectuate this Plan will be included in the Plan Supplement.

6.7    <u>Effect of Appeals</u>.  Unless the Confirmation Order is stayed pending appeal, at the option of (a) the Debtor and Atlas with respect to the Debtor Plan Transaction, or (b) RMW with respect to the RMW Alternative Plan Transaction, as applicable, this Plan may be consummated notwithstanding the pendency of an appeal from the Confirmation Order or the timely service or filing of a motion under Bankruptcy Rules 7052, 8002, 8003, 8015, 9023 or 9024.

6.8    <u>Release and Extinguishment of Liens</u>.  Except as otherwise provided in this Plan or the Plan Documents, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article 9 hereof, all Liens, Claims, interests, mortgages, deeds of trust, or other security interests in or against the Assets shall be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  Any Entity holding such Liens or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtor, SPE or RMW, as applicable, such instruments of

termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtor, SPE or RMW, as applicable.

For the avoidance of doubt, upon the occurrence of the Effective Date and the payment of either the Shelbourne Affiliates Payment or the Debtor Affiliate Payment, as applicable, any Claims,  Liens, encumbrances and interests in or against the Debtor or the Property or the Assets held by any Shelbourne Affiliate (including but not limited to Shelbourne Lakeshore, Ltd. and Chicago Spire, LLC) and the Persons listed on Schedule 6.8 of this Plan will be specifically deemed to be discharged, canceled and of no further force and effect, without any further action on the part of the Debtor (or Reorganized Debtor) or RMW, as applicable.  The Reorganized Debtor, SPE (if the Atlas Property Transfer Option is exercised) or RMW (if the RMW Alternative Plan Transaction is triggered) are specifically authorized to file or record any instruments or documents necessary to release and remove of record any Liens, encumbrances, or interests held by any Shelbourne Affiliate (including but not limited to Shelbourne Lakeshore, Ltd. and Chicago Spire, LLC) and any Person listed on Schedule 6.8.

Pursuant to the Confirmation Order, the Reorganized Debtor, SPE (if the Atlas Property Transfer Option is exercised) or RMW (if the RMW Alternative Plan Transaction is triggered) shall be irrevocably appointed by Holders of Claims in Classes 2, 3 and 4 to execute and file or record any instruments, documents or release of Liens necessary to remove of record any Liens recorded on account of any of such Holders' Claims as applicable, including those Liens of Holders that appear on Schedule 6.8 to the Plan. Pursuant to the Confirmation Order, the appropriate state or local government filing and recording officers shall be authorized and directed to accept for filing or recording any and all documents to be executed, filed and recorded in accordance with this Plan and the exhibits and schedules thereto, without payment of any filing or recording fee of any kind, and without the presentation of any affidavits, instruments, or returns otherwise required for recording, other than the Confirmation Order.

6.9    Amended Organizational Documents.    The Amended Organizational Documents shall amend or supersede (as provided therein) the certificate of formation, partnership agreement and other organizational documents of the Debtor to satisfy the provisions of this Plan and the Bankruptcy Code, and shall (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; (ii) authorize the issuance of new equity securities in an amount not less than the amount necessary to permit the Distributions thereof required or contemplated by this Plan; (iii) to the extent necessary or appropriate, include restrictions on the transfer of new equity securities; and (iv) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate this Plan and the transactions contemplated herein.

6.10    Partners.  With respect to the Debtor Plan Transaction, if the Atlas Property Transfer Option is not exercised, the general partner of the Reorganized Debtor shall be GP, and the sole limited partner of the Reorganized Debtor shall be SPE.  The existing partners of the Debtor will be deemed to have resigned on and as of the Effective Date, in

each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

With respect to the RMW Alternative Plan Transaction, the owner of the Property under the RMW Alternative Plan Transaction will be a special purpose limited liability company organized under the laws of Delaware and will be owned and managed by RMW Acquisition, or an Affiliate controlled by RMW Acquisition, subject to final documents to be included in the Plan Documents.

6.11    Corporate Action.  The Debtor and the Reorganized Debtor, as applicable, may take any and all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person (except for those expressly required pursuant hereto).

6.12    Cancellation of Instruments, Securities and Other Documentation.  Except to the extent otherwise provided under this Plan, on the Effective Date of this Plan and concurrently with the applicable Distributions to be made pursuant to this Plan, all existing Interests in the Debtor; all agreements, credit agreements, pre-petition loan documents, post-petition loan documents of the Debtor evidencing a Claim against the Debtor; and Lien claims and other evidence of Liens against any or all assets of the Estate, including without limitation, the Property; shall be deemed to be discharged, canceled and of no further force and effect, without any further action on the part of the Debtor (or Reorganized Debtor) or RMW, as applicable.  The holders of or parties to such canceled instruments, agreements, securities and other documentation shall have no remaining rights arising from or relating to such documents nor the cancellation thereof except the rights provided pursuant to this Plan; provided, however, no Distributions under this Plan shall be made to or on behalf of any Holder of an Allowed Claim evidenced by such canceled instruments or securities unless and until such instruments or securities are marked canceled by the holders thereof and received by the Reorganized Debtor.

