**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SHELBOURNE NORTH WATER STREET, L.P., | ) | Case No. 13-44315 (JSB) |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | **Hearing Date:      December 23, 2014** |
| | ) | **Hearing Time:      9:30 a.m.** |
| | ) | **Courtroom:          615** |
| | ) | **Objection Deadline: December 19, 2104** |

**NOTICE OF HEARING ON FRANKGECKER LLP'S SECOND AND FINAL
APPLICATION FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE DEBTOR**

**PLEASE TAKE NOTICE** that on **Tuesday, December 23, 2014 at 9:30 a.m.**, or as

soon thereafter as counsel may be heard, we shall appear before the Honorable Janet S. Baer in

Courtroom 615 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois

60604, or before any other judge who may be sitting in her place and stead, and present

**FrankGecker LLP's Second and Final Application for Allowance of Compensation and**

**Reimbursement of Expenses Incurred as Counsel to the Debtor**, at which time and place you

may appear if you so desire.

Dated:  November 19, 2014

Respectfully submitted,

FRANKGECKER LLP

By:    /s/ *Joseph D. Frank*
       One of its attorneys
       *Counsel to the Debtor*

Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois  60654
Telephone:     (312) 276-1400
Facsimile:     (312) 276-0035
jfrank@fgllp.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SHELBOURNE NORTH WATER STREET, L.P., | ) | Case No. 13-44315 (JSB) |
| | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |
| | ) | |
| | ) | **Hearing Date:     December 23, 2014** |
| | ) | **Hearing Time:     9:30 a.m.** |
| | ) | **Courtroom:     615** |

**COVER SHEET FOR FRANKGECKER LLP'S SECOND AND FINAL
APPLICATION FOR ALLOWANCE OF COMPENSATION AND
REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE DEBTOR**

| | |
|---|---|
| Name of Applicant: | FrankGecker LLP |
| Authorized to Provide Professional Services to: | Shelbourne North Water Street, L.P. |
| Date of retention: | December 2, 2013 (retroactively to November 8, 2013) |
| Period for which compensation and reimbursement is sought for the first time: | May 1, 2014 through November 3, 2014 (the "Supplemental Application Period") |
| Period for which final approval of compensation and reimbursement is sought: | November 8, 2013 through November 3, 2014 |
| Amount of fees incurred during the Supplemental Application Period to be approved as actual, reasonable and necessary: | $363,011.00 |
| Amount of costs incurred during the Supplemental Application Period to be approved as actual, reasonable and necessary: | $8,810.65 |
| Amount of previously-awarded interim compensation for which final approval is sought | $511,402.75 |
| Amount of previously-awarded interim reimbursement for which final approval is sought: | $11,973.49 |
| This is a final application. | Final application |

The aggregate amount of fees and expenses *paid* to the Applicant to date for services rendered and expenses incurred in connection with this case is:  $523,376.24

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SHELBOURNE NORTH WATER | ) | Case No. 13-44315 (JSB) |
| STREET, L.P., | ) | |
| | ) | Honorable Janet S. Baer |
| Debtor. | ) | |

**FRANKGECKER LLP'S SECOND AND FINAL APPLICATION FOR
ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES INCURRED AS COUNSEL TO THE DEBTOR**

FrankGecker LLP ("FG"), counsel to Shelbourne North Water Street, L.P. (the "Debtor"), hereby submits its second and final application (the "Application"), pursuant to 11 U.S.C. §§ 330, and 507(a)(2), seeking allowance, on a final basis, of compensation for legal services rendered to the Debtor in the amount of $874,413.75 and reimbursement of expenses incurred in the amount of $20,784.14 for the period from November 8, 2013 through and including November 3, 2014 (the "Final Application Period").   The compensation and reimbursement sought in this Application are comprised of:  (i) compensation in the amount of $363,011.00 and reimbursement of expenses totaling $8,810.65 relating to services rendered between May 1, 2014 and November 3, 2014 (the "Supplemental Application Period") for which no prior request has been made; and (ii) compensation in the amount of $511,402.75 and reimbursement of expenses totaling $11,973.49 previously awarded by this Court on an interim basis pursuant to 11 U.S.C. § 331.  In support of its Application, FG respectfully represents as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C.  § 157(b)(2)(A).