6.13    Receiver Action.  The Receiver shall take any and all actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan, in each case without further notice to or order of the Bankruptcy Court.

6.14    Exemption from Certain Taxes.  Pursuant to 11 U.S.C. § 1146, all transactions, including the delivery and recordation of any instrument, under, in furtherance of, or in connection with this Plan, shall not be subject to any stamp tax, real estate transfer tax or similar transfer fee or tax.

# ARTICLE 7

## INJUNCTIONS, RELEASES AND DISCHARGE

7.1     <u>Term of Certain Injunctions and Automatic Stay</u>.

(a)     All of the injunctions and/or automatic stays provided for in or in connection with the Chapter 11 Case, whether pursuant to section 105, section 362, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the Confirmation Date shall remain in full force and effect until the Injunctions and other permanent stays and injunctions that replace them, if any, become effective, as provided in this Plan and Confirmation Order.  In addition, on and after the Confirmation Date, the Plan Proponents or Atlas may seek such further orders as they may deem necessary to preserve the status quo during the time between the Confirmation Date and the Effective Date.

(b)     Each of the Injunctions shall become effective on the Effective Date and shall continue in effect at all times thereafter.  Notwithstanding anything to the contrary contained in this Plan, all actions in the nature of those to be enjoined by the Injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date as well.

7.2     <u>Setoffs and Recoupment</u>.  Subject to the limitations provided in section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against or recoup any Claim except the RMW Claims and the payments or Distributions to be made pursuant to this Plan in respect of such Claim, any claims, rights, Causes of Action and liabilities of any nature that the Debtor may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any of such Claims, rights, Causes of Action and liabilities that the Debtor has or may have against the Holder.

7.3     <u>Section 346 Injunction</u>.  In accordance with section 346 of the Bankruptcy Code, for purposes of any state or local law imposing a tax, income will not be realized by the Estate, the Debtor or Reorganized Debtor by reason of the forgiveness or discharge of indebtedness resulting from the Consummation of this Plan.  As a result, each state or local taxing authority is permanently enjoined and restrained, after the Confirmation Date, from commencing, continuing, or taking any act to impose, collect or recover in any manner any tax against the Debtor, the Reorganized Debtor or the Property arising by reason of the forgiveness or discharge of indebtedness under this Plan.

7.4     <u>Discharge and Release</u>.  Except as specifically provided in this Plan or in the Confirmation Order, effective on the Effective Date, the Released Parties shall be discharged from responsibility, obligation or liability for any and all Claims and Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such

Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtor, (ii) such Claim is or was Allowed under section 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on or accepted this Plan.  Except as specifically provided in this Plan or Plan Documents to the contrary, the rights provided in this Plan shall be in complete (x) satisfaction, discharge and release of all Claims or demands against, Liens on, and Interests in the Debtor (or Reorganized Debtor), or the assets and properties of the Debtor (or Reorganized Debtor), including the Property, (y) satisfaction, discharge and release of all Claims constituting Released Claims, including, but not limited to, all Causes of Action, whether known or unknown, either directly, indirectly or derivatively through the Debtor or Reorganized Debtor against the Released Parties or on the Property on the same subject matter as any of the Claims, Liens, or Interests described in subpart (x) of this Section 7.4, and (z) satisfaction, discharge and release of all causes of action of the Debtor or Reorganized Debtor, whether known or unknown, including but not limited to all Claims including the Released Claims, against the Released Parties.  FURTHER, BUT IN NO WAY LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ANY ENTITY ACCEPTING ANY DISTRIBUTIONS OR RIGHTS PURSUANT TO THIS PLAN SHALL BE PRESUMED CONCLUSIVELY TO DISCHARGE THE DEBTOR AND REORGANIZED DEBTOR AND HAVE RELEASED THE RELEASED PARTIES FROM (A) THE RELEASED CLAIMS AND (B) ANY OTHER CAUSE OF ACTION BASED ON THE SAME SUBJECT MATTER AS THE CLAIM OR INTEREST ON WHICH THE DISTRIBUTION OR RIGHT IS RECEIVED.

7.5     Discharge Injunction.     Except as specifically provided in the Plan Documents to the contrary, upon entry of the Confirmation Order, this Plan will operate as a permanent injunction prohibiting and enjoining the commencement or continuation of any action, the employment of process or any act to collect, recover from, or offset (a) any Claim or demand against or equity Interest in the Released Parties by any Entity, (b) any Claim or demand, whether known or unknown, against the Released Parties by any Entity based on the same subject matter as any Claim, demand or Interest described in Section 7.4, including, without limitation, any guaranties by Released Parties of any such Claims, demands or Interests, or (c) any Claim or demand against, any security interest in or any lien, claim or encumbrance on the Property by any Entity.  BY ACCEPTING DISTRIBUTIONS PURSUANT TO THIS PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THIS INJUNCTION.  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

7.6     Disallowed Claims and Disallowed Interests.     On and after the Effective Date, the Released Parties shall be fully and finally discharged and released of any liability or obligation on a disallowed Claim or a disallowed equity Interest, and any order creating a disallowed Claim or a disallowed equity Interest that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order

pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date. The Confirmation Order, except as otherwise provided herein, or unless the Bankruptcy Court orders otherwise, shall constitute an order (a) disallowing all Claims to the extent such Claims and equity Interests are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Claims for unmatured interest, and (b) disallowing or subordinating, as the case may be, any Claims, or portions of Claims, for penalties or non-compensatory damages.