{SHELBOUR/002/00040197.DOC/}

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The relief requested herein is predicated on 11 U.S.C. §§ 327 and 330, Rule 2016 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 5082-1.

## BACKGROUND

4.      The Debtor, a Delaware limited partnership, was formed in July of 2006 to develop a 150-story residential tower in Chicago. The building, known as the Chicago Spire (the "Spire" or the "Property"), was designed to be the tallest building in the Western Hemisphere.

5.      After the real estate collapse of 2008, the Debtor defaulted on its loans and ceased development and construction of the Property.   In June, 2010, a mechanic's lien creditor commenced a foreclosure action (the "Foreclosure Litigation") against the Debtor in the Circuit Court of Cook County (the "Circuit Court").   Shortly thereafter, the Debtor's principal secured lender joined the foreclosure suit and sought the appointment of a receiver.   In December, 2010, the Circuit Court appointed Stephen Bell as receiver (the "Receiver") to take possession of the Property.

6.      On October 9, 2013 (the "Petition Date"), four alleged creditors (the "Petitioners") filed an involuntary Chapter 11 petition against the Debtor in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").

7.      On November 8, 2013, pursuant to a stipulation among the Debtor and the Petitioners (the "Stipulation"), the Delaware Bankruptcy Court entered a chapter 11 order for relief (the "Order for Relief"), approved the Stipulation, designated the case (the "Case") as a single asset real estate case and transferred venue of the Case to this Court. The Stipulation also provided that the Debtor would have the exclusive right to file a chapter 11 plan of reorganization through March 10, 2014, and that the Petitioners would not seek to terminate or

shorten that exclusive period or seek appointment of a chapter 11 trustee during that period. No

trustee or committee was appointed in the Case, and the Debtor managed its affairs as a debtor in

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

### *FG's Retention*

8.      On November 20, 2013, the Debtor filed a motion [Docket No. 25] (the

"Retention Application") to employ FG as its counsel pursuant to 11 U.S.C. § 327(a), retroactive

to November 8, 2013. The Retention Application was granted pursuant to this Court's order

entered on November 27, 2013 [Docket No. 40].

9.      As set forth in the Retention Application, prior to the entry of the Order for

Relief, FG received retainer payments totaling $90,000.00 (the "Retainer") from the IOLTA

account of Thomas J. Murphy, P.C. At the Debtor's direction, FG transferred $40,000 of these

funds to Landis, Roth & Cobb LLP ("LRC"), the law firm that represented the Debtor in the

Delaware Bankruptcy Court.  Subsequently, LRC returned unearned funds to FG totaling

$1,088.56, which FG added to its funds on retainer. From funds held on retainer, FG applied

$3,750 in payment for services rendered to the Debtor prior to the Petition Date and $19,685.50

for services rendered by FG between the Petition Date and the date of the Order for Relief.

10.     Once retained, FG assisted the Debtor in its pursuit of a reorganization.  In

connection with those efforts, FG facilitated the Debtor's efforts to locate an investor and

assisted the Debtor in negotiation of a plan investment agreement (the "PIA") with Atlas

Apartment Holdings, LLC ("Atlas"), pursuant to which Atlas proposed to provide funding

(subject to its own ability to obtain financing) to the Debtor with which the Debtor could

reorganize and pay the claims of its creditors.

11.    On February 6, 2014, the Debtor filed a motion [Docket No. 94] (the "PIA Motion") to approve the PIA and to provide Atlas with certain investor protections.  RMW subsequently filed an objection to the PIA Motion [Docket No. 108].

12.    On March 10, 2014, the Debtor filed its Chapter 11 Plan of Reorganization (the "Original Plan") [Docket No. 165] and accompanying Disclosure Statement (the "Original Disclosure Statement") [Docket No. 166], proposing payment in full of all allowed non-insider claims.

13.    Subsequently, the Debtor, Atlas and RMW entered into a settlement agreement (the "Settlement Agreement") [Docket No. 176, at Exhibit 1] that resolved the primary disputes among them, provided for the reduction and allowance of RMW's secured claims against the estate (collectively, the "RMW Claims") and provided that the Debtor and RMW would be co-proponents of a chapter 11 plan, pursuant to which the Debtor would either:  (i) pay all or a substantial portion of the RMW Claims by October 31, 2014 and pay all additional claims in full (the "Debtor Plan Transaction"); or (ii) to transfer the Property to RMW in satisfaction of its claims and in exchange for RMW's agreement to pay the remaining liabilities of the Debtor's estate (the "RMW Alternative Plan Transaction").[1]   Under either scenario, creditors with allowed, timely-filed claims against the Debtor's estate would receive substantial payments in satisfaction of their claims.  The Court entered an order approving the Settlement Agreement on March 26, 2014 [Docket No. 193].