7.7    <u>Exoneration and Reliance</u>. The Released Parties, as well as their respective direct and indirect owners, managers, stockholders, directors, officers, agents, employees, members, attorneys, accountants, financial advisors, and representatives shall not be liable other than for willful misconduct to any Holder of a Claim or Interest or any other Entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time prior to the Effective Date in connection with (a) the management or operation of the Debtor or Reorganized Debtor, or the discharge of their duties under the Bankruptcy Code, (b) the implementation of any of the transactions provided for, or contemplated in, this Plan or the Plan Documents, (c) any action taken in connection with either the enforcement of the Debtor's rights against any Entities or the defense of Claims asserted against the Debtor with regard to the Chapter 11 Case, (d) any action taken in the negotiation, formulation, development, proposal, disclosure, confirmation or implementation of the Plan Documents filed in the Chapter 11 Case, or (e) the administration of this Plan or the assets and property to be distributed pursuant to this Plan. The Debtor and Reorganized Debtor, as well as their respective direct and indirect owners, managers, stockholders, directors, officers, agents, employees, members, attorneys, accountants, financial advisors, and representatives may reasonably rely upon the opinions of their respective counsel, accountants, and other experts or professionals and such reliance, if reasonable, shall conclusively establish good faith and the absence of willful misconduct; *provided, however,* that a determination that such reliance is unreasonable shall not, by itself constitute a determination or finding of bad faith or willful misconduct. In any action, suit or proceeding by any Holder of a Claim or equity Interest or any other Entity contesting any action by, or non-action of, the Debtor or Reorganized Debtor, or their respective direct and indirect owners, managers, stockholders, directors, officers, agents, employees, members, attorneys, accountants, financial advisors, and representatives, the reasonable attorneys' fees and costs of the prevailing party shall be paid by the losing party and, as a condition to going forward with such action, suit, or proceeding at the outset thereof, all parties thereto shall be required to provide appropriate proof and assurances of their capacity to make such payments of reasonable attorneys' fees and costs in the event they fail to prevail.

7.8    <u>No Liability for Solicitation or Participation</u>. Pursuant to section 1125(e) of the Bankruptcy Code, the Confirmation Order shall provide that all of the Persons who have solicited acceptances or rejections of this Plan (including the Plan Proponents and Related Persons) have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and shall not be liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the

solicitation of acceptances or rejections of this Plan or the offer, issuance, sale or purchase of securities.

## ARTICLE 8

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

8.1     Conditions to Confirmation.   Confirmation of this Plan shall not occur unless each of the following conditions has been satisfied or waived in accordance with Section 8.3 of this Plan.   These conditions to Confirmation, which are designed, among other things, to ensure that the Injunctions, releases and discharges provided under this Plan shall be effective, binding and enforceable, are as follows:

(a)     the Bankruptcy Court shall have approved the Amended Disclosure Statement as having contained adequate information and the solicitation of votes thereunder as having been in compliance with section 1126(b) of the Bankruptcy Code, and the Disclosure Statement Approval Order shall be in form and substance satisfactory to the Debtor, RMW, and Atlas.

(b)     the Bankruptcy Court shall have made findings and determinations, among others, in substantially the following form:

(i)     All Persons who solicited acceptances or rejections of this Plan (including the Plan Proponents, and their direct and indirect owners, managers, partners, officers, directors, stockholders, attorneys, agents, advisers and employees) have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and shall not be liable on account of such solicitation or participation for violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale or purchase of securities; and

(ii)     This Plan and Plan Documents, and all amendments modifications and supplements thereto, including, without limitation, all annexes, exhibits, and schedules thereto, and all terms and conditions thereof, are fair and reasonable and are approved.

(c)     Confirmation Order.  The Confirmation Order, and any other orders required to be entered in furtherance of Confirmation of this Plan pursuant to section 1129 and other applicable provisions of the Bankruptcy Code, shall have been entered, in form and substance acceptable to the Debtor, RMW and Atlas.

(d)     This Plan and all schedules, documents, supplements and exhibits to this Plan shall have been filed in form and substance acceptable to the Debtor, RMW and Atlas.

8.2     Conditions to Effectiveness.   The Effective Date of this Plan shall not occur unless and until each of the following conditions has been satisfied or, if applicable, waived:

(a)     Confirmation Order.  The Confirmation Order shall have become a Final Order.

(b)     Plan Documents.  The Plan Documents, in form and substance acceptable to the Debtor, RMW and Atlas, necessary or appropriate to implement this Plan shall have been executed, delivered and, where applicable, filed with the appropriate Governmental Unit.

(c)     Statutory Fees.  All fees payable pursuant to 28 U.S.C. § 1930, if and to the extent assessed against the Estate of the Debtor, shall have been paid in full.