14.    On April 17, 2014, the Debtor and RMW filed the Amended Joint Chapter 11 Plan of Reorganization of Shelbourne North Water Street, L.P., RMW Acquisition Company,

---

[1] The complete terms of the Debtor Plan Transaction and RMW Alternative Plan Transaction are set forth in sections 6.2 and 6.3 of the Debtor's confirmed Plan (as defined below).

LLC, RMW CLP Acquisitions, LLC and RMW CLP Acquisitions II, LLC [Docket No. 213] in an effort to implement and consummate the terms of the PIA and the Settlement Agreement.

15.     Subsequently, on June 12, 2014, the Plan Proponents filed the Second Amended Joint Chapter 11 Plan of Reorganization of Shelbourne North Water Street, L.P., RMW Acquisition Company, LLC, RMW CLP Acquisitions, LLC and RMW CLP Acquisitions II, LLC [Docket No. 245] (as subsequently modified, the "Plan") and the Amended Disclosure Statement with Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Shelbourne North Water Street, L.P., RMW Acquisition Company LLC, RMW CLP Acquisitions LLC and RMW Acquisitions II LLC [Docket No. 246] (as modified, the "Disclosure Statement").

16.     On August 20, 2014, the Court entered an order approving the Disclosure Statement as adequate [Docket No. 290] (the "Disclosure Statement Order").  The Disclosure Statement Order directed RMW and the Debtor, conditioned upon Atlas's consent, to solicit in support of the Plan by September 4, 2014, set a hearing on confirmation of the Plan on October 7, 2014 (the "Confirmation Hearing") and set a September 29, 2014 deadline for voting and/or the filing of objections to the Plan.

17.     On September 4, 2014, the Debtor solicited votes on the Plan from its creditors and provided notice of the Confirmation Hearing and the deadline for filing objections to the Plan.  No parties objected to the Plan and the Plan received unanimous support among voting creditors.  After conducting a hearing on confirmation, the Court entered an order on October 7, 2014 confirming the Plan [Docket No. 327] (the "Confirmation Order").

18.     Following entry of the Confirmation Order, FG and the Debtor continued to work diligently with Atlas to facilitate Atlas' efforts to secure the financing necessary for Atlas to fund

the Debtor Plan Transaction.  However, Atlas was unable to obtain financing and thus lacked the financial wherewithal to complete the Debtor Plan Transaction by October 31, 2014.

19.     On Monday, November 3, 2014, the next business day following the October 31, 2014 deadline for the Debtor Plan Transaction, the Debtor transferred ownership of the Property to RMW in satisfaction of its claims, conditioned upon the undertakings contemplated within the RMW Alternative Plan Transaction.   At that time, the effective date under the Plan (the "Effective Date") occurred.

### FG's First Interim Fee Application

20.     On June 3, 2014, FG filed FrankGecker LLP's First Interim Application for Compensation and Reimbursement of Expenses Incurred as Counsel to the Debtor [Docket No. 242] (the "Interim Application").  Therein, FG sought allowance of interim compensation in the amount of $519,110.00 for services rendered between November 8, 2013 and April 30, 2014 (the "Interim Application Period") and the reimbursement of expenses totaling $11,973.49.

21.     On July 7, 2014, the Court entered an order awarding, on an interim basis, $511,402.75 in compensation and $11,973.49 in reimbursement of expenses [Docket No. 272] (the "Interim Compensation Order").

22.     Pursuant to the Interim Compensation Order, FG ultimately received payment in full of the interim compensation and reimbursement allowed to FG.  FG now seeks allowance, on a final basis, of all previously awarded compensation and reimbursement.

### The Professional Services Rendered by FrankGecker LLP

23.     Throughout the Final Application Period, FG's professionals assisted the Debtor in navigating virtually every facet of its chapter 11 case and in negotiating, drafting and confirming a complex chapter 11 plan of reorganization that satisfied over $100 million of

secured indebtedness and will yield a substantial recovery for unsecured creditors on account of their claims.