(d)     Miscellaneous.   All material third-party consents, actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws.

8.3     <u>Waiver of Conditions</u>.  The conditions to confirmation of this Plan and to effectiveness of this Plan set forth in this Article 8 may be waived by (a) the Debtor, with the prior written consent of Atlas, with respect to the Debtor Plan Transaction, or (b) RMW with respect to the RMW Alternative Plan Transaction, as applicable, without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan.

8.4     <u>Effect of Failure of Conditions</u>. Notwithstanding anything contained in this Plan to the contrary, and for the avoidance of doubt, with respect to the Debtor Plan Transaction, in the event that one or more of the conditions specified in Section 8.2 of this Plan have not occurred or been duly waived by the Debtor  with the prior written consent of Atlas, by October 31, 2014 or March 31, 2014, as those dates are made applicable under Section 6.2 of this Plan, then the RMW Alternative Plan Transaction shall be triggered, the Confirmation Order need not be a Final Order, and RMW shall be authorized to take all necessary action to effectuate and consummate the RMW Alternative Plan Transaction and this Plan and the Confirmation Order shall so provide.

## ARTICLE 9

## METHOD OF DISTRIBUTIONS UNDER THIS PLAN

9.1     <u>Distributions pursuant to the Debtor Plan Transaction</u>.

(a)     <u>General</u>.   The Debtor (or Reorganized Debtor) shall make all Distributions on account of all Allowed Claims to the Holders of such Allowed Claims, or in care of their authorized agents, as appropriate, on the Initial Distribution Date (or as soon thereafter as is practicable) at the following addresses: (i) the address set forth on the Proof of Claim filed by such Holder; or (ii) if no Proof of Claim has been filed, at the address reflected in the list of creditors filed with the Bankruptcy Court or in the Schedules.

(b)   Distributions of Cash.  At the option of the Debtor (or Reorganized Debtor), any payment or Distribution of cash made by the Debtor (or Reorganized Debtor) pursuant to this Plan shall be made by check or by wire transfer.

(c)   Timing and Calculation of Amounts to Be Distributed.  On the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the Subsequent Distribution Date occurring after such Claim becomes an Allowed Claim), each Holder of an Allowed Claim (other than an Allowed Unsecured Claim) shall receive the full amount of the Distributions that this Plan provides for Allowed Claims (other than Allowed Unsecured Claims) in the applicable Class.  Each Holder of an Allowed Unsecured Claim shall receive its *pro rata* share of the Available Cash and shall be paid on the first Subsequent Distribution Date following the earlier of the date upon which (i) all Disputed Claims are resolved or (ii) the amount of all Disputed Claims and all Allowed Unsecured Claims is less than the Available Cash.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the applicable class treatment or in Article 10 hereof.

(d)   No Postpetition Interest on Claims.  Unless otherwise specifically provided for in this Plan or the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

(e)   Minimum Distributions.  Notwithstanding anything herein to the contrary, the Debtor and/or Reorganized Debtor shall not be required to make Distributions or payments of less than $25.00 (whether in cash or otherwise) or to make partial Distributions or payments of fractions of dollars.

(f)   Undeliverable Distributions.  If the Distribution to any Holder of an Allowed Claim is returned to the Debtor and/or Reorganized Debtor as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until the Debtor and/or Reorganized Debtor is notified in writing of such Holder's then current address, at which time all currently due missed Distributions shall be made to such Holder on the next Distribution date, if any.  Undeliverable Distributions shall remain in the possession of the Reorganized Debtor, until such time as any such Distributions become deliverable.  Undeliverable Distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their Distribution being undeliverable.  Any Holder of an Allowed Claim (or any successor or assignee or other Person or Entity claiming by, through, or on behalf of, such Holder) that does not assert a right pursuant to this Plan for an undeliverable or unclaimed Distribution within one (1) year after the later of the Effective Date or the date such Distribution is due shall be deemed to have forfeited its rights for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such rights for an undeliverable or unclaimed Distribution against the Debtor or its Estate, the Reorganized Debtor or its property.  In such cases, any cash for Distribution on account of such rights for undeliverable or unclaimed Distributions shall become the property of the Estate free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

(g)     <u>Failure to Present Checks</u>.   Checks issued by the Debtor and/or Reorganized Debtor on account of Allowed Claims shall be null and void if not presented within 180 days after the issuance of such check, and such Holders shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property.   In such cases, any cash held for payment on account of such Claims shall be property of the Reorganized Debtor, free of any Claims or Interests of such Holder with respect thereto.   Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim or Interest.

(h)     <u>Compliance with Tax Requirements/Allocations</u>.   In connection with this Plan and all Distributions hereunder, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.   The Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.   All Persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.   Notwithstanding any other provision of this Plan to the contrary, each Holder of an Allowed Claim or Interest shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of a Distribution to such Holder.

9.2     <u>Distributions Pursuant to the RMW Alternative Plan Transaction</u>.