24.     FG's Interim Application provided a detailed description of the services rendered and the results obtained during the first six months of the case, from November 8, 2013 through April 30, 2014, and that description is incorporated herein by reference.  Between May 1, 2014 and November 3, 2014 (the "Supplemental Application Period"), FG provided 740.30 hours of additional professional services, for which it now seeks additional compensation totaling $363,011.00.  In addition, FG seeks reimbursement of expenses totaling $8,810.65 incurred in connection with those services.

25.     FG devoted the bulk of its time during the Supplemental Application Period to facilitating and completing the Debtor's reorganization.  During this period, FG assisted the Debtor's efforts to incorporate the provisions of the Settlement Agreement into the Plan with co-Plan proponents RMW Acquisition Company and its subsidiaries (collectively, "RMW"), and to obtain approval of that Plan.  Specifically, FG, worked with RMW's counsel to revise and finalize the Plan and Disclosure Statement; to prepare and obtain approval of solicitation procedures relating to the Plan; to obtain approval of the Disclosure Statement; to prepare a supplemental filing of several documents pursuant to which the Debtor's restructuring would be completed by either of the restructuring transactions proposed in the Plan (the "Plan Supplement"), including the drafting of certain operational documents contained therein; and, ultimately, to obtain confirmation of the Plan.

26.     During the Supplemental Application Period, FG, on behalf of the Debtor, also spent substantial amounts of time litigating issues related to a claim in the amount of $4,847,906.14 filed by Perkins+Will, Inc. ("P+W") and a claim filed by Coxe Investments, LLC

("Coxe") by which Coxe sought to establish hundreds of thousands of dollars in liability. Each of these claims was filed after the January 27, 2014 bar date, raising additional issues of "excusable neglect" to be litigated among the parties. Based on the amount of the claims asserted and their timing, these claims, would, under certain circumstances, have substantially diluted the recoveries of the Debtor's unsecured creditors. FG provided professional services litigating, and ultimately resolving the multi-million dollar claim asserted by P+W, and negotiating an approximate $3.5 million reduction in the claim amount. As part of that settlement, FG also assisted the Debtor in resolving P+W's potential objections to the Plan and in developing protections that enabled P+W to turn over the essential working documents relating to the Property. FG also successfully negotiated a settlement with Coxe that reduced hundreds of thousands of dollars of asserted liability to an allowed claim of $100,000.

27.    In addition to these undertakings, FG advised and assisted the Debtor throughout the Supplemental Application Period in fulfilling its duties under chapter 11, including:

- Assisting the Debtor in preparing its monthly operating reports;

- Drafting, filing and presenting various motions before the Court;

- Meeting and negotiating with creditors and other interested parties and their representatives regarding matters relating to the administration of the estate;

- Negotiating the resolution of issues regarding the Receiver;

- Negotiating, and obtaining approval of, settlements of disputed claims asserted against the Debtor;

- Communicating with the office of the United States Trustee; and

- Performing all other legal services, as required.

### *The Application*

28.     This Application sets forth in detail the legal services performed by FG on behalf of the estate between May 1, 2014 and November 3, 2014.[2]  To aid the Court in its review of the Application, FG has divided the Application into three parts.  Part I describes the practical and legal issues encountered by FG, during the Supplemental Application Period and the actions taken and results obtained by FG.  Part II describes qualifications and areas of special expertise of FG's attorneys.  Part III describes the manner in which the fees and costs were calculated.

## I.    SERVICES PERFORMED

### A.    Administration                                    $20,279.00

FG devoted 45.60 hours of legal services, at a cost of $20,279.00, to a variety of issues relating to case administration, including addressing the Debtor's executory contracts, addressing a motion to dismiss the Debtor's bankruptcy case filed and then withdrawn by P+W during the course of the litigation with respect to P+W's claim, and addressing certain issues relating to the Debtor's ability to transfer title to the Property in connection with its reorganization.

### B.    Claims                                          $109,800.00

FG devoted 241.50 hours of legal services, at a cost of $109,800.00, to issues relating to reviewing and resolving claims.  These efforts included continued review and evaluation of secured, mechanic's lien, and unsecured claims asserted against the Debtor, and litigating motions filed by both P+W and Coxe seeking allowance of claims filed after the January 27, 2014 bar date.  Specifically, FG assisted the Debtor in contesting these motions, preparing and conducting discovery in preparation for evidentiary hearings on each motion, and, ultimately, negotiating consensual resolutions of these motions and the underlying claims.  In the case of

---

[2] FG previously set forth, in detail, the legal services rendered during the Initial Application Period in its Interim Application.