(a)     <u>General</u>.   If the RMW Alternative Plan Transaction is triggered, RMW Acquisition shall make all Distributions on account of all Allowed Claims to the Holders of such Allowed Claims as of the Initial Distribution Date pursuant to Section 6.3 of this Plan at any of the following addresses:   (i) the address set forth on the Proof of Claim filed by such Holder; or (ii) if no Proof of Claim has been filed, at the address reflected in the list of creditors filed with the Bankruptcy Court or in the Schedules.

(b)     <u>Distributions of Cash</u>.   At the option of RMW Acquisition, any payment or Distribution of Cash made by RMW Acquisition pursuant to this Plan and the RMW Alternative Plan Transaction shall be made by check or by wire transfer.

(c)     <u>Timing of Distributions</u>.   Unless otherwise provided for in this Plan, any payment or Distribution required to be made by RMW Acquisition shall be made on the Initial Distribution Date.

## ARTICLE 10

## PROCEDURES FOR THE TREATMENT OF DISPUTED CLAIMS

10.1     <u>Disallowance of Improperly Filed Claims</u>.   Subject to section 502(j) of the Bankruptcy Code and Bankruptcy Rules 3008 and 9006, any Claim for which the filing of a Proof of Claim or motion with the Bankruptcy Court is required under the terms of the

Bankruptcy Code, the Bankruptcy Rules, any order of the Bankruptcy Court (including one providing a Bar Date) or this Plan, shall be disallowed if, and to the extent, that such Proof of Claim (or other filing) is not timely and properly made.

10.2   Prosecution of Objections to Claims.   Unless otherwise ordered by the Bankruptcy Court, (a) the Debtor (or Reorganized Debtor) and Atlas under the Debtor Plan Transaction or (b) RMW under the RMW Alternative Plan Transaction, shall have the exclusive right to make and file objections to Claims, including Administrative Claims, and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise at any time on or before ninety (90) days after the later of (i) the Effective Date or (ii) the date on which such Claim was filed with the Bankruptcy Court unless no Proof of Claim is required to be filed pursuant to Bankruptcy Rule 3002, this Plan or any order of the Bankruptcy Court; provided, however, that (x) this deadline may be extended by the Bankruptcy Court on motion by the Debtor (or Reorganized Debtor), Atlas or RMW and (y) neither the Debtor (nor Reorganized Debtor) nor any other Person may file an objection to (1) a Claim that was Allowed by a Final Order entered during the Chapter 11 Case, or (2) a Claim Allowed by this Plan.  In addition, unless otherwise ordered by the Bankruptcy Court, after notice and a hearing, the Debtor (or Reorganized Debtor) shall have the exclusive right to amend the Schedules, and (a) the Debtor (or Reorganized Debtor) and Atlas under the Debtor Plan Transaction or (b) RMW, under the RMW Alternative Plan Transaction, shall have the exclusive right to object to any Claim specified on the Schedules, at any time on or before sixty (60) days after the Effective Date, provided, however, that this deadline may be extended by the Bankruptcy Court on motion by the Debtor (or Reorganized Debtor), Atlas or RMW, as applicable.

10.3   Settlement of Claims.   Under the Debtor Plan Transaction, the Debtor (or Reorganized Debtor) shall not compromise or settle any Claims without the prior written consent of Atlas.   Under the RMW Alternative Plan Transaction, the Debtor (or Reorganized Debtor) shall not compromise or settle any Claims without the prior written consent of RMW.  In either case, on and after the Effective Date, Claims may be settled or compromised without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, Bankruptcy Rules or Local Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

10.4   No Distributions Pending Allowance.  Notwithstanding any other provision of this Plan, no payment or Distribution will be made on account of any Disputed Claim until such time, if any, as the Disputed Claim becomes an Allowed Claim in whole or in part, and no interest shall be payable on the allowed portion, if any, of any Disputed Claim. Furthermore, no interest shall be payable to Holders of Disputed Claims on account of any interest earned on funds reserved under this Plan to satisfy such Disputed Claims.

10.5   Distributions After Allowance.  Payments and Distributions to each Holder of a Claim that is Disputed, or that is not Allowed, to the extent that such Claim ultimately becomes Allowed, shall be made in accordance with the provisions hereof governing the Class of Claims in which such Claim is classified.  On the first Subsequent Distribution Date after the date that the order or judgment of the Bankruptcy Court Allowing any

Disputed Claim becomes a Final Order, the Debtor shall distribute from the Disputed Claim Escrow Account to the Holder of such Claim any payment or property that would have been distributed to such Holder if the Claim had been Allowed as of the Effective Date (or such other date on which such Distribution would have been made), without any interest on such payment or property.

10.6   <u>Estimation</u>.  At any time prior to the Effective Date, the Debtor or RMW, and after the Effective Date, the Reorganized Debtor or Atlas, under the Debtor Plan Transaction, or RMW, under the RMW Alternative Plan Transaction, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. All of the aforementioned Claims objection, estimation and resolution procedures shall be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties shall be reserved in connection with any such estimation proceeding.