P+W's multi-million dollar claim, this work also included the resolution of complex issues relating to transfer of working documents pertaining to the development of the Chicago Spire site.  Through its efforts, FG obtained a $4 million-plus reduction of the amount of the claims asserted against the Debtor's estate.

### C.    Court Appearances                                    $11,595.50

FG devoted 21.10 hours of legal services, at a cost of $11,595.50, to preparing for and attending court hearings in connection with the Debtor's Plan confirmation efforts, its litigation of the claims of P+W and Coxe, its efforts to resolve other claims in reduced amounts, its efforts to obtain approval of an amendment to the Plan Investment Agreement, and to address various other matters before the Court.  As reflected in the time entries in this category, FG often endeavored to have only one attorney present at court hearings unless the circumstances required the particular knowledge, experience or involvement of multiple attorneys.

### D.    Fee Applications                                    $14,704.00

FG devoted 32.60 hours of legal services, at a cost of $14,704.00, to issues relating to preparation and presentation of FG's first interim application for reimbursement of professional fees and expenses incurred as counsel to the Debtor, as well FG's efforts to draft this Final Application prior to the Effective Date.

### E.    Monthly Operating Reports                            $3,079.00

FG devoted 9.80 hours of legal services, at a cost of $3,079.00, to preparing and filing the Debtor's monthly operating reports.

### F.    Plan and Disclosure Statement                       $166,850.00

FG devoted 319.70 hours of legal services, at a cost of $166.850.00, to issues relating to the Debtor's Plan and Disclosure Statement.  These efforts included extensive negotiations with

Atlas and RMW regarding Plan terms, amending and filing the Debtor's Plan and Disclosure Statement, preparing proposed ballot tabulation and solicitation procedures with respect to the Plan, preparing Plan solicitation materials, including the Plan Supplement, and communicating with various interested parties regarding same. In addition, FG prepared a comprehensive memorandum of law in support of Plan confirmation and undertook research of certain Plan confirmation issues. Finally, FG, together with counsel to Atlas and RMW, prepared a longer-form confirmation order consistent with the requirements and circumstances of the Debtor's case, and conducted the Confirmation Hearing. Given the substantial amounts at stake and the dual alternative transaction structure of the Plan, the negotiation and drafting of a final version of the Plan was a labor intensive process that repeatedly required FG to work to build consensus among the Debtor, Atlas and RMW, despite the fact that these parties often held divergent views and interests.

### G.    Plan Investment Agreement                          $34,464.50

FG devoted 64.20 hours of legal services, at a cost of $34,464.50, to tasks relating to the PIA. During the Supplemental Application Period, FG's efforts with respect to the PIA were concentrated on (i) ensuring the Debtor's performance of its obligations under the PIA, (ii) negotiating an amendment to the PIA to permit the Debtor to seek out alternative sources of funding in the event that Atlas proved unable to obtain or to provide the necessary funding to the Debtor; (iii) drafting a motion seeking Court approval of the amendment to the PIA; and (iv) monitoring Atlas' performance of its obligations under the PIA.

### H.    Receiver Issues                                    $2,239.00

FG devoted 5.80 hours of legal services, at a cost of $2,239.00, to resolving various issues with regard to the Receiver. These efforts incl uded communications with the Receiver

and his counsel regarding proposed disbursements for the benefit of the Property, coordinating the payment of quarterly fees due to the United States Trustee, and coordinating the retention of the Debtor's documents with the Receiver.

## II.    PROFESSIONALS PROVIDING SERVICES TO THIS ESTATE

Over the course of the Final Application Period, several of FG's attorneys provided services to, or for the benefit of the Debtor. The background and qualifications of these individuals follows.

A.    Frances Gecker (FG) is a partner at FG. Ms. Gecker is a 1988 graduate of Northwestern University School of Law (*magna cum laude*), where she was a member of the Editorial Board of the Northwestern Law Review and was elected to the Order of the Coif. Ms. Gecker specializes in bankruptcy, financial restructuring and corporate finance and took a lead role in preparation of the Plan and Disclosure Statement, while working on a variety of other discrete tasks.