10.7   <u>Disputed Claim Escrow Account</u>.  With respect to the Debtor Plan Transaction, the Debtor shall establish the Disputed Claim Escrow Account, which shall be funded with proceeds of the Tier One Capital Provider Loan.  With respect to the RMW Alternative Plan Transaction, RMW Acquisition shall pay all Disputed Claims if and when they are finally Allowed by Bankruptcy Court order, without the need for a Disputed Claim Escrow Account.

10.8   <u>Amounts to Be Reserved</u>.  With respect to the Debtor Plan Transaction only, on the Initial Distribution Date and on any Subsequent Distribution Date, the Reorganized Debtor shall reserve and maintain in the Disputed Claim Escrow Account (a) with respect to each Disputed Claim that is liquidated, the ratable proportion of all cash allocated for Distribution on account of such Disputed Claim based upon the face amount of each such Disputed Claim, or such lesser amount as may be agreed to in writing by the Holder of the Claim or as may be determined by the Bankruptcy Court, as applicable, or (b) with respect to each Disputed Claim that is unliquidated (including any unliquidated fees, penalties, charges or other similar amounts), such amount as shall be sufficient, as either (i) determined by order of the Bankruptcy Court upon motion of the Reorganized Debtor seeking a determination as to the appropriate amount to reserve, or (ii) agreed to in writing by the Holder of the Claim and the Reorganized Debtor as the maximum amount that could be owed in the event the Claim were ultimately Allowed.

10.9   <u>Closing of Disputed Claim Escrow Account</u>.  The Disputed Claim Escrow Account shall be closed by the Reorganized Debtor when all Distributions required to be made therefrom under this Plan have been made.  Upon closure of the Disputed Claim Escrow Account, all cash and other property held in the Disputed Claim Escrow Account shall be distributed directly to Atlas.

# ARTICLE 11

## EXECUTORY CONTRACTS

11.1    <u>Rejection of Executory Contracts</u>.  Except as otherwise provided in Section 11.2 of this Plan, any executory contract and unexpired lease that has not been expressly assumed by the Debtor with the Bankruptcy Court's approval on or prior to the Confirmation Date shall, as of the Confirmation Date (subject to the occurrence of the Effective Date), be deemed to have been rejected by the Debtor in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract.  The Confirmation Order shall approve and effectuate the rejection of such executory contract or unexpired lease.  If the rejection of any executory contract or unexpired lease under the Plan gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor, their respective successors or properties, unless a proof of Claim is filed with the Bankruptcy Court and served on the Debtor (or Reorganized Debtor) within thirty (30) days after the date of notice of the entry of the Confirmation Order.  Any such timely filed Claim shall be classified in Class 3.

11.2    <u>Assumption of Certain Executory Contracts</u>.  Notwithstanding Section 11.1 of this Plan, (a) the executory contracts and unexpired leases listed on Schedule 11.2(a) hereto shall be assumed pursuant to this Plan under the Debtor Plan Transaction and (b) the executory contracts and unexpired leases listed on Schedule 11.2(b) hereto shall be assumed pursuant to this Plan under the RMW Alternative Plan Transaction and assigned to RMW Acquisition or its assignee or designee.  Any monetary defaults under each executory contract and unexpired lease to be assumed in accordance with this Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in cash as and when due in the ordinary course of business, as may be ordered by the Bankruptcy Court or on such other terms as the parties to such executory contracts or unexpired leases may agree.  In the event of a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.  If an objection to cure is sustained by the Bankruptcy Court, the Debtor or Reorganized Debtor, as applicable, in their sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

11.3    <u>Assignment to SPE</u>.  If the Atlas Property Transfer Option is exercised by Atlas, any executory contract or unexpired lease assumed in accordance with Section 11.2 of this Plan shall be assumed and assigned to SPE, at Atlas's option, in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code.

# ARTICLE 12

## MATTERS INCIDENT TO PLAN CONFIRMATION

12.1   No Liability for Tax Claims.  Unless a taxing authority has asserted a Claim against the Debtor before the applicable Bar Date, no Claim of such authority shall be Allowed against the Debtor (or Reorganized Debtor) for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtor, or any other Entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

12.2   No Successor Liability.  Except as otherwise expressly provided in this Plan or the Confirmation Order, none of the Reorganized Debtor, SPE, GP, Atlas, the Atlas Principal or RMW and each of their respective Related Persons, pursuant to this Plan or otherwise (a) assumes, agrees to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtor or any other Person relating to or arising out of the operations or Assets of the Debtor on or prior to the Effective Date; (b) is, or shall be, a successor to the Debtor by reason of any theory of law or equity; or (c) shall have any successor or transferee liability of any kind or character.

# ARTICLE 13

## RETENTION OF JURISDICTION

13.1   Jurisdiction.  Until the Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction permissible, including that necessary to ensure that the purposes and intent of this Plan are carried out.  Except as otherwise provided in this Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtor, and to adjudicate and enforce all other Causes of Action which may exist on behalf of the Debtor (or Reorganized Debtor). Nothing contained herein shall prevent the Debtor (or Reorganized Debtor) from taking such action as may be necessary in the enforcement of any cause of action, including, but not limited to, Avoidance Actions, which the Debtor has or may have and which may not have been enforced or prosecuted by the Debtor, which cause of action, including, but not limited to, Avoidance Actions, shall survive confirmation of this Plan and shall not be affected thereby except as specifically provided herein.