B.    Joseph D. Frank (JDF) is a partner at FG. Mr. Frank graduated from the University of Chicago Law School in 1993 with honors. Mr. Frank specializes in bankruptcy law, litigation and workouts, and has represented trustees, debtors, committees and creditors in bankruptcy cases throughout the country. Mr. Frank took a lead role in the representation of the Debtor in this case.

C.    Jeremy C. Kleinman (JCK) is an associate at FG. Mr. Kleinman graduated from the University of Michigan Law School in 1999 and served as law clerk to the Honorable John D. Schwartz. Mr. Kleinman has handled day-to-day matters with respect to most issues in the case and took a lead role in litigation over approval of the PIA, litigation with P+W and Coxe, and worked extensively on all issues related to confirmation of the Plan.

**D.**     Zane L. Zielinski (ZLZ) is an associate at FG.  Mr. Zielinski graduated from the Chicago-Kent College of Law in 2002.  Mr. Zielinski took an active role in connection with due diligence, discovery, preparation of the Debtor's schedules, statement of financial affairs and monthly operating reports, interaction with the Receiver and other real estate related issues in this case.

**E.**     Reed Heiligman (RH) is an associate at FG.  Mr. Heiligman graduated from John Marshall School of Law in 2007.  Mr. Heiligman provided research and other assistance in this case.

To aid in the Court's review of this Application, Set forth below is a chart of fees sought for services rendered during the Supplemental Application Period, separated by each professional or paraprofessional providing services:

| Professional | Admitted to Bar | Hourly Rate | Hours Billed | Charges |
|---|---|---|---|---|
| Frances Gecker | 1988 | $695.00 | 11.00 | $7,645.00 |
| Joseph D. Frank | 1993 | $695.00 | 280.80 | $195,156.00 |
| Jeremy C. Kleinman | 1999 | $385.00 | 343.50 | $132,247.50 |
| Zane L. Zielinski | 2002 | $375.00 | 39.50 | $14,812.50 |
| Reed Heiligman | 2007 | $295.00 | 22.10 | $6,519.50 |
| Michael Matlock | paralegal | $200.00 | 4.50 | $ 900.00 |
| Christina Smith | paralegal | $175.00 | 3.00 | $ 525.00 |
| Christina Carpenter | paralegal | $145.00 | 35.90 | $5,205.50 |
| **Total:** | | | **740.30** | **$363,011.00** |

## III.     CALCULATION OF TIME AND FEES

29.     This is FG's second and final application for compensation and reimbursement of expenses incurred as counsel to the Debtor.  This Application seeks final allowance of compensation for services rendered, and reimbursement for costs incurred, from November 8, 2013 through and including November 3, 2014, including compensation and reimbursement

previously allowed on an interim basis for services rendered between November 8, 2013 and

April 30, 2014.  All professional services for which compensation is requested herein, and all

reimbursement for expenses incurred, have been for services directly related to the Case rendered

for the benefit of the Debtor.  No agreement or understanding exists between FG and any other

person for the sharing of compensation received or to be received in connection with the Case,

other than as disclosed herein or authorized pursuant to 11 U.S.C. §§ 327, 328, 330 and 331.

30.     In preparing this Application, FG has calculated the amount of time spent by each

attorney during the Supplemental Application Period in performing actual, necessary legal

services for the Debtor, as shown on **Exhibit A** attached hereto.[3]  The data used came directly

from computer records that are kept by FG for each of its clients.  The hourly rates charged are

the regular hourly rates charged by FG to its clients.

31.     FG has endeavored to avoid duplication of effort between attorneys, and in certain

instances where more than one attorney billed for a specific task, either there was a need for

multiple attorneys' involvement, or the time of one of the attorneys was voluntarily written off.

This type of representation has been approved in analogous circumstances.  *See Berberena v.

Coler*, 753 F.2d 629 (7th Cir. 1985); *In re Washington Mfg. Co.*, 101 B.R. 944 (Bankr. M.D.

Tenn. 1989); *In re N-Ren Corp.*, 71 B.R. 488 (Bankr. S.D. Ohio 1987).