13.2   General Retention.  Following the entry of the Confirmation Order, the administration of the Chapter 11 Case will continue at least until the completion of the transfers contemplated to be accomplished on the Effective Date.  The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claim and the re-examination of Claims which have been Allowed temporarily for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claim.  The failure to object to, or examine, any Claim for the purposes of voting shall not be deemed a waiver of the right of the Debtor (or Reorganized Debtor) to object to or re-examine such Claim in whole or part for any other purpose.

13.3    <u>Specific Purposes</u>.  In addition to the foregoing, the Bankruptcy Court shall retain exclusive jurisdiction for the following specific purposes after the Confirmation Date.

(a)    to modify this Plan after the Confirmation Date, pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

(b)    to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to this Plan, the Plan Documents,  or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan, including the adjustment of the date(s) of performance under the Plan Documents in the event that the Effective Date does not occur as provided herein so that the intended effect of this Plan may be substantially realized thereby;

(c)    to assure the performance by the Debtor (or Reorganized Debtor) or, to the extent appropriate, RMW, of its obligations to make Distributions under this Plan; including, but not limited to Distributions to Holders of Allowed Claims pursuant to the provisions of this Plan;

(d)    to enforce and interpret the terms and conditions of the Plan Documents;

(e)    to enter such orders or judgments, including, but not limited to, injunctions as may be necessary or appropriate to (i) enforce the title, rights, and powers of the Debtor (or Reorganized Debtor), and (ii) implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan or the Amended Disclosure Statement or the Confirmation Order, except as otherwise provided herein;

(f)    to decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date, or brought thereafter by the Reorganized Debtor, including the Causes of Action retained and preserved under this Plan, and to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to the Debtor (or Reorganized Debtor) arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or relating to the period of administration of the Chapter 11 Case;

(g)    to hear and determine all applications for compensation of professionals and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code;

(h)    to resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan or any entity's obligations created or incurred in connection with this Plan and to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date;

(i)     to hear and determine any cause of action in any way related to the Plan Documents or the transactions contemplated thereby, against the Debtor (or Reorganized Debtor), and their respective present and former officers, directors, stockholders, employees, members, attorneys, accountants, financial advisors, representatives, and agents;

(j)     to hear and determine any and all motions for the rejection, assumption, or assignment of executory contracts and the Allowance of any Claim resulting therefrom;

(k)     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of this Plan;

(l)     to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated or if Distributions pursuant to this Plan are enjoined or stopped;

(m)     to determine any other matters that may arise in connection with or relate to this Plan, the Amended Disclosure Statement, the Disclosure Statement Approval Order, the Confirmation Order or any contract, instrument release or other agreement or document created in connection with this Plan or the Amended Disclosure Statement;

(n)     to hear and determine such other matters as may be provided in the Confirmation Order;

(o)     to consider and act on the compromise and settlement of any Claim against or Interest in the Debtor or its Estate, including, without limitation, any disputes relating to the Bar Date;

(p)     to hear and determine all questions and disputes regarding title to the assets of the Debtor or its Estate;

(q)     to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Case;

(r)     to hear and determine all questions and disputes arising out of or in connection with the Settlement Agreement, Settlement Order, Plan Investment Agreement or Plan Investment Agreement Approval Order;

(s)     to enter such orders as are necessary to implement and enforce the Injunctions and the other injunctions described herein; and

(t)     to enter an order closing the Debtor's Chapter 11 Case.

## ARTICLE 14

## ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

The performance of all obligations which shall be due and owing on the Effective Date pursuant to the terms of this Plan shall constitute substantial consummation of this Plan within the meaning of section 1101(2) of the Bankruptcy Code.  Notwithstanding any closing of the Chapter 11 Case, Reorganized Debtor may move to reopen the Chapter 11 Case for the purpose of seeking relief pursuant to the retained jurisdiction of the Bankruptcy Court provided herein, under the Confirmation Order or under applicable law.

## ARTICLE 15

## MISCELLANEOUS PROVISIONS

15.1    Effectuating Documents and Further Transactions.    The Debtor (or Reorganized Debtor), Atlas, RMW and any other party whose cooperation is needed in connection with this Plan, shall be required to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

15.2    Modifications of this Plan.  The Plan Proponents may propose amendments to or modifications of this Plan, under section 1127 of the Bankruptcy Code, at any time prior to the Confirmation Date.  After the Confirmation Date, the Debtor (or Reorganized Debtor) may remedy any defects or omissions or reconcile any inconsistencies in this Plan or the Confirmation Order or any other order entered for the purpose of implementing this Plan in such manner as may be necessary to carry out the purposes and intent of this Plan.

15.3    Revocation and Withdrawal of this Plan.  The Plan Proponents reserve the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Plan Proponents revoke and withdraw this Plan prior to the Confirmation Date or, if this Plan is not confirmed pursuant to section 1129 of the Bankruptcy Code, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Entity or to prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor.  The foregoing is subject to Section 15.5 of this Plan.