32.     The Application also includes out-of-pocket expenses incurred during the

Supplemental Application Period in the amount of $8,810.65, as itemized on **Exhibit B**.  FG

does not bill its clients or seek compensation in this Application for its overhead expenses,

including word processing, in-house photocopying, facsimile transmissions, long distance

---

[3]  The specific tasks performed by FG's professionals and paraprofessionals during the Interim
Application Period were set forth in detail in Exhibit A to the Interim Application.

telephone and the cost of legal databases; instead, such expenses are factored into FG's normal and customary rates.

33.     However, FG does not include charges for postage, outside photocopying, messenger services or local transportation in its overhead.  FG has determined that it is fairer to FG's smaller clients who use proportionately less of these services to have these expenses billed separately.  These charges fairly compensate FG for its actual costs and do not result in undue revenue for the firm.  Moreover, FG's non-fee application clients routinely are billed for and pay these types of expenses.  *See In re Continental Securities Litigation*, 962 F.2d 566, 570 (7th Cir. 1992).  In addition, FG seeks reimbursement for a $349.00 fee charged to FG in connection with the creation and maintenance of a plan solicitation website (www.fgllp.com/shelbourne).  This out-of-pocket expense is attributable solely to this task, and has not been marked up by FG.

34.     The expenses for which FG now seeks reimbursement are as follows:

| | |
|---|---:|
| Conference Calls | $365.36 |
| Federal Express | $1,423.41 |
| Local Transportation | $67.00 |
| Messenger Deliveries | $71.35 |
| Plan Solicitation Website Services | $349.00 |
| Outside Photocopy/Data Services | $5,767.97 |
| Postage | $766.56 |
| **Total** | **$8,810.65** |

35.     All time entries and requested expenses are in substantial compliance with Local Bankruptcy Rule 5082-1.

36.     As disclosed in the Interim Application, FG previously represented certain of the Debtor's affiliates in the Foreclosure Litigation.  FG withdrew from that representation with the consent of all parties pursuant to an order entered by the Circuit Court on December 3, 2013.  As of the Petition Date, FG was owed $10,444.95 for professional services rendered to the Debtor's affiliates in the Foreclosure Litigation.  FG waived any and all amounts due from the Affiliates

as a condition of its representation of the Debtor, and has not applied any funds received on behalf of the Debtor in satisfaction of any amounts due from the Debtors' affiliates, as was fully disclosed in the FG Retention Motion.

37.    Other than as set forth herein and in the affidavit of Joseph D. Frank attached to the Retention Motion [Docket No. 25-1], FG represents no entity with an adverse interest to the Debtor's estate and otherwise has no connection with the Debtor, the Debtor's creditors, or any other party in interest in this bankruptcy case, including their respective attorneys and accountants.  In addition, FG has no connection with the United States Trustee, or any person employed in the office of the United States Trustee, except that FG attorneys Frances Gecker and Zane Zielinski serve as trustees on the panel of Chapter 7 Trustees for Northern District of Illinois.

38.    Finally, FG has no agreement with any third party to share compensation received in this case and, in accordance with 11 U.S.C. § 504, will not share any compensation it receives with any third party.

## **NOTICE**

39.    Notice of this Application has been provided to all parties in interest, including: (i) the Office of the United States Trustee; (ii) all creditors that have filed claims; (iii) counsel to RMW; (iv) the Internal Revenue Service; (v) the Illinois Department of Revenue; and (vi) those other parties who have requested service of papers in this case pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, FrankGecker, LLP respectfully requests that this Court enter an Order:

A.    Allowing FG, on a final basis, previously-awarded interim compensation in the amount of $511,402.75 and reimbursement of expenses totaling $11,973.49;

B.      Allowing FG, on a final basis, additional reasonable compensation for legal services rendered during the Supplemental Application Period in the amount of $363,011.00;

C.      Allowing FG, on a final basis, reimbursement of expenses incurred during the Supplemental Application Period in the amount of $8,810.65;

D.      Authorizing and directing RMW to pay $371,821.65 to FG, representing 100% of the unpaid amount of compensation and expenses requested herein, pursuant to the terms of the Plan; and

E.      Granting such other relief as the Court deems just.


Dated:  November 19, 2014                        Respectfully submitted,

                                                 FRANKGECKER LLP


                                                 By:     /s/ Joseph D. Frank
                                                         One of its attorneys