15.4    Withdrawal of Plan Proponent.  In the event that the Debtor elects not to pursue confirmation of this Plan, RMW shall be entitled to unilaterally seek and obtain confirmation of this Plan.   In such event, the Debtor and Atlas shall support RMW's effort to confirm this Plan and after receipt of a court-approved disclosure statement, shall support, and vote for confirmation of this Plan.

In the event RMW elects not to pursue confirmation of this Plan, the Debtor shall be entitled to unilaterally seek and obtain confirmation of this Plan.  In such event, RMW

and Atlas shall support the Debtor's effort to confirm this Plan and after receipt of a court-approved disclosure statement, shall support, and vote for confirmation of this Plan.

15.5    <u>Binding Effect</u>.  Upon the Effective Date, this Plan shall be binding upon and inure to the benefit of the Debtor and its successors and assigns, Reorganized Debtor, and the Holders of Claims and Interests and their respective successors and assigns, whether or not they voted to accept this Plan.  The rights, duties and obligations of any Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

15.6    <u>No Admission</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan or in the Amended Disclosure Statement shall be deemed as an admission by the Debtor, with respect to any matter set forth herein or therein, including, without limitation, liability on any Claim or the propriety of any Claim classification.

15.7    <u>Notices</u>.  All notices, requests and demands to or upon the Debtor (or Reorganized Debtor) to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail, when received and confirmed, addressed as follows.

*If to the Debtor or Reorganized Debtor to:*

Joseph D. Frank, Esq. (jfrank@fgllp.com)
Frances Gecker, Esq. (fgecker@fgllp.com)
FrankGecker LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60654
Phone: (312) 276-1400

*If to RMW:*

Brian L. Shaw, Esq. (bshaw@shawfishman.com)
Shaw Fishman Glantz & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60654
Phone: (312) 666-2833

*And to*:

Lenard M. Parkins (lenard.parkins@haynesboone.com)
John D. Beck (john.beck@haynesboone.com)
Haynes and Boone LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Phone:  (212) 659-7300

*If to Atlas:*

> Douglas Bacon (douglas.bacon@lw.com)
> Alicia C. Davis (alicia.davis@lw.com)
> Latham & Watkins LLP
> 330 North Wabash Avenue
> Suite 2800
> Chicago, IL 60611
> Phone:  (312) 876-7700

or to such other address or to the attention of such other Person as the recipient Person has specified by prior written notice.

15.8    Governing Law.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to the principles of conflicts of law of such jurisdiction, and, where applicable, the General Corporation Law of the State of Delaware.

15.9    Plan Supplement.  Any and all exhibits or schedules not filed with this Plan shall be contained in a Plan Supplement and filed with the Clerk of the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during regular court hours or online at [http://www.fgllp.com/shelbourne].  Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtor in accordance with Section 15.8 of this Plan.

15.10    Exhibits and Schedules.  All Exhibits and Schedules to this Plan, including the Plan Supplement, are incorporated into and shall be a part of this Plan, as if set forth in full herein.

15.11    Modification of Payment Terms.    With respect to the Debtor Plan Transaction, the Debtor (or Reorganized Debtor), with the prior written consent of Atlas, reserves the right to modify the treatment of any Allowed Claim, as provided in section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Holder of such Allowed Claim.  With respect to the RMW Alternative Plan Transaction, RMW reserves the right to modify the treatment of any Allowed Claim, as provided in section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the Holder of such Allowed Claim.

15.12    Reservation of Rights.  Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date occurs.  Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any

rights of the Debtor, Atlas, RMW, any Holder of a Claim or an Interest or any other Entity prior to the Effective Date.

15.13   <u>Further Assurances</u>.  The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims and Interests receiving Distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order.

This Second Amended Joint Chapter 11 Plan of Reorganization of Shelbourne North Water Street, L.P. and RMW Acquisition Company LLC is being submitted this 12th day of June, 2014.

Respectfully submitted,

SHELBOURNE NORTH WATER STREET, L.P.

By:      */s/ Joseph D. Frank*
      One of its attorneys

Frances Gecker (IL No. 6198450)
Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois  60654
Phone: (312) 276-1400
Fax:    (312) 276-0035
fgecker@fgllp.com
jfrank@fgllp.com

-and-

RMW ACQUISITION COMPANY LLC, RMW CLP ACQUISITIONS LLC, and RMW ACQUISITIONS II LLC

By:      */s/ Brian L. Shaw*
      One of their attorneys

Brian L. Shaw
Peter J. Roberts
SHAW FISHMAN GLANTZ & TOWBIN LLC
321 N. Clark Street, Suite 800
Chicago, Illinois 60654
Telephone:  (312)-541-0151
Facsimile: (312) 980-3888
Email: bshaw@shawfishman.com
proberts@shawfishman.com

- and -

Lenard M. Parkins (*pro hac vice*)
John D. Beck (*pro hac vice*)
HAYNES AND BOONE LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone:  (212) 659-7300
Facsimile:  (212) 918-8989

## PLAN SUPPLEMENT

**[TO BE FILED]**