Joseph D. Frank (IL No. 6216085)
FRANKGECKER LLP
325 North LaSalle Street
Suite 625
Chicago, Illinois  60654
Telephone:     (312) 276-1400
Facsimile:     (312) 276-0035
jfrank@fgllp.com

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph D. Frank, an attorney, hereby certify that on **November 19, 2014**, a true and correct copy of the **FrankGecker LLP's Second and Final Application for Allowance of Compensation and Reimbursement of Expenses Incurred as Counsel to the Debtor** was filed electronically.   Notice of the filing will be sent to all parties who are currently on the Court's Electronic Mail Notice List by operation of the Court's Electronic Filing System.   In addition, a copy also was served upon the parties listed on the attached Service List.

<em>/s/ Joseph D. Frank</em>

# Mailing Information for Case 13-44315

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- R Scott Alsterda    rsalsterda@uhlaw.com
- J. Douglas Bacon    douglas.bacon@lw.com, chefiling@lw.com
- Sarah Baker    sarah.baker@quarles.com, stella.love@quarles.com
- John D. Beck    ,
  ishmael.kamara@haynesboone.com;autumn.highsmith@haynesboone.com;lenard.parkin
  s@haynesboone.com
- Lauren N. Beslow    Lauren.Beslow@quarles.com, Faye.Feinstein@quarles.com
- Alicia C Davis    alicia.davis@lw.com, chefiling@lw.com
- Jeffrey D Eaton    jeaton@schiffhardin.com
- Joseph D Frank    jfrank@fgllp.com, ccarpenter@fgllp.com;jkleinman@fgllp.com
- Jeffrey L. Gansberg    jgansberg@muchshelist.com, nsulak@muchshelist.com
- Frances Gecker    fgecker@fgllp.com
- Michael L. Gesas    mlgesas@arnstein.com,
  blsutton@arnstein.com;jbmedziak@arnstein.com
- John W Guzzardo    jguzzardo@shawfishman.com, jhampton@shawfishman.com
- Reed A Heiligman    rheiligman@fgllp.com, ccarpenter@fgllp.com
- Jeremy C Kleinman    jkleinman@fgllp.com, ccarpenter@fgllp.com
- Micah R Krohn    mkrohn@fgllp.com, ccarpenter@fgllp.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Paul C Mallon    paul.mallon@kusperlaw.com
- Kevin H Morse    khmorse@arnstein.com
- Michael W Ott    mott@schiffhardin.com, rkaferly@schiffhardin.com
- N. Neville Reid    nreid@fslc.com,
  bkdocket@fslc.com,kgoin@fslc.com,abouse@fslc.com
- Peter J Roberts    proberts@shawfishman.com
- Patrick F Ross    pfross@uhlaw.com,
  kburde@uhlaw.com;rjanczak@uhlaw.com;sbmiller@uhlaw.com;jtruskusky@uhlaw.com
- Blake A Roter    broter@burkelaw.com, sclement@burkelaw.com
- Trevor K. Scheetz    trevor.scheetz@lw.com, trevor.scheetz@lw.com;chefiling@lw.com,
- Ryan T Schultz    rschultz@fslc.com, bkdocket@fslc.com,abouse@fslc.com
- Brian L Shaw    bshaw@shawfishman.com, jbunton@shawfishman.com
- Glenn Udell    gudell@bupdlaw.com, cwilson@bupdlaw.com
- Zane L Zielinski    zzielinski@fgllp.com,
  csmith@fgllp.com;dortiz@fgllp.com;ccarpenter@fgllp.com

## SERVICE LIST

*In re Shelbourne North Water Street, L.P.,* Case No. 13-44315 (JSB)

RMW Acquisition Company, LLC
RMW CLP Acquisitions, LLC
RMW CLP Acquisitions II LLC
c/o HAYNES AND BOONE, LLP
30 Rockefeller Plaza
26th Floor
New York, NY  10112

RMW Acquisition Company, LLC
RMW CLP Acquisitions, LLC
RMW CLP Acquisitions II LLC
c/o Brian L. Shaw and Peter J. Roberts
SHAW FISHMAN GLANTZ & TOWBIN LLC
321 North Clark Street
Suite 800
Chicago, IL  60654

Patrick S. Layng
OFFICE OF THE UNITED STATES TRUSTEE
Region 11
219 South Dearborn Street
Room 873
Chicago, IL 60604